## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FRATERNAL ORDER OF POLICE,
DC LODGE #1, et al.

      Plaintiffs,

vs.

EDWARD BARRY, et al,

      Defendants.

Civil No. 08-462 (ESH)

## ANSWER AND COUNTERCLAIM BY CHRIS VITOLO, JULIAN DIAZ AND DAN DUNLAP, AND AMENDED ANSWER AND COUNTERCLAIM BY PAUL FERRARO

For their Answer (or Amended Answer) to the allegations of the Complaint, Defendants Paul Ferraro, Chris Vitolo, Julian Diaz and Dan Dunlap hereby plead as follows:

    1.    Defendants deny the allegations of Paragraph 1.

    2.    Defendants admit that this Court has jurisdiction.

    3.    Defendants do not deny that venue may be proper in this Court.

    4.    Defendants admit that FOP DC Lodge 1 is a labor organization within the meaning of the LMRDA and that it entered a chartering agreement with the Fraternal Order of Police, National Labor Council #2,

USPS, also known as FOP NLC #2 or as the Postal Police Officers Association (PPOA). Defendants deny all remaining allegations.

5.    Admitted.

6.    Denied.

7.    Defendants admit that the PPOA was certified by the National Labor Relations Board as the exclusive bargaining representative for Postal Police Officers employed by the United States Postal Service.  Further answering, Defendants admit that the PPOA is a labor organization as defined in the LMRDA.  Further answering, Defendants admit that the PPOA is party to a charter agreement with FOP DC Lodge #1.  Defendants deny all remaining allegations.

8.    Denied

9.    Defendants admit that Edward Barry is a postal police officer. Defendants deny all remaining allegations of this paragraph.

10.    Defendants admit that Paul Ferraro is a postal police officer and the National Treasurer of the Fraternal Order of Police, National Labor Council #2.  Defendants deny all remaining allegations.

11.    Defendants admit that Chris Vitolo is a postal police officer and the National Grievance Secretary of the Fraternal Order of Police, National Labor Council #2.  Defendants deny all remaining allegations.

2

12.    Defendants admit that Julian Diaz is a postal police officer and the Northeast Area Representative of the Fraternal Order of Police, National Labor Council #2.  Defendants deny all remaining allegations.

13.    Defendants admit that Daniel Dunlap is a postal police officer and the National Treasurer of the Fraternal Order of Police, National Labor Council #2.  Defendants deny all remaining allegations.

14.    Defendants incorporate their answers to paragraphs 1-13.

15.    Defendants admit that the Grand Lodge FOP is a nationally recognized organization comprised of full-time active and retired law enforcement officers from the federal, state and local levels of government. Defendants deny all remaining allegations.

16.    Defendants admit that Grand Lodge FOP has prominence and a high visibility of membership and admit that it ordinarily does and should hold itself to a higher standard of conduct than other organizations not comprised of law enforcement officers.  Defendants deny all remaining allegations of this paragraph.

17.    Defendants deny that FOP DC Lodge 1 adhered to its constitution, ritual, standing rules and rules of parliamentary procedure in this matter, and deny all other allegations.

18.    Defendants contend that the relevant legal documents speak for

themselves and thus the allegations of this paragraph are denied.

19.    Defendants contend that the relevant legal documents speak for themselves and thus the allegations of this paragraph are denied.

20.    Defendants contend that the relevant legal documents speak for themselves and thus the allegations of this paragraph are denied.

21.    Defendants contend that the relevant legal documents speak for themselves and thus the allegations of this paragraph are denied.

22.    Defendants contend that the relevant legal documents speak for themselves and thus the allegations of this paragraph are denied.

23.    Denied

24.    Answering Paragraph 24, Defendants are without sufficient information to either admit or deny what Ms. Grant may have said to someone else, and thus must deny the allegations of this paragraph.

25.    Answering Paragraph 25, Defendants are without sufficient information to either admit or deny what FOP DC Lodge 1 may have done internally, and thus they must deny the allegations of this paragraph.

