## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **FRATERNAL ORDER OF POLICE,** | ) | |
| **D.C. LODGE 1**, et. al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CASE NO.: 08-cv-462 (ESH) |
| v. | ) | |
| | ) | |
| **EDWARD BARRY**, et. al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFFS' ANSWER TO DEFENDANTS' COUNTERCLAIM
## AND AFFIRMATIVE DEFENSES

1.      Denied.

2.      Admitted in part.  Denied in part.  The name of the organization under the NLC-2 Constitution is USPS #2 of the Fraternal Order of Police, National Labor Council.  The organization is also known as the Postal Police Officers Association.  In the Charter granted by the Fraternal Order of Police D.C. 1, the organization is known as the Fraternal Order of Police, National Labor Council, USPS #2.

3.      Admitted.

4.      Admitted.

5.      Denied.

6.      Admitted in part.  Denied in part.  Defendant Ferraro served as the National Secretary/Treasurer of the NLC-2.

7.      Admitted in Part.  Denied in Part.  To the extent that defendant Vitolo suggests

that the PPOA is an organization separate different from the Fraternal Order of Police, National Labor Council, USPS #2, the reference to the PPOA is simply an additional reference to the union.  All other allegations are admitted.

8.      Admitted in Part.  Denied in Part.  To the extent that defendant Diaz suggests that the PPOA is an organization separate different from the Fraternal Order of Police, National Labor Council, USPS #2, the reference to the PPOA is simply an additional reference to the union.  All other allegations are admitted.

9.      Admitted in Part.  Denied in Part.  To the extent that defendant Dunlap suggests that the PPOA is an organization separate different from the Fraternal Order of Police, National Labor Council, USPS #2, the reference to the PPOA is simply an additional reference to the union.  All other allegations are denied.

10.     Admitted in part that the defendants convened an illegal trial board in violation of the NLC-2 Constitution.  Admitted that allegations of misappropriation of union funds had been filed by plaintiff Grant against Defendant Ferraro.  Denied as to all other allegations.

11.     Admitted in part.  Denied in part.  Admitted to the extent that Washington, D.C. had been selected as the situs of the internal hearing against Defendant Ferraro.  The plaintiffs are without sufficient information to either admit or deny the allegations in this paragraph and thus are denied.

12.     Admitted in part.  Denied in Part.  Plaintiff Grant, as president of the NLC-2 and under her specific authority as the chief executive officer of the NLC-2 Constitution, postponed the hearing from January 4, 2008, until such time as the members of the National Negotiations Team and the Executive Board could meet with Negotiations Attorney Joseph Kaplan.  Denied as

to all other allegations.

13.    Admitted in part. Denied in part. The trial committee was unlawfully created in violation of the Article 7 §2 of the NLC-2's Constitution in the manner of committee selection, the level of bias each defendant possessed toward finding for Ferraro and in denying Plaintiff Grant her constitutional due process rights under the NLC-2 Constitution. Thus, to prevent the unlawfully constituted trial committee from wasting union funds for back-to-back trips to Washington, D.C., President Grant instructed the defendants to postpone their trip to Washington, D.C. from January 4, 2008, to the week of January 13, 2008, so they could meet with Attorney Kaplan. By lawful authority invested in Plaintiff Grant under Article 7 § I(c) of the NLC-2's Constitution, Grant issued a directive to the defendants on December 31, 2007, postponing the trial date.

14.    Admitted that the defendants met as a trial board on January 4, 2008, in Washington, D.C., without legal authority and voted to absolved Defendant Ferraro of the allegations against him. After unlawfully acquitting Ferraro, the defendants then conspired to remove Plaintiff Grant from her position as NLC-2 President.

15.    Admitted in part. Denied in part. The specific constitutional provision is illegal and void *ab initio*. The provision relied upon by the defendants violates 29 CFR §458.2(a)(5), DC-1's Constitution, the NLC-2's Constitution and its charter as it applies to the unlawful removal of plaintiff Grant.

