# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FRATERNAL ORDER OF POLICE,
DC LODGE #1, et al.

       Plaintiffs,

vs.

EDWARD BARRY, et al,

       Defendants.

Civil No. 08-462 (ESH)

## DECLARATION OF DANIEL DUNLAP

I, Daniel Dunlap, hereby declare and state that I have personal knowledge of these facts and if called as a witness could and would competently testify as follows:

1.    I work as a full-time Police Officer for the United States Postal Service and have so served for many years.

2.    I have been a member of the Postal Police Officers Association, also known as FOP NLC #2, USPS, since it was certified.

3.    I have served the PPOA in many capacities, most recently as the Eastern Area Representative and as Trustee. As such, I am a member of the PPOA's executive board. And as Trustee, I am a representative of the

PPOA on DC 1's Board of Directors.

4.      I served on the trial committee that considered Teri Grant's charges against Paul Ferraro. Paul's evidence showed without any doubt that the charge against him was baseless. We concluded that there was an abuse of the charge system, as described in our constitution, and thus sanctioned Teri with the lesser of possible sanctions, removing her from the office she had succeeded to following the departure of Dukes and Barry in 2006 and 2007, respectively.

5.      Teri has never appealed this decision to my knowledge.

6.      I was not notified of any meeting of the DC 1 Board of Directors on or about January 31, 2008, and thus did not attend any such meeting.

7.      Attached as Exhibit A is a true and correct copy of the Charter Agreement between the PPOA and DC 1.

8.      Attached as Exhibit B is a true and correct copy of DC 1's Constitution and Bylaws, as found on the DC 1 website.

9.      Attached as Exhibit C is a true and correct copy of the PPOA's Constitution.

10.      Attached as Exhibit D is a true and correct copy of the order of the trusteeship. Attached as Exhibit E is a true and correct copy of a letter from DC 1 president Marcello Muzzatti.

2

11.   Both of these were sent only to about a quarter of the PPOA's members on or about February 1, 2008, via an email list that included just that small portion of the membership.

12.   Both of these were sent to PPOA executive board members by Teri Grant from her personal email address, meaning she had advance notice of the trusteeship.

13.   The PPOA has historically sent notices to members about leadership information, like election notices, to members by U.S. Postal Service mail delivery, not just by email. Otherwise, they will only reach a small fraction of the membership, one quarter, while a majority does not subscribe to the restricted email list-service.

14.   I did attend a regular meeting of the Board of Directors in early February 2008. At that meeting, a DC 1 official asked for authority to impose trusteeships over affiliated "labor committees." This request was postponed at the suggestion of Lou Cannon and approved by those attending.

15.   I understand that DC 1 claims that a document called "Standing Rules" applies to authorize a trusteeship over our Union. That is not correct. Only the Constitution trumps the Charter. The "Standing Rules" are not in DC 1's Constitution, let alone its Bylaws.

16.   DC 1's Constitution sets forth a rigorous procedure that must be

3

followed before it can be amended, or its Bylaws. This procedure was not followed to bring the so-called Standing Rules into either the Constitution or Bylaws of DC 1.

17.    Attached as Exhibit F is a true and correct copy of a March 28, 2008 letter from Anthony to the Union's members.

18.    Attached as Exhibit G is a true and correct copy of a May 2, 2008 cover letter from Teri Grant to the membership that was sent, by the trustee, to the membership announcing the interest-arbitration award.

19.    I understand that for the last month, Teri Grant has been serving as a acting supervisor for Postal Management, which pursuant to our Bylaws means that she cannot hold a Steward's Union office, and no Executive Board member holds any acting management position.

20.    As a result of the trusteeship, I was removed from the negotiating team and committee by the trustee, Steve Anthony, and others were removed from the negotiating committee.

21.    While DC 1 officials complained, in correspondence to members, that the PPOA executive board members were somehow frustrating bargaining, after we were removed the bargaining stopped and instead an arbitration was held which did not result in a positive outcome. Moreover, the DC 1 trustee has not acted to implement the award's back pay provision,

4

I declare under the penalty of perjury that the foregoing facts are true and correct to the best of my knowledge.


_____                    _____
Date                                                      Daniel Dunlap

# DUNLAP DECLARATION

# EXHIBIT A

FRATERNAL ORDER OF POLICE
Jerrard F. Young Lodge #1
Postal Police Labor Committee

CHARTER

1.   Pursuant to Article IV of the Constitution of the Fraternal Order of
     Police, Jerrard F. Young Lodge D.C. #1, there is hereby formed within
     the Lodge a Labor Committee for the Postal Police Labor Committee
     consisting of those members of the Postal Service who are or may be
     recognized or certified by applicable Authority as the bargaining unit
     including Postal Police Officers.  For external operating purposes,
     the committee shall also be known as the Fraternal Order of Police,
     National Labor Council, USPS #2.

2.   The Labor Committee is an integral part of the Lodge, and fully
     subscribes and adheres to the purposes and provisions of the Lodge
     Constitution, as such provisions may be applicable to the Labor
     Committee.  To the extent that matters pertaining to the operation of
     the Labor Committee are not set forth in this Charter or implementing
     by-laws, rules, regulations, the FOP-NLC #2 Constitution, or
     procedures adopted by the Labor Committee, applicable provisions of
     the Lodge Constitution and by-laws or applicable federal law shall
     control.  In the event of a conflict between this Charter and the
     Lodge Constitution, the provisions of the Lodge Constitution shall
     control, unless such a result will be contrary to applicable law.

3.   There shall be established within the Labor Committee (Hereinafter
     referred to as the "Unit") an Executive Committee which consists of a
     chairperson (defined and referred to as the President of the Fraternal
     Order of Police, National Labor Council, USPS #2, in the FOP-NLC #2
     Constitution), and such other positions as identified as Executive
     Board members in the FOP-NLC #2 Constitution.  The term "President"
     shall not be used by the Labor Committee in conjunction with any
     internal lodge business, or any external business in connection with
     the name of the D.C. #1 Lodge).  Any member of the unit may be a
     candidate for office, and officers shall be chosen through election by
     secret written ballot by vote of the membership.  Elections shall be
     held in accordance with the Constitution of the Fraternal Order of
     Police, National Labor Council #2 (FOP-NLC #2), and existing officers
     shall continue to serve their current terms as outlined in the FOP-NLC
     #2 Constitution.  The Unit shall maintain election procedures that
     allow for full participation by all members in fair elections.
     Stewards shall be selected in accordance with the FOP-NLC #2
     Constitution.

4.   The unit shall maintain procedures and regulations to assure the
     maintenance of fiscal integrity in the conduct of its affairs, to
     include provisions for accounting and financial controls, and shall
     issue regular (at least in conjunction with each National Convention)
     financial reports or summaries to be made available to members.
     Officers and agents of the unit are prohibited from having business or
     financial interests which conflict with their duty to the unit and its
     members.  No person identified with corrupt influences, pursuant to
     applicable law, shall be an officer in the unit.  At the request of
     the lodge, the committee agrees to surrender or make available for
     examination and audit, the financial records of the Labor Committee or
     other records as may be required to insure that the Labor Committee is
     meeting its obligations under the law.

5.  Dues paid to the Labor Committee shall be established by the unit in
    accordance with the Constitution of the FOP-NLC #2.  Dues and other
    assessments shall be applied in a uniform manner to all members of the
    unit.  The unit shall take any and all steps to encourage the highest
    possible level of membership in the Fraternal Order of Police, and to
    ensure that at least 51% of dues paying Labor Committee members are
    active Fraternal Order of Police members (at various lodges
    nationwide).  The unit and the lodge may enter into agreements for the
    provision of services and the payment of fees as may be determined by
    the unit and Lodge, provided that any such agreements are disclosed to
    the members and are not contrary to applicable law.

6.  Meetings shall be held in accordance with the FOP-NLC #2 Constitution.

7.  Pursuant to applicable law or regulations, collective bargaining
    agreements shall be negotiated by a negotiating committee appointed by
    the chairperson.  All agreements negotiated are subject to
    ratification by a majority vote of unit members by secret written
    ballot.

8.  The unit shall maintain procedures securing the right of all members
    to fair and equal treatment under the governing rules of the unit, and
    to fair process in disciplinary actions and agrees to abide by the
    provisions of the Labor Management Reporting and Disclosure Act of
    1959.

9.  All actions taken pursuant to this Charter may be taken by the
    appropriate officer, Executive Committee or as otherwise specified
    herein; this Charter may be amended by a majority vote of the
    membership.


_____          _____
President                                 Mark Wilson, Chairman
Fraternal Order of Police                 Postal Police
Jerrard F. Young Lodge D.C. #1            Labor Committee

_____1/9/02_____                   ____10-4-01_____
DATE                                      DATE

_____          _____
Secretary                                 Tammy Hernandez
Fraternal Order of Police                 Secretary-Treasurer
Jerrard F. Young Lodge D.C. #1            Postal Police
                                          Labor Committee

_____1/9/02_____                   ____10/23/01_____
DATE                                      DATE

# DUNLAP DECLARATION

# EXHIBIT B



# Fraternal Order of Police

District of Columbia Lodge #1

Washington, D.C.

## Constitution & Bylaws

Links

Home
President's Message
Board of Directors
Lodge Committees
Labor Committees
Member Agencies
Constitution & Bylaws
History of the Lodge
Restaurant & Club
Banquet Facility & Catering
National Police Week
Become a Member
Suggested Links
FOP Grand Lodge
FOP Simulcast
Contact Us
Upcoming Events

### *Adopted July 9, 1997*

## PREAMBLE

We, the law enforcement officers of the United States and the District of Columbia, do hereby associate our Lodge with the Grand Lodge for the following purposes:

To support and defend the Constitution of the United States; to inculcate loyalty and allegiance to the United States of America; to promote and foster the enforcement of law and order; to improve the individual proficiency of our members in the performance of their duties; to encourage social, charitable and educational activities among law enforcement officers; to improve pay, benefits and working conditions for law enforcement officers; to include, to the extent authorized by law, the formation of Labor Committees within the Lodge to function as labor organizations and to engage in collective bargaining; to advocate and strive for uniform application of the civil service merit system for appointment and promotion; to create a tradition of esprit de corps insuring fidelity to duty under all conditions and circumstances; to cultivate a spirit of fraternalism and mutual helpfulness among our members and the people we serve; to increase the efficiency of the law enforcement profession and thus more firmly establish the confidence of the public in the service dedicated to the protection of life and property.

Whenever, in the Constitution and By-laws, "man" or "men" or

related pronouns appear, either as words or as parts of words, (other than with obvious reference to a named individual) they have been used for literary purposes and are meant for their generic sense (i.e., to include all humankind, both male and female.)

# Article 1 (Name)

**SECTION 1**   The Lodge shall be known as the Jerrard F. Young Lodge #1 of the District of Columbia. It shall consist of such organizations as are admitted to membership and conform to its rules and regulations.

**SECTION 2**   The Constitution and By-laws as set forth herein shall be applicable to and govern the conduct of the Jerrard F. Young Lodge #1.

**SECTION 3**   The right to authorize, control and restrict the use of the Lodge's name shall lie exclusively with the Board of Directors.

# Article 2 (Character)

**SECTION 1**   The Lodge is an organization of law enforcement officers to include the sworn members of law enforcement agencies headquartered in the District of Columbia which have the power of arrest when on and off duty. (Nothing set forth herein shall be construed to eliminate any organization currently a part of the Jerrard F. Young Lodge #1.)

**SECTION 2**   The General Membership shall have the right to approve or disapprove any new police organization requesting to join the Jerrard F. Young Lodge #1. A majority rules.

**SECTION 3**   The Lodge shall not engage in unlawful strikes or other unlawful activity.

**SECTION 4**   This Constitution shall be the fundamental law of the Lodge, and together with the By-laws enacted in conformance therewith and the Rituals adopted, shall govern the conduct of the Lodge.

# Article 3 (Definitions)

**SECTION 1**   As used herein, the following terms, phrases or words shall be defined as follows:

A. **"Ad-hoc committee"** is a committee formed for a specific purpose and shall be composed of an odd number not less than three (3) members appointed by the President and Vice-president.

B. **"Agency Trustee"** shall mean a representative elected from within a member agency having at least ten members.

C. **"Board of Directors"** shall mean and consist of the elected officers, the immediate past president of this Lodge, the Chairperson of each certified labor committee and the agency trustees.

D. **"Board of Trustees"** shall consist of the three Trustees-at-Large.

E. **"Elected officers"** shall mean and consist of a President, Vice-president, Recording Secretary, Financial Secretary, Treasurer, Conductor, two (2) Guards, three (3) Trustees-at-Large and a Chaplain.

F. **"Full-time employed"** shall mean law enforcement officers that are engaged in such employment as their full-time occupation.

G. **"Good Cause"** shall mean nonfeasance, malfeasance, dishonesty, or refusal to carry out the will of the general membership.

H. **"Labor Committee"** shall mean sworn members of a law enforcement organization eligible for membership in the Lodge, which employees are members of a single certified or certifiable bargaining unit within the employing law enforcement organization.

I. **"Labor Committee Chairman"** shall mean the chief executive officer or Chairperson of a labor committee.

J. **"Member in good standing"** shall mean a member who has paid all dues and assessments due and payable to the Lodge, and who is not more than thirty (30) days in arrears of such payments as of the date specified for the payments thereof.