26.    Defendants admit that Teri Grant filed a formal charge against Paul Ferraro and Defendants further admit that a hearing was set to be held on January 4, 2008. Defendants deny the remaining allegations of this paragraph.

4

27.    Defendants admit that the bargaining impasse had been reached with the USPS in or around April 2007.  Defendants deny that this occurred any time near the scheduled January 4 hearing date, and they also deny all remaining allegations of this paragraph.

28.    Defendants admit that Grant attempted unilaterally to change the previously scheduled hearing date.  Defendants deny all other allegations in this paragraph.

29.    Denied

30.    Defendants admit that the trial body received evidence and rendered a decision exonerating Mr. Ferraro of all charges.  Defendants deny all remaining allegations.

31.    Denied

32.    Answering Paragraph 32, Defendants admit that Teri Grant was removed from her position as President of FOP NLC-2.  Defendants deny the remaining allegations of this paragraph.

33.    Defendants are without sufficient information to either admit or deny the allegations in this paragraph and thus they are denied.

34.    Defendants are without sufficient information to either admit or deny the allegations in this paragraph and thus they are denied.

35.    Defendants are without sufficient information to either admit or

deny what Mr. Anthony may have conducted or what he may have determined, and thus the allegations of this paragraph are denied. Defendants specifically deny the underlying truth of the allegations in subparagraphs (a) through (e).

36.    Defendants are without sufficient information to either admit or deny whether a special meeting was held, or of what body, and thus they must deny the allegations of this paragraph.

37.    Answering Paragraph 37, Defendants deny the allegations in the first sentence.  Further answering, Defendants admit that FOP DC Lodge 1 purported to install Plaintiff Anthony as a trustee over the Postal Police Officers Association.  Defendants deny all remaining allegations of this paragraph.

38.    Denied.

39.    Answering Paragraph 39, Defendants deny the allegations in the first sentence.  Further answering, Defendants are without information sufficient to either admit or deny the remaining allegations of this paragraph and thus they are denied.

40.    Defendants are without sufficient information to either admit or deny the allegations in this paragraph and thus they are denied.

41.    Answering Paragraph 41, Defendants admit that Plaintiff

Anthony called Paul Ferraro on more than one occasion demanding that he turn over to Anthony all PPOA documents and access to all PPOA funds. In all other respects, the allegations of this paragraph are denied.

42.    Answering Paragraph 42, Defendants admit that Plaintiff Anthony called Paul Ferraro on more than one occasion demanding that he turn over to Anthony all PPOA documents and access to all PPOA funds. In all other respects, the allegations of this paragraph are denied.

43.    Denied

44.    Denied

45.    Denied

46.    Defendants admit that a hearing was requested to challenge the unlawfully imposed trusteeship. Defendants deny all remaining allegations.

47.    Denied

48.    Defendants admit that they were unable to attend the February 29 meeting because of the actions of Plaintiff Teri Grant, acting pursuant to authority given by Plaintiff Anthony.  Defendants deny all remaining allegations.

49.    Answering Paragraph 49, Defendants are without information sufficient to either admit or deny the allegations of this paragraph because they were denied meaningful notice or opportunity to attend the alleged

7

hearing of February 29, 2008, and thus they must deny the allegations of this paragraph.

50.    Denied.

51.    Defendants hereby incorporate their answers to Paragraphs 1 through 50.

52.    The allegations of Paragraph 52 call for a legal conclusion and on that basis they are denied.

53.    Denied

54.    Denied

55.    Defendants hereby incorporate their answers to Paragraphs 1 through 54.

56.    The allegations of Paragraph 56 call for a legal conclusion and on that basis they are denied.

57.    Answering Paragraph 57, the charter is a legal document and speaks for itself.  Defendants deny any remaining allegations in this paragraph.