16.    Denied. Grant appealed the illegal action to DC-1.

17.    Denied.

18.    Denied. On February 1, 2008, Plaintiff Anthony notified all members of the

3

NLC-2 nationwide that the NLC-2 had been placed into trusteeship.  In his letter to the NLC-2

membership, Plaintiff Anthony wrote:

> This decision was prompted by the ongoing controversy among members of the
> Executive Board that resulted in the unlawful removal of Teri Grant from the office of
> President. This power struggle enabled management to exploit the labor committee and
> compromise its negotiating position, disrupted the day-to-day operations of the labor
> committee and brought contract negotiations to a standstill.
>
> Trusteeship provides DC1 with the ability to remove the quarreling Executive Board
> members and to authorize the labor attorney to proceed with contract negotiations without
> interruption from those Executive Board members who persisted in interfering with the
> appointed Negotiating Team.
>
> Moreover, Trusteeship enables DC1 to investigate Mr. Barry and other Board Members
> who conspired in the unlawful removal of Ms. Grant from the office of President. The
> conduct of Mr. Barry and those who supported him in this misadventure violates due
> process of law protections of our respective constitutions, embarrasses the membership
> with management and recklessly exposes NLC2 to charges of union corruption and sexual
> and racial discrimination.
>
> Trusteeship also compels DC1 to investigate allegations that Mr. Ferraro and Mr. Dunlap
> have taken thousands of dollars of union funds and failed or refused to provide adequate
> documentation to justify that these withdrawals were expended for union purposes. The
> Department of Labor considers misappropriation of union funds a criminal offense and
> DC1 plans to conduct a thorough investigation of these allegations.
>
> All future matters and business affairs of NLC2 shall be directed to the Trustee's
> representative listed below:
>
> In the Notice of Trusteeship to NLC-2 members, Plaintiff Anthony further informed

NLC-2 members that **any objections** to the imposition of the emergency trusteeship should be

filed in written form of a ***Petition for Termination of the Trusteeship*** to FOP DC-1.

19.    Denied.

20.    Admitted in part.  Denied in Part.  On January 31, 2008, in response to the illegal

actions of the defendants, Grant's request and Anthony's investigation, DC-1 called a special

4

meeting of the DC-1 Executive Board to hear the report of Plaintiff Anthony's investigation.  The

Board concluded that:

(I)    there was significant evidence to support Plaintiff Grant's claim that the
       defendants violated 29 CFR §458.2(a)(5),  DC-1's Constitution, the NLC-2's
       Constitution and its charter as it applies to the unlawful removal of plaintiff Grant;

(ii)   a trusteeship was necessary for the purpose of correcting corruption or financial
       malpractice; assuming the performance of the negotiated agreements or other
       duties of the representative of employees; restoring democratic procedures; or
       otherwise carrying out the legitimate objects of such labor organization; and

(iii)  a forensic audit of the NLC-2's finances was in order to confirm or refute
       allegations of financial mismanagement, misappropriation of union funds at least
       $11,000.00 and possible as high as $20,000.00 involving Defendant Dunlap's
       vouchers and the 2007 vouchers paid to Defendant Ferraro by himself.

In accordance with its policy, procedural rules and by special vote, DC-1's Executive

Board placed the NLC-2 into ***emergency trusteeship***.  The FOP appointed Plaintiff Anthony as

the trustee over the NLC-2.

21.    Admitted in Part.  Denied in Part.  On February 1, 2008,  Plaintiff Anthony

notified all members of the NLC-2 nationwide that the NLC-2 had been placed into trusteeship.

In his letter to the NLC-2 membership, Plaintiff Anthony wrote:

This decision was prompted by the ongoing controversy among members of the
Executive Board that resulted in the unlawful removal of Teri Grant from the office of
President. This power struggle enabled management to exploit the labor committee and
compromise its negotiating position, disrupted the day-to-day operations of the labor
committee and brought contract negotiations to a standstill.