K. **"Member not in good standing"** shall mean a member whose dues are in arrears more than thirty (30) days and less than ninety (90) days.

L. **"Standing Committee"** shall mean a permanent committee named in the by-laws consisting of an odd number of members.

M. **"Sworn members"** shall mean a regularly employed law enforcement officer having the power of arrest on and off duty.

# Article 4 (Membership)

**SECTION 1**    Any regularly appointed and/or full time law enforcement officer or sworn member of the agencies included in Article II, Section 1., shall be eligible for membership in the Jerrard F. Young Lodge #1, subject to provisions of the Constitution and the By-laws of the Lodge. The term "full time" means law enforcement officers who are engaged in such employment as their principal source of livelihood and who qualify under Article II, Section 1.

**SECTION 2**    Membership shall be open to every eligible person without discrimination or penalty by reason of age, sex, race, national origin, religious or political convictions, or any other grounds prohibited by applicable law within the District of Columbia.

**SECTION 3**    The Lodge shall deny membership to anyone who is a member of the Communist Party or of any other organization which advocates the abolition or destruction of the government by illegal means, and membership shall be denied to any person identified with corrupt influences, pursuant to applicable law.

Case 1:08-cv-00462-ESH    Document 31-3    Filed 06/16/2008    Page 6 of 35

| SECTION 4 | There shall be three classes of membership: active, retired and honorary: | |
|---|---|---|
| | Active | Active membership shall be comprised of regularly appointed law enforcement officers or retired law enforcement officers of member organizations. |
| | Retired | Retired membership shall be comprised of retired regularly appointed or elected law enforcement officers who withdraw from active membership upon or after retirement from their law enforcement agency. |
| | Honorary | Honorary members are defined as those individuals who have been recognized by the Board of Directors as giving of their time and resources to the Lodge. The President shall have the discretion of recommending honorary members to the Board of Directors for approval. Honorary members shall not be permitted to vote or hold office in the Lodge. |

| SECTION 5 | Any member who leaves law enforcement, other than retiring, shall lose his active membership, and may become an associate member if application is made in writing and approved by the general membership. |
|---|---|
| SECTION 6 | No person shall be simultaneously a member of more than one lodge of the Fraternal Order of Police. |
| SECTION 7 | Persons wishing to apply for membership in the Lodge shall do so by completing the appropriate written application. Admission to membership is subject to approval by the membership committee, receipt of the required dues and fees, and adherence to the Constitution/By-laws and applicable rules and regulations. |

# ARTICLE 5 (Organization)

| SECTION 1 | The Jerrard F. Young Lodge # 1 shall consist of such organizations as are admitted to membership |
|---|---|

and conform to its rules and regulations.

| | |
|---|---|
| **SECTION 2** | Within the Lodge there may be formed one or more Labor Committees which are certified or certifiable bargaining units. |
| **SECTION 3** | Within the Lodge there may be formed Auxiliaries to the Jerrard F. Young Lodge #1, District of Columbia. Such Auxiliaries shall be known as Fraternal Order of Police, Jerrad F. Young Auxiliaries and may function as subordinate lodges. |
| **SECTION 4** | Within the Lodge there may be formed Associate Lodges to the Jerrard F. Young Lodge #1, District of Columbia. Such Associate Lodges shall be known as Fraternal Order of Police, Jerrad F. Young Associates and may function as subordinate lodges. |

# ARTICLE 6 (Elected Officers)

| | |
|---|---|
| **SECTION 1** | The elected Officers of the Jerrard F. Young Lodge #1 shall consist of the President, Vice-president, Recording Secretary, Financial Secretary, Treasurer, Conductor, Inner Guard and Outer Guard, three (3) Trustees-at-Large and a Chaplain. |
| **SECTION 2** | The President, upon petition from a majority of the elected officers, shall call an emergency meeting of Board of Directors. |

# ARTICLE 7 (Board of Directors)

| | |
|---|---|
| **SECTION 1** | The Board of Directors of the Jerrard F. Young Lodge #1 shall be composed of the elected officers, the immediate past president of this Lodge, the Chairperson of each certified labor committee and the Agency Trustees. |
| **SECTION 2** | The Board of Directors of the Jerrard F. Young Lodge #1 shall meet at least once a month and shall have the majority of the elected officers present to constitute a quorum for transacting the business of the Lodge. In the event a quorum is not present, a lesser number may adjourn the meeting to some future time within thirty (30) days. |

| SECTION 3 | The Board of Directors shall have and exercise all administrative powers of the Lodge and have the authority to transact business to accomplish the aims and objectives of the membership in accordance with this Constitution and By-laws. |
|---|---|
| SECTION 4 | Any vacancy in any office of the Board of Directors, except Chairpersons of Labor Committees and Agency Trustees shall be filled by the President with the approval of the majority of the remaining members of the Board of Directors. |
| SECTION 5 | The expenses of the members of the Board of Directors and the Delegates of this Lodge attending meetings or conferences may be paid by the Lodge. |
| SECTION 6 | The District of Columbia National Trustee shall be notified of and be provided the opportunity to attend and participate in all Jerrard F. Young Lodge #1 Board of Directors meetings. The District of Columbia National Trustee shall not have a vote. |

# ARTICLE 8 (President)

| SECTION 1 | The President shall be the Chief Executive Officer of the Lodge. |
|---|---|
| SECTION 2 | The President shall preside at all meetings of the Lodge, and shall have general management of the business of the Lodge, and shall see that all orders and resolutions of the Board of Directors are carried into effect. |
| SECTION 3 | The President, together with the Recording Secretary and Financial Secretary, shall execute any and all contracts that may be authorized by the Board of Directors. |
| SECTION 4 | The President shall be an ex-officio member of all standing committees. (Excluding Labor Committees) |
| SECTION 5 | The President shall have the power to appoint a majority of any committees to inquire into any affair or matter affecting or concerning the Lodge. (Excluding Labor Committees). |
| SECTION 6 | The President shall have the authority to call a special or emergency meeting of the Lodge membership or of the Board of Directors when he |

deems it necessary for the good of the Lodge.

| SECTION 7 | The President shall, at each meeting of the Board of Directors or Lodge, submit a complete and comprehensive report of the official business transacted by him subsequent to the last meeting, together with such recommendations as he may deem advisable. |
|---|---|
| SECTION 8 | The President shall at the expiration of his term of office or termination thereof for any reason, convey to his successor all unfinished business of the Lodge within ten (10) days thereafter. The President shall deliver all books, documents, records, paraphernalia, equipment and all other Lodge property in his possession, and shall require and receive a receipt from his successor for same. |
| SECTION 9 | The President shall have the authority, when countersigned by the Treasurer and/or Financial Secretary and/or Recording Secretary, to draw, sign, and issue checks, drafts and money orders for the withdrawal of Lodge funds for the prompt payment of all lawful obligations of this Lodge. |
| SECTION 10 | The President shall have the authority to appoint a parliamentarian with the approval of the Board of Directors. |
| SECTION 11 | The President shall furnish a bond for the faithful performance of his duties performed by his office. Such form and amount as approved by the Board of Directors shall be paid for by the Lodge. |

# ARTICLE 9 (Immediate Past President)

| SECTION 1 | The Immediate Past-President shall assist the President and the members of the Board of Directors in the performance of their respective duties. |
|---|---|
| SECTION 2 | The Immediate Past-President may attend the meetings of the Lodge and the Board of Directors. |
| SECTION 3 | The Immediate Past-President shall be deemed a member of the Board of Directors and entitled to cast a vote. |
| SECTION 4 | The Immediate Past-President shall execute any or such assignments as may be ordered by the President |

or the Board of Directors.

# ARTICLE 10 (Vice President)

**SECTION 1**
The Vice-president shall attend the meetings of the Lodge and the Board of Directors, and shall preside at those meetings in the absence of the President.

**SECTION 2**
The Vice-president shall have the authority to perform the duties of the President during his absence.

**SECTION 3**
The Vice-president shall have the power to appoint the minority of any or all committees. (Excluding Labor Committees)

**SECTION 4**
The Vice-president shall execute any or such assignments as may be ordered by the President or the Board of Directors.

**SECTION 5**
The Vice-president shall be declared the President in the event the office of the President becomes vacant for any reason.

**SECTION 6**
he Vice-president shall at the expiration of his term of office or termination thereof for any reason, convey to his successor all unfinished business of the Lodge within ten (10) days thereafter. The Vice-president shall also deliver all books, documents, records, paraphernalia, equipment and all other Lodge property in his possession, and shall require and receive a receipt from his successor for same.

# ARTICLE 11 (Recording Secretary)

**SECTION 1**
The Recording Secretary shall have custody of all books, records, documents, the Seal of the Lodge and all equipment and paraphernalia pertaining to his duties under the general authority of the President and the Board of Directors.

**SECTION 2**
The Recording Secretary shall record and transcribe all minutes of the Board of Directors and general

|  |  |
|---|---|
|  | membership meetings, and submit same for approval or rejection at the next respective meeting. |
| **SECTION 3** | The Recording Secretary shall conduct the general correspondence of the Lodge. |
| **SECTION 4** | The Recording Secretary shall be the official custodian of the Constitution and the by-laws, which shall be authenticated by the Seal of the Lodge and signature of the President. |
| **SECTION 5** | The Recording Secretary shall at the expiration of his term of office or termination thereof for any reason, convey to his successor all unfinished business of the Lodge within ten (10) days thereafter; the Recording Secretary shall also deliver all books, documents, records, paraphernalia, equipment and all other Lodge property in his possession and shall require and receive a receipt from his successor for same. |
| **SECTION 6** | The Recording Secretary shall execute any such assignments as may be ordered by the President, Vice-president or the Board of Directors. |
| **SECTION 7** | The Recording Secretary and Financial Secretary shall, together with the President, execute any and all contracts that may be authorized by the Board of Directors. |
| **SECTION 8** | The Recording Secretary shall have the authority, when countersigned by the President and/or Financial Secretary and/or Treasurer, to draw, sign, and issue checks, drafts and money orders for the withdrawal of Lodge funds for the prompt payment of all lawful obligations of this Lodge. |

# ARTICLE 12 (Financial Secretary)

|  |  |
|---|---|
| **SECTION 1** | The Financial Secretary shall have charge of the financial records of the Lodge including all books, cards and papers showing the payments and non-payments of dues and/or assessments by members of the Lodge. |
| **SECTION 2** | The Financial Secretary's books shall be open for inspection by any member of the Board of Directors. |

| | |
|---|---|
| **SECTION 3** | The Financial Secretary shall at the expiration of his term of office or termination thereof for any reason, convey to his successor all unfinished business of the Lodge within ten (10) days thereafter; the Financial Secretary shall also deliver all books, documents, records, paraphernalia, equipment and all other Lodge property in his possession, and shall require and receive a receipt from his successor for same. |
| **SECTION 4** | The Financial Secretary and Recording Secretary shall, together with the President, execute any and all contracts that may be authorized by the Board of Directors. |
| **SECTION 5** | The Financial Secretary shall have the authority, when countersigned by the President and/or Treasurer and/or Recording Secretary, to draw, sign, and issue checks, drafts and money orders for the withdrawal of Lodge funds for the prompt payment of all lawful obligations of this Lodge. |

# ARTICLE 13 (Treasurer)

| | |
|---|---|
| **SECTION 1** | The Treasurer shall receive and take charge of all monies belonging to the Lodge. |
| **SECTION 2** | The Treasurer shall keep accurate records of all receipts and disbursements which shall be made available at all times for examination by any member of the Board of Directors. |
| **SECTION 3** | The Treasurer shall have the authority, when countersigned by the President and/or Financial Secretary and/or Recording Secretary, to draw, sign, and issue checks, drafts and money orders for the withdrawal of Lodge funds for the prompt payment of all lawful obligations of this Lodge. |
| **SECTION 3** | The Treasurer shall at the expiration of his term of office or termination thereof for any reason, convey to his successor all unfinished business of the Lodge within ten (10) days thereafter; the Treasurer shall also deliver all books, documents, records, paraphernalia, equipment and all other Lodge property in his possession, and shall require and receive a receipt from his successor for same. |

# ARTICLE 14 (Conductor)

**SECTION 1**  The Conductor shall examine dues cards of officers and members, ascertaining that all present at the meeting are in good standing, take up the password and report to the President.

# ARTICLE 15 (Guard)

**SECTION 1**  There shall be two (2) Guards known as the Outer Guard and the Inner Guard, who shall have charge and control of the Lodge hall or meeting place.

# ARTICLE 16 (Chaplain)

**SECTION 1**  The Chaplain shall offer the opening and closing prayer at all meetings and render such assistance as may be necessary in times of illness and bereavement to the members in need.

# ARTICLE 17 (Trustees-at-Large)

**SECTION 1**  The Trustees-at-large shall constitute a board which shall be known as the Board of Trustees. They shall elect from among their own number, by voice vote or by show of hand, one member to be known as Chairman of the Board of Trustees. They shall perform duties as described in Article XVII of the By-laws.