58.    Denied

59.    Denied

60.    Defendants admit that federal and local law enforcement officers and their organizations should comply with the letter and spirit of all federal,

state and local laws made applicable to them.  Further answering, Defendants deny that Plaintiffs have so complied.  Defendants deny all remaining allegations of this paragraph.

61.    Defendants admit that an organization of active federal and local law enforcement officers should avoid the appearance of any impropriety by itself or any other related body.  Defendants deny that Plaintiffs have acted accordingly in this matter.  Defendants deny all remaining allegations in this paragraph.

62.    Denied

63.    Denied.

## AFFIRMATIVE DEFENSES

### First Defense

The Complaint fails to state a claim on which relief can be granted.

### Second Defense

The Complaint is barred by waiver, in that Plaintiffs did not raise their objections in the appropriate manner and procedure and may not now do so.

### Third Defense

The Complaint is barred by the Plaintiffs' failure to exhaust proper internal, administrative and contract procedures.

### Fourth Defense

The Complaint is barred by estoppel.

<u>Fifth Defense</u>

The Complaint is barred by the Plaintiffs' failure to comply with federal law governing union trusteeships.

<u>Sixth Defense</u>

Neither the LMRDA nor Section 301 permit suits brought against individuals in their personal capacities.

<u>Seventh Defense</u>

The Plaintiffs have acted inequitably and with unclean hands.

WHEREFORE, this Court should dismiss the Complaint and award the Defendants their reasonable attorneys' fees and costs pursuant to agreement and representation, pursuant to federal law and pursuant to any and all other applicable sources of law or rights.

## **COUNTERCLAIM**

For their Counterclaim against the Plaintiffs-Counterdefendants, Defendants Paul Ferraro, Chris Vitolo, Julian Diaz and Dan Dunlap, all officers and members of the PPOA's Executive Board and suing in their official capacities on behalf of the PPOA, allege as follows:

1.     This is a Counterclaim for injunctive relief and damages against the Plaintiffs for unlawfully purporting to impose a trusteeship on the PPOA,

for otherwise unlawfully interfering with the PPOA's duties and obligations to its members and for unlawfully converting the property of the PPOA for their own uses.

2.    The PPOA is a labor organization as defined by 29 U.S.C. §402(i). It is also known as the Fraternal Order of Police National Labor Council #2, USPS.

3.    On October 16, 1992, the NLRB certified the PPOA as the exclusive bargaining representative for a bargaining unit of Postal Police Officers employed by the U.S. Postal Service.

4.    Counter-defendant FOP DC Lodge #1 ("DC 1") is a labor organization as defined by 29 U.S.C. §402(i).

5.    DC 1 signed a charter agreement with the PPOA in 2001. Nothing in the charter agreement, in the constitution and bylaws of DC 1, or in the constitution or bylaws of the PPOA, gave DC 1 any authority to impose a trusteeship over the PPOA.

6.    Paul Ferraro is a full-time postal police officer and serves as the National Treasurer of the PPOA. He is also a member of the PPOA's Executive Board.

7.    Christopher Vitolo is a full-time postal police officer and serves as the PPOA's National Grievance Secretary.  He is also a member of the

11

PPOA's Executive Board.

8.    Julian Diaz is a full-time postal police officer and serves as the Northeast Area Representative for the PPOA.  He is also a member of the PPOA's Executive Board.

9.    Daniel Dunlap is a full-time postal police officer and serves as Eastern Area Representative for the PPOA.  He is also a member of the PPOA's Executive Board.  He has also served as the PPOA's designated "trustee," a position that entitles him to represent the PPOA on DC 1's Board of Directors.

10.    On January 4, 2008, an internal union trial board of the PPOA met to consider internal union charges leveled by then-president, and a Counter-defendant here, Teri Grant against Mr. Ferraro.  The trial date had been set in advance by a political ally of Ms. Grant, First Vice President Tom Colangelo.

11.    The trial was set to occur in Washington.  This required the members of the trial committee to make arrangements to leave work and to travel from their home bases to Washington.