Trusteeship provides DC1 with the ability to remove the quarreling Executive Board
members and to authorize the labor attorney to proceed with contract negotiations without
interruption from those Executive Board members who persisted in interfering with the
appointed Negotiating Team.

Moreover, Trusteeship enables DC1 to investigate Mr. Barry and other Board Members
who conspired in the unlawful removal of Ms. Grant from the office of President. The

5

conduct of Mr. Barry and those who supported him in this misadventure violates due process of law protections of our respective constitutions, embarrasses the membership with management and recklessly exposes NLC2 to charges of union corruption and sexual and racial discrimination.

Trusteeship also compels DC1 to investigate allegations that Mr. Ferraro and Mr. Dunlap have taken thousands of dollars of union funds and failed or refused to provide adequate documentation to justify that these withdrawals were expended for union purposes. The Department of Labor considers misappropriation of union funds a criminal offense and DC1 plans to conduct a thorough investigation of these allegations.

All future matters and business affairs of NLC2 shall be directed to the Trustee's representative listed below:

In the Notice of Trusteeship to NLC-2 members, Plaintiff Anthony further informed

NLC-2 members that **any objections** to the imposition of the emergency trusteeship should be

filed in written form of a ***Petition for Termination of the Trusteeship*** to FOP DC-1.

All other allegations in the paragraph are denied.

22.    Plaintiffs are without sufficient information to either admit or deny the allegations

in this paragraph and thus are denied.

23.    Admitted in part.  Denied in part.  Under lawful authority, plaintiff grant

reallocated union funds to a new union account for payment of legitimate trusteeship expenses.

Denied as to all other allegations.

24.    Denied.

25.    Denied.

26.    The allegation is a conclusory statement which requires no response.  It is

therefore denied.

27.    Admitted in part.  Denied in part.  Plaintiff Grant is a member of a management

committee under the supervision of the Trustee.  The defendants were lawfully removed from

6

their union positions for various violations of federal law and the constitution and bylaws of the FOP.

      28-32..       Denied.

On February 15, 2008, Barry wrote to DC-1 President Muzzatti appealing the imposition of the trusteeship and requested a hearing on the matter.

On February 20, 2008, President Muzzatti notified the defendants that a hearing had been scheduled for 11:00 a.m. on Friday, February 29, 2008.  He also instructed that Defendant Ferraro appear in person.  Lastly, Muzzatti directed Defendants Barry and Ferraro to bring the NLC-2 checkbook, financial information, keys and passwords required to operate the NLC-2 website in the event that the trusteeship was upheld on appeal.

On February 21, 2008, Defendant Barry informed Muzzatti that he would be bringing a lawyer to the hearing on February 29, 2008.  Muzzatti approved Barry's request.

On February 25, 2008, President Muzzatti reconfirmed the February 29, 2008, appeal and the nature of the proceeding.  On February 27, 2008, Defendant Barry complained about the DC-1 "kangaroo court."  Barry further complained that DC-1 would not pay for his expenses.  In closing Defendant Barry wrote:

> You've set the time and place, now make the travel arrangements and provide for related expenses or Barnum and Bailey will to pack (sic) up the circus and travel to New York.

DC-1 President Muzzatti wrote Defendant Barry back the same day and advised of the following:

> This hearing is for you and the BOD at your request.  You never asked me for payment of any expenses but I would be willing to pay for reasonable travel expenses.  This meeting is by request from you and I am happy to honor it.  The request for records are so that if the appeal is denied we will be able to take possession of them and continue to conduct

7

the business of the labor committee and pursue the benefits for the members.

I agree with your concern about "kangaroo court" however you must understand that the BOD is not likely to reverse itself unless you bring new evidence. Keep in mind though that if you wish to take your appeal to the Grand Lodge of the FOP you must exhaust your appeal right at this lodge first.

The BOD has been called to assemble at 11:00 a.m. on Friday, February 29, 2008, and let me advise you that it is in your best interest to attend this hearing.