# ARTICLE 18 (Agency Trustees)

| SECTION 1 | Agency trustees shall be composed of those members who are elected by their respective agencies who qualify to elect a Trustee to the Board of Directors. These trustees shall be elected in November of the odd number year and shall be installed in January of the forthcoming year. |

# ARTICLE 19 (Delegates)

| SECTION 1 | Delegates to the Grand Lodge meetings or conferences shall be elected for a term of two years in the manner and at the time provided by within the By-laws. |

# ARTICLE 20 (General Counsel)

| SECTION 1 | There shall be a General Legal Counsel retained on an annual basis who shall be designated by the President with the approval of the Board of Directors. |

# ARTICLE 21 (Standing Committees)

| SECTION 1 | There shall be five (5) standing committees: Legal Aid Committee; Membership Committee; Constitution and By-laws Committee; Financial Assistance Committee and Legislative Committee. |
| SECTION 2 | The membership of each standing committee shall be an odd number as specified by the Board of Directors, with the President appointing the majority, and the Vice-president appointing the minority. All appointments to a standing committee must be approved by the Board of Directors. |
| SECTION 3 | Once appointed, a member retains his position on the committee for the term of the Board of Directors, or until such time as he resigns or is |

removed for cause by the Board of Directors.

# ARTICLE 22 (Labor Committees)

**SECTION 1**
There may be formed within the Lodge one or more Labor Committees. Each such committee shall consist of the employees of a law enforcement organization eligible for membership in the Lodge, which employees are members of a single certified or certifiable bargaining unit within the law enforcement organization.

**SECTION 2**
Each Labor Committee formed within the Lodge shall exist and operate for the purpose of representing the employees in the bargaining unit, including negotiating a collective bargaining agreement with the employer on behalf of unit members, and otherwise functioning as a labor organization to improve the pay, benefits and working conditions of the unit members, as authorized by applicable law. Each Labor Committee must seek and obtain certification to represent its members from the applicable certifying authority for the employing organization.

**SECTION 3**
Membership within any particular Labor Committee shall be based solely on the criteria of employment and applicable law, and no candidate for membership or office within such Labor Committee shall be barred or penalized by reason of age, sex, race, national origin, religious or political conviction, or any criteria prohibited by law.

**SECTION 4**
Each Labor Committee formed within the Lodge may adopt its own charter, by-laws, rules, regulations and procedures, provided that:

A. Such charter, by-laws, rules, regulations and procedures comply with the applicable laws, rules and regulations governing the conduct of labor organizations within the applicable jurisdiction;

B. Such charter, by-laws, rules, regulations and procedures do not

conflict with the Constitution of the Lodge, unless required by applicable law;

C. To the extent that a Labor Committee does not adopt its own charter, by-laws, rules, regulations and procedures, its operation shall be governed by the applicable provisions of the Lodge Constitution and By-laws, unless such are in conflict with applicable law or regulation;

D. Copies of proposed charters, by-laws, rules, regulations and procedures, and amendments thereto, must be submitted to the Lodge for review and approval in conformity with the standards established herein;

E. No Labor Committee shall make contracts or incur liabilities on behalf of the Lodge unless authorized in writing to do so by the Lodge, and the Lodge is not liable under such agreement unless they were so authorized;

F. Each Labor Committee shall ensure that its members are provided with a copy of the current collective bargaining agreement applicable to those members; and a copy of the Lodge Constitution, By-laws and the Labor Committee's charter, where applicable, upon request.

**SECTION 5**  Each Labor Committee (hereinafter referred to as a "unit") formed within the Lodge shall organize itself to operate democratically through the election of officers by means of periodic elections subject to recognized safeguards and provisions to ensure the right of all members of the unit to participate in the nominating and electoral process.

**SECTION 6**  Each unit shall maintain fiscal integrity in the conduct of its affairs, include provisions for accounting and financial controls, reports or summaries to members. Officers and agents of a unit

are prohibited from having businesses or financial interests which conflict with their duty to the organization and its members. No person identified with corrupt influences, pursuant to applicable law, shall be an officer in a unit. The financial records of each unit shall be submitted to designated agents of the Lodge upon request of the Lodge, and such records shall be kept in accordance with procedures acceptable to the Lodge. Each unit shall cause an audit of its financial books, records and funds to be made annually for its fiscal year by an independent professional accountant designated by the unit or its governing body. Audits shall be in accordance with standard accounting procedures and shall be available to the membership of the unit, and a copy of the audit shall be sent to the Lodge within thirty (30) days of its completion. All unit officers and employers authorized to sign checks upon unit funds or handling of unit monies shall be bonded in amounts and in a manner designated by the unit or its governing body.

**SECTION 7**    Dues and other assessments shall be applied in a uniform manner to all members of a unit in accordance with applicable provisions of law and the By-laws of each Labor Committee. From the amount collected as dues or assessments from each member of a unit, an amount equal to the annual dues of the Lodge shall be paid to the Lodge unless a unit member specifically declines to join the Lodge. Payment of such fee shall entitle each member of a unit to full membership in the Lodge, according to their status, upon application by the member and approval by the Lodge. Units and the Lodge may enter into agreements for the provision of services and the payment of fees as may be determined by the unit and the Lodge, provided that any such agreements are disclosed to the members and are not contrary to applicable law.

**SECTION 8**    Units shall hold periodic general membership meetings on a regular basis which meetings shall be announced in advance and open to all members of the unit.

**SECTION 9**    Each unit shall establish procedures securing the right of all members to fair and equal treatment under the governing rules of the unit, and to fair process in disciplinary proceedings.

SECTION
10

Each Labor Committee formed within the Lodge shall at all times conduct its operations in a democratic manner, acting in the best interests of its members, and in conformity with the Lodge Constitution/By-laws and applicable law.

# ARTICLE 23 (Auxiliaries)

SECTION
1

This Lodge recognizes, acknowledges and validates Auxiliaries to the Jerrard F. Young Lodge #1, District of Columbia. Such Auxiliaries shall be known as Fraternal Order of Police, Jerrad F. Young Auxiliaries and may function as subordinate lodges. Such Auxiliaries shall be subject to the control and supervision of this Lodge and shall conform to and be governed by this Constitution and the By-laws thereof.

# ARTICLE 24 (Associates)

SECTION
1

This Lodge recognizes, acknowledges and validates Associate Lodges to the Jerrard F. Young Lodge #1, District of Columbia. Such Associate Lodges shall be known as Fraternal Order of Police, Jerrad F. Young Associates and may function as subordinate lodges. Such Associate Lodges shall be subject to the control and supervision of this Lodge and shall conform to and be governed by this Constitution and the By-laws thereof.

# ARTICLE 25 (Discipline)

SECTION
1

Any member in arrears of payments of dues or assessments more than ninety (90) days shall be automatically suspended and shall be denied the Lodge benefits and privileges. Any such member

suspended under this section must re-apply for
Active Membership.

| | |
|---|---|
| **SECTION 2** | Any member who is "not in good standing" may be restored to "Good Standing" by payment of all amounts due. Such member may be required to pay up to one year's dues in advance if such recommendation is made by the Membership Committee and approved by the Board of Directors. |

# ARTICLE 26 (Legal Aid)

| | |
|---|---|
| **SECTION 1** | There shall be a legal aid committee the purpose of which shall be to assist in the establishment and coordination of any legal aid plan(s) as may from time to time be adopted by the Board of Directors. |
| **SECTION 2** | No attorney other than those approved by the Board of Directors shall be retained for legal aid request. |

# ARTICLE 27 (Order of Business)

| | |
|---|---|
| **SECTION 1** | There shall be an official order of business by which the meetings of Lodge D.C. 1 shall be conducted. This order shall be established by and described in the By-laws. |

# ARTICLE 28 (Parliamentary Procedure)

| | |
|---|---|
| **SECTION 1** | Except as provided in the Constitution and By-laws, the latest edition of "Roberts Rules of Order" shall govern the conduct and deliberations of the Board of Directors, the general membership and all other meetings of the Lodge. |

# ARTICLE 29 (Official Ritual)

SECTION 1
There shall be an Official Ritual of this Lodge which shall be known as the Fraternal Order of Police Ritual.

# ARTICLE 30 (Amendments)

SECTION 1
Amendments to the Constitution and the By-laws as outlined herein may be amended in the following manner:

A. Proposed amendments to this Constitution and By-laws shall be submitted in writing to the Recording Secretary at least thirty (30) days prior to the next regular General Membership meeting and at least 60 days prior to the General Membership meeting at which it will be voted on.

B. The Recording Secretary shall supply copies of the proposed amendment(s) to each member of the Board of Directors and to each member present at the General Membership meeting prior to the meeting at which time the amendment(s) shall be voted on.

C. The proposed amendment(s) shall then be voted on at the next general membership meeting not to exceed 90 days from the receipt of the proposed amendment(s) by the Recording Secretary. The amendment(s) shall require two-thirds vote of those members present at that meeting to adopt the amendment(s).

# ARTICLE 31 (Dues & Assessments)

SECTION 1
Initiation fee and/or annual dues for active members shall be determined by the Board of Directors with the approval of the membership.

SECTION 2
Initiation fee and/or annual dues for Associate membership shall be determined by the Board of Directors with the approval of the membership.

# BY-LAWS

## ARTICLE 1 (Name)

| | |
|---|---|
| SECTION 1 | No member shall use the name or insignia of the Fraternal Order of Police Jerrard F. Young Lodge #1 except as authorized by the Constitution and By-laws, the Board of Directors or as set forth herein. |
| SECTION 2 | The unauthorized use or the abuse of the name or insignia of the Fraternal Order of Police Jerrard F. Young Lodge #1 or the infringement of a trademark thereof by a member shall be grounds for discipline, including suspension, expulsion, removal from office or revocation of lodge charter. |
| SECTION 3 | The Recording Secretary shall promulgate such rules as he deems necessary to protect, police, regulate and license the trademarks of the Jerrard F. Young Lodge #1 and to ensure that the name and insignia of this Lodge is used only for the purposes established by and in accordance with the authority granted by the Board of Directors. |

## ARTICLE 2 (Character)

| | |
|---|---|
| SECTION 1 | The Lodge shall be cognizant of all matters of local and national scope and concern affecting the welfare and interests of law enforcement officers and their dependents. The Board of Directors, or in case of emergency, the President, shall take such immediate action as shall be necessary to safeguard their welfare or interests by providing aid and such other services as shall be required. |
| SECTION 2 | In regional or national matters the Board of Directors or the President may provide such legal or technical advisory services as may be appropriate. |

# ARTICLE 3 (Definitions) [ R E S E R V E D ]

# ARTICLE 4 (Membership)

| | |
|---|---|
| **SECTION 1** | The Lodge shall be the judge of its membership, subject to the provisions of this Constitution and By-laws. |
| **SECTION 2** | Any member "not in good standing" as defined in the Constitution, Article 3, Section 1 may be denied all benefits and privileges not specifically denied by any other section of these By-laws by a majority vote of the Board of Directors. |
| **SECTION 3** | Applications for membership to the Lodge shall be on forms prescribed and shall be accompanied by the initiation fee and one (l) year's annual dues, payable in advance, as determined by the Board of Directors. |
| **SECTION 4** | Applications for membership to the Lodge shall be referred to the Membership Committee who shall conduct an investigation of the applicant's qualifications. |
| **SECTION 5** | The Membership Committee shall, upon completion of its investigation, recommend to the general membership for election, their acceptance or rejection. |
| **SECTION 6** | The Recording Secretary shall notify an applicant within ten (10) days, as to the acceptance or rejection of his application by the general membership. There shall be no appeal. |
| **SECTION 7** | The applicant, after having been notified of his acceptance to membership, shall present himself for initiation at a general membership meeting within three (3) months from the date of such notification. Special exceptions to this rule shall be allowed at the discretion of the Board of Directors. |

# ARTICLE 5 (Organization)

| SECTION 1 | The regular meetings of the general membership of this Lodge shall be held each month on the day and time specified by the membership, at such place as is designated by the Board of Directors. |
|---|---|
| SECTION 2 | The Board of Directors shall meet at least once a month on the day and time specified by the President of the Lodge. The locations of these meetings shall be arranged by the Recording Secretary. |
| SECTION 3 | At any general membership or special meeting of the Lodge fifteen (15) or more active members and a majority of the Elected Officers shall constitute a quorum. |
| SECTION 4 | The majority vote of the members present shall govern all matters pertaining to the Lodge business except where otherwise directed by this Constitution and By-laws. |
| SECTION 5 | At all general membership and Board of Directors meetings a register shall be kept by the Recording Secretary of all members that are present. |

# ARTICLE 6 (Elections)

| SECTION 1 | Any member in "Good Standing" for a period of twelve (12) consecutive months or more immediately preceding the holding of any election and who has met all other requirements of the By-laws shall be eligible for election to any office. |
|---|---|
| SECTION 2 | Nomination for Officers shall be held at the regular meeting in October of each odd numbered year. |
| SECTION 3 | Eligible members seeking nomination may do so by submitting notice to the Recording Secretary on or before the date of the nominations meeting. |
| SECTION 4 | Nominations for office shall also be entertained from the floor at the nomination meeting. The nomination must be personally accepted by the nominee. |
| SECTION 5 | No member shall be a nominee for more than one (1) elective office. |

**SECTION 6**  There shall be a nominating committee, consisting of three Active Members, who will verify the eligibility of the candidate seeking the elective office.

**SECTION 7**  Election of Officers shall be by secret ballot at the regular meeting in November of each odd numbered year.

**SECTION 8**  The names of all nominees shall appear on a printed ballot the day of the election. The order in which the names appear within each office shall be determined by a random process.

**SECTION 9**  There shall be an Election Committee consisting of such Active Members as necessary for the orderly process of the election.