12.    Just days before the scheduled trial, Teri Grant tried to postpone the trial unilaterally.  She did so without authority and in bad faith.

13.    The trial tribunal adhered to the prearranged date.  Ms. Grant,

who was in the city of Washington that day, declined to attend the trial over her own charges.

14.    After considering the evidence, the trial board exonerated Mr. Ferraro of the charges Ms. Grant proffered against him.

15.    Article 7, Section 14 of the PPOA's Constitution mandates sanctions against an officer who files a meritless charge against another officer. Pursuant to that provision, the PPOA's trial board sanctioned Ms. Grant by removing her from her office.

16.    Ms. Grant has never appealed or otherwise formally challenged the trial board's decision.

17.    Instead of pursuing her available remedies or pursuing legal action on her own, Ms. Grant retained attorney DeNigris as her personal attorney and paid him with funds taken from PPOA's bank account.  She did so without any proper authorization.

18.    Shortly thereafter on February 1, 2008, Counter-defendant Stephen Anthony, an attorney associated with DC 1, notified some of PPOA's officers and a small portion of its members of the alleged trusteeship and stated that he was the trustee.

19.    Mr. Anthony's notice was sent to less than 25% of the PPOA's members.  The notice was not mailed or otherwise formally distributed to the

members.  Instead, it was merely posted on a members-only site for the PPOA, a site restricted to those members who had previously applied for permission to access information on it.  Less than 25% of the members could possibly receive the information by that method.

20.    No hearing was held prior to the onset of the purported trusteeship, and no hearing was announced in the limited-distribution notice described above.

21.    Mr. Anthony's notice recites that the trusteeship was imposed by order of the DC 1 Board of Directors, which allegedly held a special session. If such a session was held, it was in violation of the DC 1 constitution which requires notice to all members of that Board of such a meeting, and no such notice was provided.  Moreover, it appears that DC 1 may actually have sought approval from a different internal entity, contrary to the representation made in the purported trusteeship notice, and again contrary to DC 1's own governing documents.

22.    Ed Barry and Dan Dunlap were members of the Board of Directors and yet neither was notified of any such meeting by the Board of Directors on this issue.

23.    Mr. Anthony and Ms. Grant, who acted in concert with Mr. Anthony, sought to access and withdraw money from the PPOA's bank

account.  Because Ms. Grant had previously been removed from office, her name was removed from the bank account.  Nonetheless, she was able to make a withdrawal of money to pay Mr. DeNigris.

24.    Once the bank was apprised of the fact that Ms. Grant withdrew money despite lacking authorization, and faced with a new competing claim by Anthony for ownership of the PPOA's funds, the bank elected to freeze the account.  The PPOA has therefore been deprived of its own funds ever since.

25.    Anthony's limited-distribution notice of February 1 set forth alleged numerous alleged reasons for the trusteeship.  Officials from DC 1 have, however, since admitted that the only reason for the trusteeship was to reinstall Teri Grant as the president.

26.    Indeed, this very lawsuit was filed against only five of the PPOA's remaining executive board members, those five who happened to be present for the January 4 trial.  Not named in this lawsuit are those members of the executive board who were not able to attend and participate as trial board members for that trial.

27.    The trustee, Mr. Anthony, has since reinstalled Ms. Grant to a position of authority within PPOA.  Meanwhile, he has purported to relieve the Counterdefendants of their duties.

28.    Faced with complaints about the trusteeship and the conversion

15

of PPOA funds, DC 1 announced that it would hold a hearing in Washington, DC on February 29, 2008. No notice was given to the full membership.

29.    DC 1's president initially informed the Defendants that they could retain a lawyer to represent their interests and position in challenging the trusteeship. The Counterplaintiffs believed their expenses for traveling to DC would be reimbursed, as their official travel has always been reimbursed.

30.    Just before the scheduled hearing, however, Ms. Grant – acting on behalf of the trustee and DC 1 – emailed the Counterplaintiffs notifying them that DC 1 would not help reimburse any expenses.