Please call me to discuss the travel arrangements.

On February 28, 2008, President Muzzatti again wrote Defendant Barry:

As of today, we plan to go forward with your hearing. You have asked for this hearing and it has been granted. You have been notified in a reasonable amount of time of the date and location. Your e-mails to me have referenced the fact that you wanted to bring your lawyer. I approved of that and that you wanted travel expenses and I approved of that. The hearing is scheduled for Friday, February 29, 2008, at 11:00 a.m. at the FOP DC Lodge in Washington, D.C. I expect you to be there and to be on time.

Please call me to discuss any other issues that you may have.

On February 29, 2008, at 8:41 a.m. Defendant Barry wrote President Muzzatti:

Thanks to the unwarranted interference of puppet president Grant, she has costs us a meeting. The members of the union's executive board can not be expected to submit notification slips to management that they are requesting leave without pay for union business, make travel arrangements and other necessary notifications to attend the hearing which you had scheduled and then have Grant advise everyone that all expenses incurred in attending this meeting are thrust upon the members themselves. Requests for leave were canceled as well as travel plans. Then you advise that you are willing to make necessary arrangements for us to come to DC. Is this some sort of game you think you are playing with us. That we can request time off, cancel it and then resubmit the request to our supervisors again? Make necessary arrangements for family members and then at the last minute  say "Oh wait. . .the trip is off. . .oh, wait, no it's not"

If in the future you request a meeting with the executive board, the following conditions must apply:  you will provide airline tickets to those members needing travel. You will provide our transportation to and from our residences, you will provide us with a day's wages for the time we must take off and you will travel to see us. Lastly, we will determine the time and place of the meeting.

Give our regards to puppet president Grant who again demonstrated superb leadership qualities.

Sincerely, Ed Barry.

33.    Denied.

34.    Denied.

35.    Denied.

36.    This is a legal conclusion which warrants no response.  However, to the extent a

response is required, it is denied.

37.    Denied.

38.    Denied.

39.    Denied.

40.    Denied.

41.    Denied.

42.    Denied.

43.    Denied.

44.    Denied.

45.    Denied.

46.    Denied.

47.    Admitted in part. Denied in part.

48.    Denied.

49.    Denied.

50.    Denied.

9

## <u>AFFIRMATIVE DEFENSES</u>

1.      The counterclaim fails to state a claim upon which relief can be granted.

2      The Defendants have failed to exhaust their internal, and administrative remedies

prior to bringing this Counterclaim.

3.      The Defendants have waived their rights to bring this counterclaim and have not

raised their objections in a timely manner.

4.      Unclean hands.

5.      Estoppel.

6.      The defendants are not entitled to recover attorney fees and costs in this action.


Respectfully submitted,

*/s/ Stephen G. DeNigris, Esq.*
Stephen G. DeNigris, Esq.
D.C. Bar No. 440697
Attorney for the Plaintiffs
2100 M Street NW Suite 170 - 283
Washington, D.C.   20037

Office: (703)416-1036
Fax: (703)416-1037


Dated: June 4, 2008
         Albany, NY

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the foregoing Plaintiffs' Answer to Defendants' Counterclaim and Affirmative Defenses was sent by electronic mail on the 4thday of June 2008 to the following individuals:


Arlus J. Stephens, Esq.
Attorney for Defendants Barry, Ferraro,
Vitolo, Diaz, and Dunlap
Davis, Cowell & Bowe, LLP
1701 K St NW Suite 210
Washington, D.C. 20006

Office: (202)223-2620
Fax:     (202)223-8651

Keira M. McNett, Esq.
Attorney for Defendants Barry, Ferraro,
Vitolo, Diaz, and Dunlap
Davis, Cowell & Bowe, LLP
1701 K St NW Suite 210
Washington, D.C. 20006

Office: (202)223-2620
Fax:     (202)223-8651


*/s/ Stephen G. DeNigris, Esq.*

11