**SECTION 10**  The Election Committee shall be responsible for the voting poll(s), at the location(s) designated by the Board of Directors, which shall be open to members on election day from 7:00 a.m. to 7:00 p.m. These particular hours will be adhered to unless an official recommendation is made by the Board of Directors who may alter said hours if deemed necessary.

**SECTION 11**  The Election Committee shall be responsible for maintaining order at the poll(s) and for insuring the polling is conducted in an orderly, neutral atmosphere. The Election Committee shall be responsible for the security of all ballots and for the integrity of the voting procedure. The Election Committee shall, during polling hours, maintain the voting area in such manner as to keep the area free from discarded campaign paraphernalia and assorted literature distributed by the various candidates.

**SECTION 12**  Upon completion of the voting, the Election Committee shall count the votes immediately. The candidate receiving the highest number of votes shall be declared elected.

**SECTION 13**  In case of a tie between candidates having the highest number of votes in one office, a run-off election shall be held within ten (10) days.

**SECTION 14**  The President shall appoint a Judge of Election the day of the election and prior to casting of ballots.

**SECTION 15**  The Judge of Election shall supervise the counting of votes and report the results to the membership. The decision of the Judge of Election shall be final.

| | |
|---|---|
| **SECTION 16** | The Judge of Election shall instruct the Election Committee to abstain in any way whatsoever from aiding or assisting voters in their selection of any or all perspective candidates. |
| **SECTION 17** | The installation of the elected Officers shall be held at the general membership meeting in January in the forthcoming year. |
| **SECTION 18** | The type of affair for the installation of the elected Officers shall be the decision of the Board of Directors. |

# ARTICLE 7 (Board of Directors)

| | |
|---|---|
| **SECTION 1** | Any member of the Board of Directors who shall miss any three General membership or Board of Directors meetings or any other meeting which is called within any calendar year without the approval of the President or Vice President shall be declared absent and the office which the member holds shall be declared vacant. |

# ARTICLE 8 (President) [ R-E-S-E-R-V-E-D ]

# ARTICLE 9 (Immediate Past President) [ R-E-S-E-R-V-E-D ]

# ARTICLE 10 (Vice President) [ R-E-S-E-R-V-E-D ]

# ARTICLE 11 (Recording Secretary)

| | |
|---|---|
| **SECTION 1** | The Recording Secretary shall maintain a book known as the "Book of Amendments to the |

Constitution and By-laws" which shall be authenticated by the Seal of the Lodge and the signature of the President.

| | |
|---|---|
| **SECTION 2** | The Recording Secretary shall maintain a book known as the "Book of Motions" which shall be authenticated by the Seal of the Lodge and the signature of the President. |
| **SECTION 3** | The Recording Secretary shall, whenever it is deemed necessary, prepare and circulate a newsletter pertaining to the activities of the Lodge to all of the membership. |
| **SECTION 4** | The Recording Secretary shall give written notice to all applicants for membership to the Lodge of their election or rejection. |
| **SECTION 5** | The Recording Secretary shall notify appropriate members of all special meetings. The notification shall include the day and time and location of such meetings. Such notifications may be made by mail, telephone, posting at the Lodge or by other means reasonably designed to notify members under the particular circumstances. |
| **SECTION 6** | The Recording Secretary shall furnish a bond for the faithful performance of his duties performed by his office. The bond will be in such form and amount as approved by the Board of Directors and will be paid for by the Lodge. |

# ARTICLE 12 (Financial Secretary)

| | |
|---|---|
| **SECTION 1** | The Financial Secretary shall at the close of each meeting deliver to the Treasurer the total amount of all receipts received. |
| **SECTION 2** | The Financial Secretary shall notify, in writing, all members who are in arrears of their dues or assessments in violation of the Constitution, Article 25, Section 1 and shall notify the Board of Directors as soon as possible of any member suspended for non-payment of dues or assessments. |
| **SECTION 3** | The Financial Secretary shall certify and forward all per capita tax to the National FOP as appropriate. |

| SECTION 4 | The Financial Secretary shall furnish a bond for the faithful performance of his duties performed by his office. The bond will be in such form and amount as approved by the Board of Directors and will be paid for by the Lodge. |

# ARTICLE 13 (Treasurer)

| SECTION 1 | The Treasurer shall deposit all funds collected into a bank which have been approved by the Board of Directors. |
| SECTION 2 | The Treasurer shall set up individual accounts for funds as needed. |
| SECTION 3 | The Treasurer shall submit monthly reports to the Board of Directors and to the general membership of the financial condition of the Lodge. |
| SECTION 4 | The Treasurer shall cause to have the Lodge books and records audited annually as of June 30, by a certified public accountant as specified by the Board of Directors. The Lodge books and records shall include the books and records of the Club. |
| SECTION 5 | The Treasurer shall furnish a bond for the faithful performance of his duties performed by his office such form and amount as approved by the Board of Directors to be paid for by the Lodge. |

# ARTICLE 14 (Conductor)

| SECTION 1 | The Conductor shall guide all candidates through the Initiation Ceremony and introduce them to the membership. |
| SECTION 2 | The Conductor shall perform such duties as the President may require. |

# ARTICLE 15 (Guards)

| SECTION 1 | The Guards shall permit only qualified persons to enter or remain in the Lodge hall or meeting place. |
|---|---|
| SECTION 2 | The Guards shall assist the Conductor in the execution of such duties as the President may order. |

# ARTICLE 16 (Chaplain)

| SECTION 1 | The Chaplain shall perform such duties as the President may require. |
|---|---|

# ARTICLE 17 (Trustees at Large)

| SECTION 1 | The Board of Trustees have charge of and are responsible for all property of the Lodge to include written records, computer printouts, computer programs and disks, and any other records or documents generated for the Lodge by an employee or member of the Lodge. |
|---|---|
| SECTION 2 | The Board of Trustees shall take charge of all physical property of the Lodge and make a complete and itemized inventory. The Board of Trustees shall file with the Board of Directors a certified copy of such inventory within thirty (30) days upon taking office. |

# ARTICLE 18 (Agency Trustees)

| SECTION 1 | The duties of these Trustees shall include participation on the hearing panels as defined in Article 25, Section 3 of the By-laws. They shall act as a liaison from their respective agencies to the Board of Directors and perform other such duties as directed by the President. |
|---|---|
| SECTION 2 | Any vacancy in the office of Agency Trustee shall be filled through a special election within that agency. |

# ARTICLE 19 (Delegates)

| | |
|---|---|
| **SECTION 1** | Each member interested in becoming a delegate shall submit his name in writing no later than March 31st of the even numbered year to the Board of Directors. |
| **SECTION 2** | The Board of Directors may nominate members to the list of potential delegates. |
| **SECTION 3** | Prior to June 1st of the even numbered year, the Lodge shall meet and elect such number of delegates as authorized by the National FOP. |
| **SECTION 4** | The Board of Directors of the Jerrard F. Young Lodge #1, District of Columbia shall be delegates to the National Biennial Conference. |
| **SECTION 5** | Any delegate who misses any three General membership meetings within any calendar year without the approval of the President or Vice President shall be declared absent and the office which the member holds shall be declared vacant. |
| **SECTION 6** | Any vacancy in the delegates of this Lodge occurring after the election will be filled by the President. Unless a delegate resigns or is removed for cause, his appointment shall be in effect until the next delegate election. |

# ARTICLE 20 (General Counsel) [ R-E-S-E-R-V-E-D ]

# ARTICLE 21 (Standing Committees)

| | |
|---|---|
| **SECTION 1** | The duties of each standing committee shall be specified by the Board of Directors. |

# ARTICLE 22 (Labor Committees) [ R-E-S-E-R-V-E-D ]

# ARTICLE 23 (Auxiliaries) [ R-E-S-E-R-V-E-D ]

# ARTICLE 24 (Associate Lodges) [ R-E-S-E-R-V-E-D ]

# ARTICLE 25 (Discipline)

**SECTION 1**
Any member who is "not in good standing", or who has been suspended for any reason, shall not be eligible to transfer membership to any other Fraternal Order of Police Lodge.

**SECTION 2**
Any member can be suspended from the club for misconduct by the Club manager on duty. The suspended member will be afforded a hearing within fifteen (15) days, and he can bring an attorney or witnesses if he desires.

**SECTION 3**
Any member of the Lodge who has had his Club privileges suspended by the club manager for misconduct within the club, can appeal the decision of the Club manager to the Board of Agency Trustees. The Board of Agency Trustees' decision is final.

**SECTION 4**
A member in "Good Standing" may be suspended from the Lodge for good and just cause after notice by the Board of Directors.
A. A hearing shall be conducted by a panel of five Agency Trustees.
B. The Chairman of the Board of Trustees shall select the five (5) members from an alphabetical, rotating list of Agency Trustees, who shall sit as a panel and decide the issue before them. The Chairman of the Board of Trustees shall select from among the five (5) Agency Trustees, a chairman for that particular panel. The Chairman of the Board of Trustees shall have no further function in the hearing other than for administrative duties.
C. The accused may challenge any member of the panel for just cause, and such challenge shall be

Case 1:08-cv-00462-ESH    Document 31-3    Filed 06/16/2008    Page 31 of 35

heard by the remaining members of the panel. Any panel member successfully challenged shall be replaced by the Chairmen of the Board of Trustees as per section 4B above.

D. The panel may impose any penalty it deems appropriate up to and including expulsion.

**SECTION 5**   In the hearing of a complaint lodged against any member which may result in disciplinary action the following procedure shall be followed. The panel shall:

A. Require the complaint be made in writing by an identified member.

B. Serve the accused member personally or by registered mail with a written copy of the complaint with such specification of facts to enable the member to prepare a defense and allow a reasonable period of time for such preparation prior to the hearing. Such period of time shall be determined by the sitting panel but shall not be less than 10 days from the date of the notice.

C. In the hearing consideration will be confined to the specific facts set forth in the complaint.

D. The following procedure shall be followed during the hearing:

1. The Chairman of the panel shall preside at the hearing.

2. The complainant may produce evidence in support of the charges.

3. The member accused may produce evidence he wishes to offer in defense.

4. The complainant shall have the burden of proving the allegations by a preponderance of evidence, that is, that degree of relevant evidence which a reasonable mind, considering the evidence as a whole, might accept as sufficient to support a conclusion that the matter asserted is true. The parties shall have the right to testify, to call and examine witnesses, to introduce other evidence and

to cross examine witnesses. The parties may be represented by counsel. The Panel may call and examine witnesses, introduce exhibits and ask questions of any witnesses on any matter relevant to the issues. Hearings shall be conducted pursuant to administrative procedures; the rules of evidence prevailing in courts of law shall not control, but irrelevant, immaterial, and unduly repetitious evidence shall be excluded. The Panel shall confer on procedural questions which will be determined by informal majority vote of the Panel. The Chairperson of the Panel will announce all procedural rulings; such rulings shall be binding, but exceptions to such rulings shall be placed on the record. The Panel has the authority to exclude witnesses from the hearing room prior to their testimony. The Panel has the authority to exclude parties or their representatives who are disruptive or who refuse to comply with procedural rulings of the Panel. Exclusion of a party or representative shall be considered an extraordinary measure, and the reasons for such exclusion shall be fully set forth in the record.

5. A majority vote of the panel is required for a finding of guilty.

E. Any complaint filed by any member which is found to be frivolous or without factual basis will be disregarded and disciplinary action may be initiated against the member submitting such complaint by the panel.

F. Any member suspended from the Lodge for any reason except for non-payment of dues, shall have the right to appeal to the State Lodge Board of Directors. Such appeal must be filed in writing with the President of
the State Lodge within thirty (30) days of the suspended member's receipt of official notice of his suspension.

**SECTION 6**     Reserved

**SECTION 7**     Any member who makes public statements detrimental or adverse to the interests of the Lodge without first pursuing his concern through the

Lodge's internal methods for raising and resolving grievances, complaints and concerns, may be subject to disciplinary action for conduct prejudicial to the Lodge. With respect to the Lodge's internal procedures, no member shall coerce, punish, threaten punishment or cause to be punished any member because of that member's stand on any issue under consideration by the FOP, nor shall any member stop or hinder any other member from expressing his views within the FOP or actively participating in any FOP activities. Members who violate these provisions may be subject to disciplinary procedures.

**SECTION 8**    Members shall not solicit funds or anything of value in the name of the Jerrard F. Young Lodge DC1, District of Columbia from person(s), firm(s) or any type of business whatsoever in the territory of another local lodge without written permission of the local lodge in whose territory the solicitation is to be made. Said written permission shall be signed by the President and Recording Secretary of the lodge granting permission and shall certify that permission was given by the local lodge at a regular meeting or at a special meeting called for that specific purpose.

**************ERROR***************

# ARTICLE 26 (Legal Aid)

**SECTION 1**    The Lodge may facilitate the cooperative availability and use of a group legal aid plan(s), which will protect Lodge members from legal action in the course of their duties as law enforcement officers. Such plan(s) may be administered through the Grand Lodge, this Lodge, a labor committee or the plan provider's office.