31.    Because of Ms. Grant's fiat on fees and expenses, the Counterplaintiffs could not afford to travel and participate in the hearing.

32.    Moreover, due to the last-minute nature of the proceedings and the lack of proper notice sent about it, the Counterplaintiffs were not able to obtain from their employer leave from their full-time jobs to attend the meeting, let alone to pay for that travel. Counterplaintiffs were forced to give notice that they would not be able to attend.

33.    In February, after the trusteeship was imposed, an official from DC 1 announced to a meeting of DC 1 that the trustee needed, and was presently seeking, authority from the membership to actually exercise a

16

trusteeship. The request for such authority was overwhelmingly denied by those attending the meeting, few of whom were even affiliated with the PPOA.

34.    The PPOA's funds are being wrongfully depleted by the Counterdefendants, including to defame and otherwise malign the Counterplaintiffs and to try to benefit Ms. Grant politically for a future election.

35.    Agents of the PPOA have asked for relief from the trusteeship but to no avail.

36.    The PPOA and its officers and members are suffering irreparable injury because of the unlawful trusteeship and are without an adequate remedy at law.

**First Claim for Relief: Violation of the LMRDA (29 U.S.C. §464)**

37.    The allegations of the preceding paragraphs are incorporated as though fully set forth herein.

38.    DC 1 lacks any authority in its constitution or in its bylaws to enact a trusteeship over the PPOA.

39.    DC 1 did not provide adequate notice to the PPOA's membership about the trusteeship or about any hearing.

40.    DC did not hold a hearing before commencing to trustee the

PPOA.

41.    DC 1 has not observed any due process safeguards in the way it has proceeded with this attempted trusteeship, including with the aborted post-facto hearing.

42.    DC 1 did not provide adequate notice of the post-facto hearing at the end of February.

43.    DC 1 misrepresented to the membership how the trusteeship came to be imposed.

44.    DC 1 has brought the trusteeship in bad faith and has acted with unclean hands.

45.    The attempted trusteeship is unlawful under 29 U.S.C. §§462 et seq.

**Second Claim for Relief: Breach of Contract (29 U.S.C. §185)**

46.    The allegations of the preceding paragraphs are incorporated as though fully set forth herein.

47.    The relationship between DC 1 and the PPOA is governed by DC 1's constitution and bylaws and by the chartering agreement between the two entities.

48.    None of the agreements between DC 1 and the PPOA authorize a trusteeship.

49.    None of the documents between DC 1 and the PPOA authorize any kind of takeover of PPOA's affairs and property, especially under the circumstances present here.

50.    DC 1 has acted in breach of its agreements with the PPOA by its actions in this matter.

WHEREFORE, Counterclaimants pray that this Court will enter orders doing the following:

a.    declaring the attempted trusteeship to be unlawful and of no force or effect;

b.    enjoining the Plaintiffs from enforcing the trusteeship;

c.    requiring Plaintiffs to turn over and relinquish all authority and claims of authority over all documents, accounts and all other property of the PPOA;

d.    requiring Plaintiffs to make whole the Defendants and the PPOA for all damages incurred as a result of the wrongfully imposed trusteeship;

e.    requiring the Plaintiffs to pay the reasonable attorneys' fees of the attorneys for the Defendant and to reimburse all costs;

f.    requiring an accounting of all funds and property taken by the Plaintiffs during the term of the purported trusteeship; and

19

g.   mandating such other relief as this Court deems just and proper.

Dated:  May 6, 2008                    Respectfully submitted,


                                       s/ Arlus J. Stephens
                                       Arlus J. Stephens (DC No. 478938)
                                       Davis, Cowell & Bowe LLP
                                       1701 K Street NW, Suite 210
                                       Washington, DC 20006
                                       (202) 223-2620
                                       (Fax) (202) 223-8651

                                       Attorney for Defendants-
                                       Counterclaimants Paul Ferraro, Julian
                                       Diaz, Dan Dunlap and Chris Vitolo