**SECTION 2**    The service provider for any legal aid plan(s) shall be determined by the Board of Directors upon recommendation of the Legal Aid Committee. The provisions and the terms of any legal aid plan(s) administered by the Lodge shall be a the discretion of the Board of Directors.

| SECTION 3 | Any and all dues for participation in any legal aid plan(s) shall be the responsibility of the individual member. |
|---|---|
| SECTION 4 | Members shall have the right to select any legal aid plan regardless of any endorsement(s) by the Lodge, or to decline any or all legal aid plans. However, individuals and/or groups shall not be eligible for legal aid from the Lodge should they incur legal expenses. |

# ARTICLE 27 (Order of Business) [ R-E-S-E-R-V-E-D ]

# ARTICLE 28 (Parliamentary Procedure) [ R-E-S-E-R-V-E-D ]

# ARTICLE 29 (Ritual)

| SECTION 1 | The Ritual of the Fraternal Order of Police as revised by the Biennial Conference of the Grand Lodge shall be the official Jerrard F. Young Lodge #1 Ritual. |
|---|---|

# ARTICLE 30 (Amendments) [ R-E-S-E-R-V-E-D ]

# ARTICLE 31 (Dues and Assessments)

| SECTION 1 | Associate membership for all active duty D.C. Firemen and Reserve Police Officers shall be at the same rate as that of a regular active member. |
|---|---|
| SECTION 2 | Applicants approved for membership at the December meeting shall have their dues payment applied to the subsequent year. |

# SAVINGS CLAUSE

Should any part hereof or any provisions herein contained be rendered or declared invalid by reason of any existing or subsequently enacted legislation or by decree of a court of competent jurisdiction, such invalidation of such part or portion of this Constitution and By-laws shall not invalidate the remaining portions hereof and they shall remain in full force and effect.

*last updated 12/05/2005*

**DUNLAP DECLARATION**

# EXHIBIT C



# FRATERNAL ORDER OF POLICE
## NATIONAL LABOR COUNCIL 2

## 2005 CONSTITUTION
### Issued 4-20-05

# TABLE OF CONTENTS

ARTICLE 1 - NAME................................................................. 2

ARTICLE 2 - CHARACTER........................................................... 2

ARTICLE 3 - OFFICES - PLACE OF BUSINESS......................................... 2

ARTICLE 4 - PURPOSE............................................................. 2

ARTICLE 5 - MEMBERSHIP.......................................................... 3

ARTICLE 6 - EXECUTIVE BOARD..................................................... 4

ARTICLE 7 - INTERNAL DISCIPLINE................................................. 6

ARTICLE 8 - PRESIDENT OF USPS #2............................................... 12

ARTICLE 9 - FIRST VICE PRESIDENT OF USPS #2.................................... 13

ARTICLE 10 - SECOND VICE PRESIDENT OF USPS #2.................................. 14

ARTICLE 11 - SECRETARY-TREASURER OF USPS #2.................................... 15

ARTICLE 12 - SERGEANT AT ARMS OF USPS #2...................................... 16

ARTICLE 13 - GRIEVANCE SECRETARY OF USPS #2................................... 17

ARTICLE 14 - AREA NATIONAL REPRESENTATIVES.................................... 18

ARTICLE 15 - REGIONAL REPRESENTATIVES......................................... 19

ARTICLE 16 - EXPENSES, COMPENSATION, AND PROHIBITIONS......................... 21

ARTICLE 17 - DUES.............................................................. 22

ARTICLE 18 - WITHDRAWAL POLICY................................................ 22

ARTICLE 19 - FEE REDUCTION PROCEDURE.......................................... 23

ARTICLE 20 - CONVENTION........................................................ 23

ARTICLE 21 - PARLIAMENTARY PROCEDURE.......................................... 24

ARTICLE 22 - AMENDMENTS........................................................ 25

ARTICLE 23 - INTERPRETATION AND SEVERABILITY.................................. 26

ARTICLE 24 - INFORMATION MANAGER.............................................. 26

ARTICLE 25 - PAST NATIONAL PRESIDENT.......................................... 27

ARTICLE 26 - UNION STEWARDS................................................... 27

ARTICLE 27 - BUSINESS AGENTS.................................................. 28

ARTICLE 28 - ADMINISTRATIVE ASSISTANTS........................................ 28

ARTICLE 29 - NATIONAL LEGISLATIVE PROGRAM DIRECTOR............................ 28

# ARTICLE 1 - NAME

The name of this organization shall be USPS #2 of the Fraternal Order of Police, National Labor Council. Throughout this Constitution, this organization shall be referred to as "USPS #2." This organization shall also be known as the "Postal Police Officers Association."

# ARTICLE 2 - CHARACTER

This Constitution shall be the fundamental law of the USPS #2 and shall govern the conduct of this organization and affiliated organizations.

USPS #2 is an organization consisting of law enforcement officers comprising the collective bargaining unit of Postal Police Officers (Uniformed personnel of the Inspection Service as defined in the Postal Reorganization Act, Title 39, US Code, Section 1201(2)) employed by the United States Postal Service.

# ARTICLE 3 - OFFICES - PLACE OF BUSINESS

The general offices or place of business shall be designated by the Executive Board of the USPS #2. The mailing address of USPS #2 shall be that of the National President.

# ARTICLE 4 - PURPOSE

USPS #2 of the Fraternal Order of Police, National Labor Council is dedicated to the betterment of law enforcement personnel through representation of its members in collective bargaining and other labor relations matters. This organization shall:

1. Act as collective bargaining agent for its affiliates.

2. Engage in collective bargaining, mediation, and arbitration, if necessary, for the purpose of improving wages,

2

hours, and conditions of employment and advancing the rights and promoting the security of its members.

3.  Receive, manage, invest, expend, and otherwise use monies and property of this organization to achieve the objectives set forth in this Constitution.

4.  Furnish services to members as required to further the aims and purposes of the USPS #2.

5.  Unite, represent, defend, and promote the interests of all of its members.

6.  Cooperate with other organizations interested in promoting the efficiency, professionalism, and well being of its members.

7.  To serve as a fraternal organization, chartered under the Fraternal Order of Police, Jerrard F. Young D.C. Lodge #1, as a labor committee known as U.S. Postal Police Officers Association.

# ARTICLE 5 - MEMBERSHIP

Section I

USPS #2 shall consist of all members-in-good-standing.

Section II

A member-in-good-standing is defined as any Postal Police Officer who remains current in the dues requirement, as specified in the Constitution, and otherwise satisfies the requirements of USPS #2. Effective the date of their signature, a Postal Police Officer who has signed and submitted a PS Form 1188 (Cancellation of Organization Dues from Payroll Withholdings) shall no longer be considered a member-in-good-standing for purposes of candidacy or holding any elected or appointed office including, but not limited to, union steward. All applicants will be considered for membership in USPS #2 without regard for his or her age, race, color, sex, creed, religion, ancestry, national origin, or disability.

Section III

Every member shall have equal rights and privileges to nominate candidates, attend general meetings, and participate in deliberations. Members shall be eligible to vote in elections concerning issues which vitally affect their interests as members of USPS #2, provided they maintain an employment relationship within the bargaining unit. Additionally, all candidates for elective offices shall be members-in-good-standing as of March 1 of the year in which the election is held,

3

and shall be actively employed by the United States Postal Service.

Section IV

Every member shall have the right to meet and assemble freely with other members, express any views, arguments or opinions, and to express at meetings his or her views upon candidates for election, or upon any business properly before the meeting, as provided in this Constitution.

Section V

All members have the right to fully participate in the affairs of USPS #2, as provided in this Constitution. Each member has the right to insist that his/her Regional Representative and Stewards comply with this Constitution, and has the right to bring charges alleging violations of this Constitution to the attention of the full Executive Board of USPS #2, as provided herein. The Executive Board shall adopt rules to provide for the investigation of said charges, and implementing this Section, as further provided herein.

Section VI

The USPS #2 is hereby designated, authorized, and empowered exclusively to appear and act for the members and in their behalf before any board, court, committee, or other tribunal in any matter affecting their status as an employee or as a member of the USPS #2, and exclusively to act as the members' agent to represent and bind them in the presentation, prosecution, adjustment and settlement of all grievances, complaints or disputes of any kind or character arising out of the employee/employer relationship.

# ARTICLE 6 - EXECUTIVE BOARD

Section I

The governing body of the USPS #2 shall be called the Executive Board.

Section II

The Executive Board shall establish policy for the general operation of USPS #2. The Executive Board shall work with the Bargaining Committee to obtain an acceptable agreement for the terms and conditions of employment of its members through bargaining with the United States Postal Service.

Section III

    (A)    The Executive Board of the USPS #2 shall consist of six Officers elected in accordance with Articles 8, 9, 10, 11, 12, and 13, and five Area National Representatives as elected in accordance with Article 13.

Section IV

A vacancy will occur on the Executive Board upon a member's death, resignation or disqualification pursuant to the provisions of this Constitution. Disqualifications shall occur whenever an elected member ceases to be a member of the collective bargaining unit of Postal Police Officers of the United States Postal Service, when elected a member remains an inactive employee for a nine month period, or when he/she is found guilty of charges and penalized by loss of office as set forth in this Constitution. Any member who fails to attend one-half (1/2), or ten Executive Board meetings (whichever is less), in any calendar year shall be disqualified; except that an Executive Board member missing a motion while on Annual or Sick Leave, shall be afforded seven days after their return from such leave, to vote on motions proposed in their absence. For purposes of this Section, an Executive Board motion, whether posted on the Union's Executive Board website, or presented via email to Executive Board members, shall be considered a meeting for purposes of disqualification. Any member who for any other reason set forth herein shall cease to be eligible for membership in USPS #2 shall be disqualified.

Section V

Each member of the Executive Board shall be entitled to one vote. The Executive Board may act by a majority vote of its membership present at a meeting if a quorum otherwise exists. A quorum to conduct the business of the Executive Board shall consist of five (5) members. In the event that there is a tie in the vote of the Executive Board, and such issue cannot be resolved by the members of the Board, the President shall break the tie. Executive Board members shall not proxy or delegate their voting rights.

Section VI

The Executive Board of USPS #2 shall have the power to act on all matters that come before USPS #2 between annual meetings and shall act by majority vote of the members present and voting, if a quorum is present, and unless otherwise specified in this Constitution.

Section VII

The Executive Board of USPS #2 may enter into such contracts or agreements with consultants, employees, etc., may hire

5

and dismiss personnel and determine their wages and fringe benefits, and secure such facilities as are deemed necessary for the efficient operation of USPS #2.

Section VIII

The Executive Board shall meet from time to time as may be required by the needs of USPS #2 at such place(s) as it shall determine. Meetings of the Executive Board may be held through any communications equipment. Participation in a meeting pursuant to this section shall constitute presence at such meeting.

Section IX

The Executive Board may adopt, amend, or repeal any of its own rules or regulations as it deems such action necessary. No rule or regulation may be adopted which is in conflict with this Constitution or federal law. All such rules and regulations adopted by the Executive Board will be binding on all members of USPS #2. The Executive Board shall review and decide all questions involving interpretations of this Constitution.

Section X

The Executive Board shall adopt rules to ensure that USPS #2 is in compliance with all of the laws and requirements of the National Labor Relations Act, and any other applicable federal laws.

Section XI

In all matters requiring action by the Executive Board, and when the Executive Board is not in formal session, the Executive Board may act by telegram, letter, electronic mail, or long distance telephone request to the members. Whenever action is sought by any of these methods, all members of the Executive Board shall be polled. Such action taken by a majority of the members of the Executive Board shall constitute an official action of the Executive Board as though it were in formal session; provided however, that any such action shall be confirmed at a formal session of the Executive Board.

# ARTICLE 7 - INTERNAL DISCIPLINE

Section I

(A)     The Executive Board shall investigate any member charged in writing by any member-in-good-standing of USPS #2 with violating federal law or any provision of this Constitution. To be valid, such charges must be filed with any Executive Board member by a member-in-good-standing within sixty (60) days of when a member knew or should have known of the event giving rise to the charge. Any Executive Board member receiving such written charge shall forthwith forward the original written charge(s) to the President who shall ensure that the charged party shall receive, by certified mail, a detailed written explanation of the specific charges.

(B)     The Executive Board shall review the charges and dismiss them if the charges were not made under oath and attested to by a notary public, or do not adequately state the exact nature of the offense and the time and place it occurred; or the charges were not timely filed; or, the act complained of is not a violation of the member's obligations. If the charges are dismissed, the charging member shall be notified and may appeal the decision, as provided herein.

(C)     If the charges are deemed valid, the President shall within 21 days, convene or cause to be convened, an informal conference between the parties directly involved, and not less than one Regional Representative, and a sincere effort will be made to resolve the matter without further proceedings. If the charges are disposed as a result of this informal conference, the agreement reached by the parties shall be reduced to written form, signed by the parties directly involved therein. However, if the matter is not concluded on such informal basis, the President shall fix a time for a formal hearing which shall be not later than 90 days following receipt of such charges and shall give the accused not less than 21 days notice of the time and place of the hearing on such charges at which the accused shall appear and defend. If the accused fails to appear, unless postponement has been granted for good cause, the trial shall nevertheless proceed. Similar notice shall be given the charging party, and all directly involved parties.

Section II

The charges shall be tried by a Trial Committee selected by drawing names by lot from all Executive Board Members and Regional Representatives of USPS #2. It shall be an obligation of membership for any member whose name is drawn to serve on the Trial Committee; provided that a member who has such a relationship to any of the parties or events involved in the proceedings as to interfere with their making a fair and objective decision or is likely to be a witness, shall disqualify him/herself, and any member may for good and sufficient reasons withdraw.

Section III

Fifteen names from the current list of Executive Board Members and Regional Representatives shall be drawn by lot, and distributed to the charging party and accused party. If any so drawn disqualifies himself or withdraws, an additional name

7

shall be drawn to replace him. (NOTE: If either the charging party or the accused believes that more than a majority of the fifteen members who remain are biased, and have not disqualified themselves, an objection must be made before beginning to strike names in order to preserve the issue of bias and prejudice in any appeal which may later be taken.) The complainant and the accused shall each strike one name alternately until seven names remain. Five of these, selected by lot, shall constitute the Trial Committee, and the two remaining shall serve as alternates. The Trial Committee shall select one of its members to act as the Chair of the Committee who will preside over the trial. If any member of the Trial Committee subsequently disqualifies him/herself or withdraws, such vacancy shall be filled by drawing by lot three times as many names as there are vacancies and the complainant and the accused alternately striking names until there are as many names remaining as vacancies.

Section IV

Within fourteen days after the Trial Committee has been selected, the accused member shall be notified by certified mail, return receipt requested, of the time and place of the trial, which shall be held not less than fifteen days from the receipt of such notice. The trial shall be open to all members of USPS #2. Both the complainant shall have the right to present all relevant evidence and to hear all evidence presented, to confront and examine or cross-examine all witnesses and to present oral argument and written briefs. Members who are summoned to appear as witnesses or to provide evidence are obligated to respond to the summons. The summons shall consist of written notice by the Chair of the Trial Committee, setting forth the time, date and place of the hearing, mailed to any member by certified mail, return receipt requested. No person shall be required to give evidence which would tend to incriminate him/herself. The formal rules of evidence shall not be applied in any trial conducted pursuant to this Article. Both the complainant and the accused shall be entitled to be represented by any member of their choosing, and shall be entitled to make a record of the proceedings, provided that a copy of such record is made available to the other at cost.

Section V

The Trial Committee, after hearing all of the evidence and arguments, shall deliberate in closed session to determine its verdict and the degree of punishment, if any, to be imposed. A majority vote of the Trial Committee shall be required for a finding of guilty. By majority vote, the Trial Committee may reprimand the accused or may remove them from any elected position (2/3 vote required). A unanimous vote of the Trial Committee is required before a member can be suspended from membership activities, including the right to vote in union elections and participate in affiliate meetings and affairs. By a unanimous vote of the Trial Committee, any member may be suspended from membership for any of the following reasons:

A)    Misappropriation of funds,

B)    Conflict of Interest,

8

C)   Fraud in an election or interfering with the democratic rights of members guaranteed by this Constitution, or

D)   Discrimination because of race, creed, color, nationality, sex, age, religion, ancestry, handicap or physical disability.

Section VI

The Chair of the Trial Committee shall within 14 days, notify the accused in writing of its verdict and judgment, and shall report its verdict and judgment at the next regular meeting of the USPS #2.  The judgment shall be effective from the date the charged member receives such written notice.

Section VII

A member who is suspended from membership activities shall be required to pay all dues, assessments and fines, during the period of suspension.

Section VIII

In any case where charges are brought under this Article, a judgment of acquittal may be appealed only where the member has been charged and acquitted of one of the following:

A)   Misappropriation of funds,

B)   Conflict of Interest,

C)   Fraud in an election or interfering with the democratic rights of members guaranteed by this Constitution, or

D)   Discrimination because of race, creed, color, nationality, sex, age, religion, ancestry, handicap or physical disability.

Section IX

When a member is acquitted of charges brought against him and the Trial Committee finds that the charging party filed such charges maliciously and in bad faith, the Trial Committee must then levy charges against the charging party for improper conduct.  Upon the finding of improper conduct by a trial committee, a penalty of removal from any union position (2/3 vote required), or suspension of a member's union rights and benefits can be imposed.

9

Section X

Charges that an officer of the USPS #2 has violated his obligations as an officer may be brought by any member.  Such charge shall be specific and under oath and shall be submitted to the Secretary-Treasurer of USPS #2 (If the charge(s) are against the Secretary-Treasurer, the charges shall be submitted to the President of USPS #2).  Trial of the charges shall be before the Executive Board of the USPS #2, but any member of the Board who has such a relationship to any of the parties or events involved in the proceeding as to interfere with his making a fair and objective decision shall disqualify him/herself.  If less than three members of the Executive Board remain after disqualification, the case shall be tried by three Regional Representatives, drawn by lot.

Section XI

Charges that any officer of USPS #2 has violated his obligation as an officer may also be brought by any member of the Executive Board.

Section XII

Charges against any officer brought under this Article shall be in the same form and detail and shall be brought within the same time limit as those against a member.  The accused shall be entitled to the same notice of the charges and the time and place of trial.  The same trial procedures and their rights and safeguards shall be applicable.  Decisions as to guilt and penalty, if any, shall be by a 2/3 vote of those sitting in judgment.

Section XIII

In any case where charges are brought under this Article and the accused officer is acquitted by the Executive Board, any other member of that Board may appeal the acquittal to the president of the Fraternal Order of Police, Jerrard F. Young D.C. Lodge #1.

Section XIV

When an officer is acquitted of charges and the tribunal finds that the charging party endorsing such charges acted maliciously or in bad faith, the tribunal must levy charges against the charging party for improper conduct.  The tribunal may impose those penalties as prescribed in Article 7, Section IX.

Section XV

Any member expelled from office and/or prohibited from holding office may be reinstated to full membership, including the right to hold office or appointive position, at any time after two years following the action which effected the member's expulsion. Such reinstatement requires the affirmative vote of a majority of the Executive Board.

## Section XVI

Every member or officer against whom charges have been preferred and disciplinary action taken as a result thereof, or against whom adverse rulings or decisions have been rendered or who claims to be aggrieved, shall exhaust all remedies and appeal rights provided for in this Constitution before resorting to any court, tribunal or agency against USPS #2, or any officer or employee thereof. Any decision of the Executive Board or Trial Committee made under this Article may be appealed by notarized letter to the National Secretary-Treasurer. Such appeals, along with all information provided by the charging and charged parties, and any trial information/transcripts, shall be forwarded within 30 days to all Executive Board Members and Regional Representatives (or their successor positions), who shall be required to review the information, and cast a vote in favor of, or in opposition to the remedy requested by the appeal. A simple majority vote shall determine the success or failure of the appeal.

## Section XVII

In the event the charged party is determined to be uncooperative by a super-majority of 9 members of the Executive Board, at any point in the process, such a determination shall be reduced to writing, detailing the reasons for the determination, and shall be provided to the parties via certified mail. A determination that the charged party is uncooperative with regard to the efforts of USPS #2 to reach swift resolution to a charge shall be considered the equivalent of a finding of guilt, and the initiation of a substitute process for dealing with the charges. Such a determination shall instead result in the formation of a penalty committee comprised of 7 Regional Representatives (or its successor position), drawn by lot, from a pool of all Regional Representatives (excluding any charged or charging party). The penalty committee shall be provided all relevant information submitted by the charged and charging parties, and shall render a simple majority decision with regard to the appropriate penalty to be imposed on the charged party. Such penalty may include suspension from any or all membership rights and/or activities, reprimand, removal from any elected position, and/or prohibition from the future holding of any elected or appointed union position. The President shall ensure the implementation of any enforceable penalty.

## Section XVIII

In the event the charging party is determined to be uncooperative by a super-majority of 9 members of the Executive Board, at any point in the process, such a determination shall be reduced to writing, detailing the reasons for the determination, and shall be provided to the parties via certified mail. A determination that the charging party is uncooperative with regard to the efforts of USPS #2 to reach swift resolution to a charge shall result in the dismissal of the

charge.

# ARTICLE 8 - PRESIDENT OF USPS #2

Section I

A)   The President of USPS #2 shall be the Chief Executive Officer of the organization.  The President shall be responsible for the day-to-day operation of USPS #2 and shall preside at all Executive Board meetings and such other meetings as the President may from time to time convene.

B)   The President shall execute any and all contracts that may be authorized by the Executive Board and approve all expenditures of USPS #2 before payment is made.

C)   The President shall select and retain legal counsel and approve the selection and retain such accountants as shall, from time to time, be required.

D)   The President shall be ex-officio a member of all standing committees of USPS #2.

E)   The President shall call special meetings of the Executive Board when the President deems it necessary or upon petition of a majority of the Executive Board.  Notice of such special meetings shall be mailed by the Secretary to each member of the Executive Board at least fifteen days prior to such meeting.

F)   The President shall keep the Executive Board apprised of the official business transacted by the President, together with such recommendations as the President may deem advisable.

G)   The President shall furnish a bond in an amount fixed by the Executive Board, or applicable law, for the faithful performance of the duties of the office of President.  The cost of the bond shall be paid by USPS #2.

H)   The President shall convey to his/her successor all unfinished business.

Section II

The President shall be elected by a secret mail ballot, majority vote of the members-in-good-standing of the organization, pursuant to the nomination and election procedures set forth by the Executive Board.

Section III

12

The initial term of the office of the President shall expire on September 1, 1993. Thereafter, the term of office for the President shall be three years. There shall be no restriction on serving successive or consecutive terms of office.

Section IV

In the event the President dies, resigns, or is disqualified, the First Vice President shall automatically assume the office of President.

Section V

The President shall be a full-time employee of the USPS #2 and shall be compensated (including all benefits) at the rate comparable to what he/she would be if working full-time as a Postal Police Officer. The full-time status of the President may be suspended by a majority vote of the Executive Board at any time.

# ARTICLE 9 - FIRST VICE PRESIDENT OF USPS #2

Section I

The First Vice President shall be elected by a secret mail ballot, majority vote of the members-in-good-standing of the organization, pursuant to the nomination and election procedures set forth by the Executive Board.

Section II

A)   The First Vice President of USPS #2 shall be the official custodian of the Constitution of USPS #2, and keep an accurate record of all amendments thereto.

B)   The First Vice President shall perform such other duties as the President may direct.

C)   The First Vice President shall perform all the duties of the President if the President is absent or otherwise unavailable to perform the duties of the office.

D)   The First Vice President shall convey to his/her successor all books and records of the organization as well as all unfinished business.

Section III

The initial term of the office of the First Vice President shall expire on September 1, 1993. Thereafter, the term of office for the First Vice President shall be three years. There shall be no restriction on serving successive or consecutive terms of office.

Section IV

In the event the First Vice President dies, resigns, or is disqualified, the Second Vice President shall automatically assume the office of First Vice President.

# ARTICLE 10 - SECOND VICE PRESIDENT OF USPS #2

Section I

The Second Vice President shall be elected by a secret mail ballot, majority vote of the members-in-good-standing of the organization, pursuant to the nomination and election procedures set forth by the Executive Board.

Section II

A)   The Second Vice President of USPS #2 shall be the assistant to the First Vice President.

B)   The Second Vice President shall perform such other duties as the President may direct.

C)   The Second Vice President shall perform all the duties of the First Vice President if the First Vice President is absent or otherwise unavailable to perform the duties of the office.

D)   The Second Vice President shall convey to his/her successor all books and records of the organization as well as all unfinished business.

Section III

The initial term of the office of the Second Vice President shall expire on September 1, 1993. Thereafter, the term of office for the Second Vice President shall be three years. There shall be no restriction on serving successive or consecutive terms of office.

Section IV

In the event the Second Vice President dies, resigns, or is disqualified, the President shall appoint a successor to serve the remainder of the unexpired term. The Executive Board shall confirm any such appointments.

# ARTICLE 11 - SECRETARY-TREASURER OF USPS #2

Section I

The Secretary-Treasurer shall be elected by a secret mail ballot, majority vote of the members-in-good-standing of the organization, pursuant to the nomination and election procedures set forth by the Executive Board.

Section II

The initial term of the office of the Secretary-Treasurer shall expire on September 1, 2002. Thereafter, the term of office for the Secretary-Treasurer shall be three years. There shall be no restriction on serving successive or consecutive terms of office.

Section III

The Secretary-Treasurer shall be the custodian of the books and records of the organization, shall keep the minutes of meetings of the Executive Board and such other meetings as may, from time to time, be held at the call of the President or Board. The Secretary-Treasurer shall maintain the correspondence of the organization, and maintain the minute book. The Secretary-Treasurer shall convey to his/her successor the books and records of the organization as well as all unfinished business.

Section IV

A)    The Secretary-Treasurer shall be the custodian of all the funds and assets of USPS #2, and furnish to the Executive Board, as well as to any member who requests it, an audit report by an accountant.

B)    The Secretary-Treasurer shall conduct all of the financial transactions of USPS #2 with the approval of the President, and keep an accurate record of all income and expenses. The Audit Report will be available for inspection by any member of USPS #2 upon written notice of thirty (30) days, and will be inspected at a time convenient to the Executive Board.

C)   The Secretary-Treasurer shall furnish a bond in an amount fixed by the Executive Board, or applicable law, for the faithful performance of the duties of the office of Secretary-Treasurer.  The cost of the bond shall be paid by USPS #2.

D)   The Secretary-Treasurer shall keep an itemized record of all funds received and disbursed, give a complete report when called upon by the Executive Board or when otherwise required by the President.

E)   The Secretary-Treasurer shall forward copies of all union bank statements to the President in a timely manner, so that the President may better monitor the financial health of the Union.

F)   The Secretary-Treasurer shall provide the President with copies of all Certificates of Deposit, and stock or bond certificates owned by the USPS #2.

Section V

In the event the Secretary-Treasurer dies, resigns, or is disqualified, the President shall appoint a successor to serve the remainder of the unexpired term.  The Executive Board shall confirm any such appointments.

# ARTICLE 12 - SERGEANT AT ARMS OF USPS #2

Section I

The Sergeant at Arms shall be elected by a secret mail ballot, majority vote of the members-in-good-standing of the organization, pursuant to the nomination and election procedures set forth by the Executive Board.

Section II

The initial term of the office of the interim Sergeant at Arms shall expire on September 1, 2002.  Thereafter, the term of office for the Sergeant at Arms shall be three years.  There shall be no restriction on serving successive or consecutive terms of office.

Section III

The Sergeant at Arms shall perform the following duties:

16

A)    Ensure the integrity of all meetings, and that only authorized members and guests are in attendance;

B)    Perform such other duties as the President may direct;

C)    Convey to his/her successor the books and records of the organization as well as all unfinished business.

Section IV

In the event the Sergeant at Arms dies, resigns, or is disqualified, the National President shall appoint a successor to serve the remainder of the unexpired term.  The Executive Board shall confirm any such appointments.

# ARTICLE 13 - GRIEVANCE SECRETARY OF USPS #2

Section I

The Grievance Secretary shall be elected by a secret mail ballot, majority vote of the members-in-good-standing of the organization, pursuant to the nomination and election procedures set forth by the Executive Board.

Section II

The initial term of the office of the Grievance Secretary shall expire on September 1, 1993.  Thereafter, the term of office for the Grievance Secretary shall be three years.  There shall be no restriction on serving successive or consecutive terms of office.

Section III

The Grievance Secretary shall be the custodian of copies of all grievances filed at all levels within the bargaining unit and shall coordinate all grievances before the Regional Representatives.  The Grievance Secretary shall convey to his/her successor the books and records of the organization as well as all unfinished business.

Section IV

In the event the Grievance Secretary dies, resigns, or is disqualified, the National President shall appoint a successor to serve the remainder of the unexpired term.  The Executive Board shall confirm any such appointments.

# ARTICLE 14 – AREA NATIONAL REPRESENTATIVES

Section I

Each of the five Areas, formerly known as Regions, shall be represented on the Executive Board.  Each Area National Representative shall be elected by secret ballot vote of the membership from each of the respective geographically defined Areas which comprised the former US Postal Service Regions, as they existed on October 16, 1992.  Of those eligible candidates who are nominated in accordance with the procedures prescribed by the Executive Board within each respective Area, formerly know as a Region, the candidate receiving the most votes within each Area shall serve as the Area National Representative from that respective Area.

Section II

The initial terms of office for the five Area National Representatives shall expire on September 1, 1994.  Thereafter, the Area National Representatives shall be elected for three year terms in the manner described in Article 6, Section III. There shall be no restriction on serving successive or consecutive terms of office.

Section III

There shall be no restriction on an Area National Representative running for election to another elected office.  An Area National Representative can serve, at any one time, in only one other elected office.

Section IV

The Area National Representatives shall perform the following duties:

A)    Handle grievances at Step 3 and higher for their respective Areas, unless a Business Agent is designated to handle the grievance;

B)    Provide oversight, information and direction to Regional Representatives within their respective Areas;

C)    Act as conduits between the Executive Board and members of their respective Areas;

18

D)    Perform such other duties as the President may direct;

E)    Convey to his/her successor the books and records of the organization as well as all unfinished business.

Section V

Should an Area National Representative die, resign, or be disqualified before completion of a term of office, such vacancy shall be filled as follows:

A vacancy shall be filled by appointment by the President of USPS #2 of an individual from the Area then unrepresented for the remainder of that Area National Representative's unexpired term.

Any person appointed to replace a an Area National Representative must meet the conditions of eligibility for candidates for the Executive Board.

Upon the appointment of any Area National Representative in accordance with paragraphs (A) and (B) above, the members of the Executive Board, at their next regularly scheduled meeting or via email vote, shall confirm any appointments so made.

# ARTICLE 15 - REGIONAL REPRESENTATIVES

Section I

There shall be elected from the membership, in a manner, number and from geographic locations prescribed by the Executive Board, Regional Representatives who shall represent the members in respect of grievances and perform such other tasks as may be prescribed from time to time by the Executive Board.  Regional Representatives shall be elected for a period of two years, beginning on January 1, and ending on December 31st.  Elections shall be held prior to October 31 of the year in which a Regional Representative's term expires, with the new or re-elected Representative taking office effective January 1 of the following year.  Regional Representatives currently in office shall serve until December 31, 1999.  There shall be no restriction on serving successive or consecutive terms of office.

Section II

A Regional Representative shall be a member-in-good-standing in accordance with Article 5, Section II. Election procedures shall be as follows:

A)  Election shall be by secret ballot vote of the members-in-good-standing from the local geographic location, as designated by the Executive Board.

B)  Nominations shall be sent by fax, e-mail, or regular mail to the Area National Representative during the designated week set forth by the Area National Representative. The election shall take place no sooner than one week after the close of nominations.

C)  Sealed ballot envelopes will be returned to the Area National Representative, for counting in the presence of witnesses designated by the Executive Board.

D)  The Area National Representative shall certify to the National Secretary-Treasurer, the results of the election. Within 7 days of said notification, the National Secretary-Treasurer shall notify the appropriate Postal Service labor relations representative, of the election results, with copies to the National President and the respective Area National Representative.

E)  In the event there are no union members willing to run for the position, the Area National Representative shall act as the Regional Representative for that geographic location, until such time as a local union member can be appointed to the position. The National Secretary-Treasurer shall notify the appropriate Postal Service labor relations representative of this occurrence.

Section III

If a Regional Representative dies, resigns or is disqualified, the respective Area National Representative shall appoint a successor to serve the remainder of the unfinished term.

Section IV

Disqualifications of Regional Representatives shall occur whenever a Regional Representative ceases to be a member of the collective bargaining unit of the United States Postal Service, when a Regional Representative remains an inactive employee for a nine month period, or when a Regional Representative is found guilty of charges and penalized by loss of office as set forth in this Constitution.

# ARTICLE 16 - EXPENSES, COMPENSATION, AND PROHIBITIONS

Section I

Any member of USPS #2 performing duties for or providing service to USPS #2 by order of the Executive Board or President may receive reimbursement for expenses as authorized by the Executive Board.

Section II

Any additional compensation for an Officer, Area National Representative, or Regional Representative must be approved by a majority of Executive Board Members and Regional Representatives present at an Annual Meeting.

Section III

USPS #2 shall not make loans to any of its members, officers, or employees. No USPS #2 funds may be invested in any way that they may be used to finance or secure loans to any member, officer, or employee. This section does not prohibit USPS #2 from investing its funds in an instrument offered by a legally chartered financial institution as long as that deposit is not used as security for a loan to any member, officer, or employee.

Section IV

USPS #2 may not expend its funds in any manner in furtherance of the independent business or financial interests of its members, officers, or employees. As a condition of both employment and continuing service, no officer, agent, representative, or employee of USPS #2, or the spouses, minor children, or parents of an officer, agent representative, or employee may undertake business or pursue financial interests which will conflict with the fiduciary obligations of such officers, agents, representatives, and employees of USPS #2.

Section V

An audit by a third party (as may be required by applicable law or regulation) of the financial transactions of USPS #2 will be performed every year; to ensure the adherence of USPS #2 to this Constitution, federal laws and regulations.

Section VI

No Officer of the USPS #2 shall receive compensation from USPS #2, in excess of eight hours work in a day, or 40 hours work in a pay period week. This provision may be modified by the Executive Board, based on any change in work

schedules resulting from an agreement between the Employer and the USPS #2 on Alternative Work Schedules.

# ARTICLE 17 - DUES

Section I

Dues for each member-in-good-standing of USPS #2 shall be $16.00 per pay period. Any increase in initiation or dues may be established by a majority vote of the Executive Board, subject to approval of a majority of the members-in-good-standing.

Section II

All dues shall be paid directly to USPS #2.

Section III

Any member who goes on extended sick leave, injury leave or lay off status, or who takes a leave of absence may retain membership in USPS #2, as long as he/she complies with other membership requirements, pays the dues specified for "inactive membership", and is approved by the Executive Board.

Section IV

The funds of USPS #2 shall be kept in a separate account established for that purpose. In no case will these funds be commingled with any other funds.

# ARTICLE 18 - WITHDRAWAL POLICY

Section I

Members earning any compensation from the United States Postal Service shall be responsible for the payment of full union dues for that given month.

Section II

Members on Leaves of Absences (LOA) shall pay full union dues while out on leave, except members on active duty with the U.S. Armed Forces.

Section III

Members who are laid off either by a reduction in force, or a displacement shall not be responsible for the payment of union dues once the officer is no longer receiving any compensation from the Postal Service.

Section IV

Members having been disciplined, whether suspended, dismissed, or are within the discipline appeal process, shall pay full union dues until a final and binding decision is made under the grievance procedure of the collective bargaining agreement, provided the member is receiving any compensation from the Postal Service.

# ARTICLE 19 - FEE REDUCTION PROCEDURE

The Executive Board shall establish procedures for the determination of the percentage of dues payments which shall be rebated to any member who objects to the use of dues for purposes other than those associated with collective bargaining and administration of the contract. To receive such a rebate, a member must follow the guidelines and procedures established by the Executive Board.

# ARTICLE 20 - CONVENTION

Section I

There shall be a Convention of the Regional Representatives and Executive Board of USPS #2 during the month of October, every two years, at a date and location designated by the Executive Board. The Convention shall be open to all members-in-good-standing. The location of the Convention shall rotate among the Areas. Written notice shall be sent to each Regional Representative, and posted on the Union website of the date, time, and place of the Convention no less than sixty (60) days prior to the Convention, and, no less than fourteen (14) days prior to the Convention, written notice shall be sent to each Regional Representative containing an agenda of the Convention, and any proposed amendments to the Constitution. The agenda shall likewise be posted on the Union website.

23

Section II

The first item of business at the Convention shall be the installation of successful candidates, who shall have all rights and powers of their office as specified herein. The order of remaining business on the agenda of the Convention shall be determined by the President. The Convention agenda shall contain at least the following items of business:

A)   President's Report;

B)   Minutes of last Convention;

C)   Recommendation concerning the repeal or amendments of USPS #2 Constitution;

D)   Review dues structure;

E)   Review Committee reports;

F)   Review audit report;

G)   Old business;

H)   New business;

I)   The good of USPS #2;

J)   Submission of, or discussion of contract proposals.

Section III

At all meetings, including the Convention, a register shall be kept by the Secretary-Treasurer of U.S.P.S. No. 2, of those members who are present. Members shall sign the register in ink and in their own handwriting. At the close of the meeting the Secretary-Treasurer or his or her designee shall sign their name last directly under the signature of the last signer. The Secretary-Treasurer shall maintain custody of register.

# ARTICLE 21 - PARLIAMENTARY PROCEDURE

24

All meetings conducted by any body in accordance with this Constitution, including the Convention, shall be conducted, to the extent that it is practicable, according to the latest edition of "Roberts" Rules of Order except as modified herein or by rules adopted by the body.

# ARTICLE 22 - AMENDMENTS

Section I

Amendments to this Constitution may be proposed, in writing no later than forty-five (45) days prior to the Annual Meeting by any member-in-good-standing who is actively employed by USPS. Such proposed amendment shall be submitted to the National Secretary-Treasurer, and accompanied by a written statement not to exceed three hundred (300) words in support of such amendment. The National Secretary-Treasurer shall distribute all proposed amendments to the Executive Board and Constitution Committee members, within 15 days. Attendees at the Annual Meeting shall be allowed to express their opinions regarding the proposed amendments, as guidance to the Executive Board. Within 60 days following the Annual Meeting, the Executive Board, by majority vote, shall formulate a position as to whether or not they are in support of, or in opposition to the proposed amendment. After this stage is completed, the Executive Board shall prepare a statement of its position (that of the Board's majority), not to exceed three hundred (300) words, which shall be distributed with the proposed amendment, and the statement in support of the amendment to each Regional Representative.

Section II

Amendments to the Constitution, approved by a majority vote of the members-in-good-standing by secret, ballot vote conducted locally by each Regional Representative, and submitted in tally form to the President with the Regional Representative's signature certifying authenticity and accuracy, shall be signed by the President and First Vice President of USPS #2 and shall take immediate effect unless otherwise provided in the amendment. The Secretary-Treasurer shall send notice to all Regional Representatives, for prominent posting at all facilities, of any amendments to the Constitution.

Section III

The Executive Board shall have the power following the adoption of amendments to this Constitution, but prior to printing thereof, to make such typographical, grammatical, punctuation corrections, and to rearrange and renumber Articles and Sections of this Constitution, as necessary to carry out the spirit and intent of any adopted amendments.

Section IV

The President, with the majority vote approval of the Executive Board, may at any time propose amendments to the Constitution which he/she deems necessary for the efficient and cost-effective operation of the USPS #2. Such proposed amendments are subject to the same approval process outlined in Article 21, Section II, above.

# ARTICLE 23 - INTERPRETATION AND SEVERABILITY

Section I

This Constitution and all rules and regulations adopted in accordance with these provisions are subject to all existing Federal Statutes and Rules and should be interpreted in all cases in accordance with and such a manner as to be in compliance with said statutes and rules.

Section II

Should any article, section or portion thereof of this Constitution be held to be invalid, unlawful, or unenforceable for any reason by any court or administrative agency (Said decision shall apply only to that specific provision held to be invalid, unlawful, or unenforceable), all other articles, sections, or portions of the Constitution shall remain in full force and effect. The Executive Board shall have the power to immediately adopt an emergency amendment to this Constitution by a majority vote of its entire membership, for the limited purpose of correcting the defect found by the court or administrative agency.

Section III

In order to exercise the powers contained in this Article, the Executive Board must first secure a written opinion from its attorney. This opinion must recommend the emergency amendment as necessary to correct the defect found by the court or administrative agency.

# ARTICLE 24 - INFORMATION MANAGER

Section I  The Information Manager shall be appointed by the President, based on experience and knowledge of the position's requirements. The appointment shall be confirmed by the Executive Board, and shall have no set term of office. The Information Manager may be removed by a majority vote of the Executive Board.

Section II

A)   The Information Manager shall be the custodian of the Union's Website and Domain, and shall ensure timely updates of the website, at least once every two weeks.

B)   The Information Manager shall comply with the directions of the Executive Board, with regard to postings on the site.


# ARTICLE 25 - PAST NATIONAL PRESIDENT

Section I

When a President of USPS #2 completes a full term of office, he/she is assigned the position of Past National President. The Past National President must be a member in good standing to maintain the position. No President who resigns, or is disqualified from office shall hold the position. The position shall have no authority to act independently on behalf of the USPS #2, and shall have no vote within the Executive Board.

Section II

The Executive Board may utilize the Past National President at their discretion.


# ARTICLE 26 - UNION STEWARDS

Union Stewards shall represent bargaining unit employees during local grievance proceedings. A Steward shall be a member-in-good-standing in accordance with Article 5, Section II.

A)   Each Regional Representative shall select Union Stewards at the local level, in accordance with the formula established in the Collective Bargaining Agreement.

B)   Each Regional Representative shall certify to the Division Inspector-in-Charge the Stewards appointed for each work site.

C)   At the request of their Regional Representative, Union Stewards shall assist the Regional Representative in the performance of his/her duties, and act in his/her absence, when he/she delegates a Steward to do so.

D)   A Steward may be relieved of his/her position by a Regional Representative, with the concurrence of the Area National Representative.

# ARTICLE 27 - BUSINESS AGENTS

Section I

Business Agents may be appointed by the President, based on experience and knowledge of the position's requirements. The positions shall be confirmed by the Executive Board, and shall have no set term of office. Upon the recommendation of the President, Business Agents may be removed by a majority vote of the Executive Board.

Section II

Business Agents shall handle national level grievances and arbitrations, and perform such other duties as assigned by the President.

# ARTICLE 28 - ADMINISTRATIVE ASSISTANTS

One Administrative Assistant may be appointed by each Executive Board member, for the purpose of assisting the member in the performance of their union duties, and providing training to potential future leaders of this organization. The positions shall have no set term of office. Administrative Assistants may be removed at any time by the appointing member.

# ARTICLE 29 - NATIONAL LEGISLATIVE PROGRAM DIRECTOR

Section I

A National Legislative Program Director may be appointed by the President, based on experience and knowledge of the position's requirements. The appointment shall be confirmed by the Executive Board, and shall have no set term of office.

The National Legislative Program Director may be removed by a majority vote of the Executive Board.

Section II

A)    The National Legislative Program Director, under the direct supervision of the President, shall be responsible for the coordination of the legislative and lobbying efforts of the USPS #2, as well as the implementation of related policies and programs of the USPS #2.

B)    The National Legislative Program Director, with the approval of the Executive Board, may develop plans and establish procedures intended to further the legislative goals of the USPS #2.

END OF DOCUMENT

# DUNLAP DECLARATION

# EXHIBIT D

## BEFORE THE FRATERNAL ORDER OF POLICE
## DISTRICT OF COLUMBIA LODGE 1

Fraternal Order of Police, D.C. Lodge 1 (DC1)
Washington D.C.,

Petitioner,

-and-

Fraternal Order of Police National Labor Council 2 (NLC2)
and its Executive Board including Edward Barry, National President; Paul Ferraro,
National Secretary/Treasurer; Chris Vitollo, National Grievance Secretary; John Gibbs,
National Sergeant at Arms; Julian Diaz, Northeast Area Representative; Dan Dunlap,
Eastern Area National Representative; Dawn Adams, Central Area National
Representative; and Bruce Bock; Western Area National Representative;

Respondents

_____/

# ORDER
# FOR
# TRUSTEESHIP
# FOR
# FRATERNAL ORDER OF POLICE
# NATIONAL LABOR COUNCIL 2

By authority vested in the Fraternal Order of Police Jerrard F. Young District of
Columbia Lodge 1 and pursuant to its Constitution and Bylaws, a Resolution was
approved at the Special Board of Directors Meeting convened on January 31, 2008 to
place the Fraternal Order of Police National Labor Council 2 (NLC2) in Trusteeship for
the benefit of its members. This decision was based on one or more of the following
criteria (a) correcting corruption or financial malpractice, (b) assuring the performance of
negotiated agreements or other duties of a representative of employees, (c) restoring
democratic procedures, or (d) otherwise carrying out the legitimate objects of such labor
organization.

Trusteeship is effective as of the close of business at 5:00 PM on January 31, 2008. All
elected and appointed officers and other Executive Board members are hereby notified

that they are no longer authorized to conduct the business of NLC2 and are ordered to deliver all records of this organization in their possession or under their control to the Trustee immediately. All future matters and business affairs relating to this labor council shall be directed to the Trustee's representative listed below:

Steven Anthony
General Counsel
Fraternal Order of Police
District of Columbia Lodge 1
711 Fourth Street N.W.
Washington, DC  20001
Email Address: generalcounsel@dc-fop.org

# DUNLAP DECLARATION

# EXHIBIT E

February 1, 2008

Members
Fraternal Order of Police
National Labor Council 2

To All Members:
Your labor committee has been placed in Trusteeship by its parent organization Fraternal
Order of Police Jerrard F. Young DC Lodge 1 (DC1) by decision of its Board of
Directors at a Special Meeting convened on January 31, 2008 for that purpose.

This decision was prompted by the ongoing controversy among members of the
Executive Board that resulted in the unlawful removal of Teri Grant from the office of
President. This power struggle enabled management to exploit the labor committee and
compromise its negotiating position, disrupted the day to day operations of the labor
committee and brought contract negotiations to a standstill.

Trusteeship provides DC1 with the ability to remove the quarreling Executive Board
members and to authorize the labor attorney to proceed with contract negotiations
without interruption from those Executive Board members who persisted in interfering
with the appointed Negotiating Team.

Moreover, Trusteeship enables DC1 to investigate Mr. Barry and other Board Members
who conspired in the unlawful removal of Ms. Grant from the office of President. The
conduct of Mr. Barry and those who supported him in this misadventure violates due
process of law protections of our respective constitutions, embarrasses the membership
with management and recklessly exposes NLC2 to charges of union corruption and
sexual and racial discrimination.

Trusteeship also compels DC1 to investigate allegations that Mr. Ferraro and Mr. Dunlap
have taken thousands of dollars of union funds and failed or refused to provide adequate
documentation to justify that these withdrawals were expended for union purposes. The
Department of Labor considers misappropriation of union funds a criminal offense and
DC1 plans to conduct a thorough investigation of these allegations.

All future matters and business affairs of NLC2 shall directed to the Trustee's
representative listed below:

Steven Anthony
General Counsel
Fraternal Order of Police
District of Columbia Lodge 1
711 Fourth Street N.W.
Washington, DC  20001
Email Address: generalcounsel@dc-fop.org

All business matters and related correspondence of this labor committee shall be directed
to Mr. Anthony until such time when the DC1 Board of Directors is in receipt of
sufficient evidence to support termination of the Trusteeship.

Any Petition for Termination of the Trusteeship shall be directed to Mr. Anthony at the foregoing address.

Very truly yours,


Marcello Muzzatti
President

# DUNLAP DECLARATION

# EXHIBIT F

# Fraternal Order of Police
## National Labor Council No. 2
P.O. Box 30929
Bethesda, Maryland 20814

TELEPHONE
301-652-2622

TELECOPIER
301-652-0216

March 28, 2008

Members
Fraternal Order of Police
National Labor Council No. 2

Dear Members:

This is my second communication as trustee for FOPNLC2. At the outset I wish to express my appreciation for all of the calls and messages in response to my first communication. It is a relief to find that the overwhelming majority of members are in support of the trusteeship and have pledged their cooperation and assistance.

This is in sharp contrast however, to Mr. Barry and Mr. Ferrarro. Both of these men have been served with a lawsuit compelling them and other union members to provide me with all of the union's documents and records so I can commence the business of the trusteeship. However, Mr. Barry and Mr. Ferrarro still refuse to comply. In view of this continuing opposition I must now consider filing another lawsuit to compel Wachovia bank to unfreeze the bank accounts. The cost of both of these lawsuits will amount to nearly $20,000. Moreover, if we are unable to unfreeze the funds immediately we may have to postpone the arbitration which will result in a penalty to the union of approximately $20,000. These individuals are wreaking havoc on the union's financial condition for no justifiable or lawful reason. Worse yet, they appear to be actively trying to subvert the arbitration. The Negotiating Team has received incident reports from PPO's all around the country but none have been received from New York. I believe Mr. Barry and Mr. Ferrarro are a menace to this union and I am hopeful that the members will persuade them to stop this destructive behavior.

Notwithstanding the foregoing problems, I am moving forward with the organization of the trusteeship. First, I have appointed the national and regional representatives. Most of the individuals have remained in the same positions. These individuals are also automatically appointed to the new Management Committee. As I mentioned previously, the Management Committee is established to provide the trustee with information and advice regarding the operation of the union and the issues confronting the membership. Please see the attached schedule for the new list of national

Members
March 24, 2008
Page 2 of 2

and regional representatives. If anyone is interested in serving in the vacant positions or on the Management Committee, please contact me.

I have also appointed the Negotiating Team for contract negotiations and interest arbitration. Please see the attached schedule of team members. If anyone wishes to serve on the Negotiating Team please contact me. The union will start presenting its case on Monday March 31, 2008 unless the matter is postponed for the reasons discussed above.

The decision to go to arbitration was based on the legal advice of Mr. Kaplan, the union's long standing labor attorney, and the overwhelming response from the members who clearly favor of arbitration. However, there are still a handful of outspoken members opposed to arbitration. They seem to believe that it will cost the union certain concessions that would not have been at risk if a settlement was negotiated with management instead.

Mr. Kaplan, who is currently leading the interest arbitration for the union, advised that management has never accepted any of the union's settlement proposals and they remain steadfast in their opposition to any meaningful pay and benefit increases for PPO's. Years ago he advised the union that if they wanted to achieve any meaningful changes for PPO's they would need to obtain legislation from congress. Although a lobbyist was retained in 2006, the resulting changes in 18 USC 3061 were of no assistance because the new law was discretionary and not mandatory. Although the law gave management the discretion to create a police force and grant investigation powers, management has refused to act on this new authority. Therefore, Mr. Kaplan advised the union to proceed with arbitration to obtain a final determination of the outstanding issues with management. Once the arbitrator renders a final decision, Mr. Kaplan further advised that the arbitrator's decision would demonstrate to congress that all administrative avenues have been fully pursued and the only remaining alternative for relief is legislation. The union has proceeded to arbitration based on this advice.

I hope this information is helpful. As I stated previously, Teri Grant has been appointed Chair of both the new Management Committee and Negotiating Team and will be keeping the members informed about the progress of the arbitration proceedings. Now is the time for members to set aside political rivalries and come together to provide the Negotiating Team and Attorney Kaplan with the assistance and support they need as they commence the second week of battle for better wages and benefits for all.

Very truly yours,

/s/

Steven Anthony
Trustee

# DUNLAP DECLARATION

# EXHIBIT G

May 2, 2008

To All Postal Police Officers

This is the final award issued by the Interest Arbitration Panel. Our attorneys have reviewed and approved the award and authorized me to release it today. A letter from attorney Kaplan to the Trustee discussing the award is to follow.

A handful of vocal members opposed arbitration and even used illegal means to try to remove me as President in an effort to stop us from going to arbitration. However, most of the members realized how foolish this was. At no time did management ever offer an across the board wage increase. In fact, up to the end they consistently argued that PPO's were more than adequately compensated. They even tried to take back our nighttime differential.

I always believed, as did most of the members and the NT, that arbitration was the only way to obtain a decent across the board increase. It was also our final attempt to replace ECI-1 with COLA, obtain locality pay and establish LEO status.

The Arbitration Award clearly falls short of what we are trying to achieve. We did not obtain locality pay or LEO status because the arbitrator concluded that he did not have legal authority to grant those requests. However, we did achieve a 5% across the board pay increase along with an additional step to level 23. We also defeated management's proposal to cut back our nighttime differential. In the end, the award represents an increase over what management ever offered during negotiations.

Yes, we have more work to do but now it will have to be with congress or the MSPB. As Mr. Kaplan advises in his letter, this award is considerably short of what we requested, but it is more than what management offered and constitutes one of the largest general wage increases ever awarded to Postal Police Officers.

Fraternally,
Teri Grant