IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FRATERNAL ORDER OF<br>POLICE, DC LODGE #1, et al.<br><br>Plaintiffs,<br><br>vs.<br><br>EDWARD BARRY, et al,<br><br>Defendants. | Civil No. 08-462 (ESH) |

**DEFENDANTS/COUNTERCLAIMANTS' MOTION TO DISREGARD
EXHIBIT D TO PLAINTIFFS' CROSS-MOTION
FOR PRELIMINARY INJUNCTION**

Defendants/Counterclaimants (hereafter "Defendants") respectfully move the Court to disregard Exhibit D to Plaintiffs' "Cross-Motion for Preliminary Injunction and Opposition to Defendants' Motion for Preliminary Injunction" (Doc. 36) (hereafter "Cross-Motion") and all references to that exhibit.

Defendants object to this document – the so-called "standing rule on trusteeship" – because it has not been authenticated and because a number of additional facts raise doubts about its origin and authenticity.

A.     **Exhibit D has not been authenticated.**

In considering a motion for preliminary injunction, the Court may rely on evidence that is "less complete than a trial on the merits," but that evidence nonetheless "must be credible evidence." *Qualls v. Rumsfeld*, 357 F.Supp.2d 274, 281 (D.D.C. 2005) (internal quotations omitted).

Exhibit D to Plaintiffs' Cross-Motion is not credible evidence.

In *Qualls*, the court considered an exhibit that the plaintiff identified as his contract with the Army, but he did not "offer any statement by way of affidavit, testimony, motion papers for preliminary injunction, or even complaint that the contract featured as his Exhibit 3 is in fact his contract. . . ." *Id.* The court, relying on *Sampson v. Murray*, 415 U.S. 61, 87 (U.S. 1974), held that there was "simply no credible evidence that Exhibit 3 is in fact Qualls' contract." *Id.*

DC 1 bases its entire claim that it had authority to trustee the PPOA on this so-called "standing rule on trusteeship." As in *Qualls*, DC 1 here asks the Court to rely on this document, which is central to its claim, despite the fact that it has not provided any representations as to the document's authenticity.

None of the affidavits in support of Plaintiffs' Cross-Motion stipulate to the authenticity of Exhibit D. In addition, DC 1 has not offered any details

2

as to when this document was created, who drafted it, if and how it was adopted, where it resides, and/or whether it is part of any larger body of "standing rules." DC 1 vaguely refers to the origin of the supposed trusteeship procedures: "The procedure has been in existence since approximately 2000." (Cross-Motion at 29). Yet, it offers no details about when and by whom these "procedures" were adopted, where they are recorded, the nature of their authority, or any other information about them.

In other words, there is no credible evidence that Exhibit D is in fact what Plaintiffs purport it to be. *Qualls*, 357 F.Supp.2d at 281; Fed.R.Evid. 901.

### B. There are serious questions regarding Exhibit D's authenticity and reliability.

In addition to the lack of authentication or any explanation of the document, other facts undermine the credibility of the "standing rules" submitted as Plaintiffs' Exhibit D.

First, DC 1 provided Defendants' counsel with two different versions of this purported rule at different times, referring to both as the operative "standing rule" authorizing the trusteeship.

At the parties' May 13 Rule 26(f) conference, counsel for Plaintiffs represented that DC 1's "standing rules" were the source of authority to

trustee the PPOA, and they agreed to provide a copy of these rules. Declaration of Arlus J. Stephens, ¶ 2. After repeated requests for these rules, counsel for Plaintiffs provided, on June 3, a document referred to as the "FOP Standing Rule on Trusteeship." This document and a copy of the email in which it was transmitted are attached as Exhibit 1 to the Stephens Declaration.

Later, as part of their June 16 initial disclosures, Plaintiffs produced a <u>different</u> document purporting to be the "standing rule" on trusteeship. This document, which also appears to be the version provided to the Court as Exhibit D to Plaintiffs' Cross-Motion, is attached as Exhibit 2 to the Stephens Declaration.

There are significant differences between these two different versions of the purported standing rule on trusteeship. Specifically, the first version provided to Defendants' counsel on June 3 specifies that emergency trusteeship may be imposed only by the *Board of Directors* and that the President may suspend the officers of the subordinate body *prior to a hearing*. By contrast, the second version, submitted to the Court as Exhibit D to Plaintiffs' Cross-Motion, specifies that emergency trusteeship may be authorized by vote of a majority the *elected officers* – a subset of the entire Board of Directors. This second version also differs from the first version in

4

that it provides that DC 1 may remove the subordinate body's officers *without* a hearing, as opposed to *prior to* a hearing.

A red-line comparison of these two versions is provided as Exhibit 3 to the Stephens Declaration.

Comparing these two documents in light of the purported trusteeship of the PPOA raises concerns that the "standing rules" document was altered at some point after the trusteeship was imposed in order to conform to the procedures DC 1 had already used to enact the trusteeship. (DC 1 now claims that it imposed the trusteeship after a meeting of the executive board, not the full Board of Directors – a procedure which would conform to the second version of the rules but not to the first version.)

Moreover, Plaintiffs' own brief has conflicting statements about the origin and legitimacy of this document. For example, the brief states that the standing rules on trusteeship were "reconfirmed" at a hearing in February 2008 (notably, *after* the trusteeship had already been imposed). (Cross-Motion at 31). But Plaintiffs contradict this statement several pages later, stating that the rules were "reconfirmed" at the March meeting. (*Id.* at 33).

DC 1 represents to the Court that its authority to trustee the PPOA arises under the document submitted as Exhibit D to the Cross-Motion for Preliminary Injunction. Not only does this document lack authentication, but

5

there are serious questions about when and by whom it was created, when and how it was altered, and why these revisions were made.

## CONCLUSION

For the reasons stated herein, Defendants/Counterclaimants respectfully move the Court to disregard Plaintiffs' Cross-Motion for Preliminary Injunction's Exhibit D and all references to it.

Dated:  June 27, 2008     Respectfully submitted,

<u>s/ Keira M. McNett</u>
Arlus J. Stephens (478938)
Keira M. McNett (482199)
Davis, Cowell & Bowe LLP
1701 K Street NW, Suite 210
Washington, DC 20006
(202) 223-2620
(Fax) (202) 223-8651

Counsel for Defendants/Counterclaimants

## LCvR 7(m) Statement

Prior to filing this motion, counsel for Defendants/Counterclaimants discussed this motion with counsel for Plaintiffs/Counterdefendants. Plaintiffs/Counterdefendants oppose this motion.

                s/ Keira M. McNett
                Arlus J. Stephens (478938)
                Keira M. McNett (482199)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FRATERNAL ORDER OF POLICE, DC LODGE #1, et al.<br><br>Plaintiffs,<br><br>vs.<br><br>EDWARD BARRY, et al,<br><br>Defendants. | Civil No. 08-462 (ESH) |

**DECLARATION OF ARLUS J. STEPHENS**

I, Arlus J. Stephens, hereby declare that I have personal knowledge of these facts and if called as a witness could and would competently testify as follows:

1.  I am an attorney employed by Davis Cowell & Bowe and retained by the Defendants to represent them in this matter.

2.  At the Rule 26(f) conference in this case, held by telephone on May 13, 2008, Plaintiffs' counsel, Stephen DeNigris, stated that the DC Lodge #1 "standing rules" provide authority for the trusteeship imposed on the Postal Police Officers Association (also called NLC #2). Mr. DeNigris agreed to provide Defendants' counsel with a copy of these "standing rules."

3.  On June 3, 2008, Mr. DeNigris sent me an email with an attached document. A true and correct copy of the email and the document attached thereto is attached hereto as Exhibit 1.

4.  On June 17, 2008, I received by FedEx Plaintiffs' Initial Disclosures, which included a different document titled "standing rules." This document appears to be the same document attached as Exhibit D to Plaintiffs' Cross-Motion for Preliminary Injunction. A true and correct copy of this document is attached hereto as Exhibit 2.

5.  I caused these two documents to be converted into a Microsoft Word document that allows for comparison of two documents, beginning with the document attached hereto as Exhibit 1 and indicating changes made to this document to create the document attached as Exhibit 2. This comparison is attached hereto as Exhibit 3.

I declare under the penalty of perjury that the foregoing facts are true and correct to the best of my knowledge.

6/26/2008
Date

_____
Arlus J. Stephens

# EXHIBIT 1

Case 1:08-cv-00462-ESH    Document 38-3    Filed 06/27/2008    Page 1 of 3

## Arlus Stephens

| | |
|---|---|
| **From:** | SGD853@aol.com |
| **Sent:** | Tuesday, June 03, 2008 6:22 PM |
| **To:** | astephens@dcbwash.com; jgould@igc.org |
| **Subject:** | FOP STanding Rule on Trusteeship |
| **Attachments:** | FOP-NLC2-Trusteeship-BYLAW-WORD.pdf |

Arlus:

Here is the FOP Standing Rule on Trusteeship.

Steve DeNigris, Esq.

---

Get trade secrets for amazing burgers. Watch "Cooking with Tyler Florence" on AOL Food.

## TRUSTEESHIP

Section 01.01 **Trusteeship**

Trusteeships shall be established and administered over a subordinate body of this lodge only in accordance with the constitution and bylaws of this organization and for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures or otherwise carrying out the legitimate objects of such labor organization or in accordance with applicable law.

Section 01.02 **Trustee**

A Trustee shall be appointed over any subordinate body placed into trusteeship and will be selected by majority vote of the Board of Directors of the lodge. The trustee shall have the right to all funds, property, books and assets of the subordinate body. The Trustee shall have the right to remove and suspend officers of the subordinate body and all officers of the subordinate body are required to surrender to the trustee all monies, books and properties of the body.

Section 01.03 **Notice/Hearing to Subordinate Body**

The subordinate body placed into trusteeship shall be provided with notice and an opportunity to respond to the imposition of the trusteeship. The elected officers, as defined in Article 2, shall preside over the hearing. The hearing need not be elaborate nor require the adherence to the formal rules of evidence. The purpose of the hearing will be to afford the subordinate lodge the opportunity to present facts and/or argument, in person or in writing, in response to the imposition of trusteeship or maintenance of an emergency trusteeship. Upon review of the evidence introduced at the trusteeship hearing and the totality of circumstances, the Board of Directors of the Lodge may proceed with the imposition of a trusteeship or confirm an emergency trusteeship for such period as allowable under applicable law.

Section 01.04 **Emergency Trusteeship**

If the President of the Lodge, after consultation and agreement of a majority of the Board of Directors as defined in Article 2, determines that an emergency exists as a result of a violation of this Constitution and Bylaws, or for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures or otherwise carrying out the legitimate objects of such labor organization, the President may suspend the officers of the subordinate body prior to hearing and place the subordinate body under the supervision of a trustee as set forth in section .02. The hearing afforded to the subordinate body in accordance with section .03 shall be conducted within a reasonable period of time following the imposition of an emergency trusteeship under this section.

# EXHIBIT 2

## STANDING RULES

## TRUSTEESHIP

Section 01.01          **Trusteeship**

Trusteeships shall be established and administered over a subordinate body of this lodge only in accordance with the constitution and bylaws of this organization and for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures or otherwise carrying out the legitimate objects of such labor organization or in accordance with applicable law.

Section 01.02          **Trustee**

A Trustee shall be appointed over any subordinate body placed into trusteeship and will be selected by majority vote of the *Board of Directors* of the lodge. The trustee shall have the right to all funds, property, books and assets of the subordinate body. The Trustee shall have the right to remove and suspend officers of the subordinate body and all officers of the subordinate body are required to surrender to the trustee all monies, books and properties of the body.

Section 01.03          **Notice/Hearing to Subordinate Body**

The subordinate body placed into trusteeship shall be provided with notice and an opportunity to respond to the imposition of the trusteeship. The *Board of Directors* shall preside over the hearing. The hearing need not be elaborate nor require the adherence to the formal rules of evidence. The purpose of the hearing will be to afford the subordinate lodge the opportunity to present facts and/or argument, in person or in writing, *in response to the imposition of trusteeship or maintenance of an emergency trusteeship. Upon review of the evidence introduced at the trusteeship hearing and the totality of circumstances, the Board of Directors of the Lodge may proceed with the imposition of a trusteeship or confirm an emergency trusteeship for such period as allowable under applicable law.*

Section 01.04          **Emergency Trusteeship**

The President of the Lodge with the approval of a majority of the elected officers as defined in Article 2, of the Lodge Constitution may declare that an emergency exists as a result of a violation of the Lodge Constitution or Bylaws, or for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures or otherwise carrying out the legitimate objects of such labor organization, and may suspend the officers of the subordinate body without a hearing and place the subordinate body immediately under the supervision of a trustee in accordance with section .02. The hearing afforded to the subordinate body in accordance with section .03 shall be conducted within a reasonable period of time following the imposition of an emergency trusteeship under this section.

# EXHIBIT 3

## STANDING RULES

### TRUSTEESHIP

**Section 01.01 Trusteeship**

Trusteeships shall be established and administered over a subordinate body of this lodge only in accordance with the constitution and bylaws of this organization and for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures or otherwise carrying out the legitimate objects of such labor organization or in accordance with applicable law.

**Section 01.02 Trustee**

A Trustee shall be appointed over any subordinate body placed into trusteeship and will be selected by majority vote of the *Board of Directors* of the lodge. The trustee shall have the right to all funds, property, books and assets of the subordinate body. The Trustee shall have the right to remove and suspend officers of the subordinate body and all officers of the subordinate body are required to surrender to the trustee all monies, books and properties of the body.

**Section 01.03 Notice/Hearing to Subordinate Body**

The subordinate body placed into trusteeship shall be provided with notice and an opportunity to respond to the imposition of the trusteeship. The *Board of Directors* shall preside over the hearing. The hearing need not be elaborate nor require the adherence to the formal rules of evidence. The purpose of the hearing will be to afford the subordinate lodge the opportunity to present facts and/or argument, in person or in writing, *in response to the imposition of trusteeship or maintenance of an emergency trusteeship. Upon review of the evidence introduced at the trusteeship hearing and the totality of circumstances, the Board of Directors of the Lodge may proceed with the imposition of a trusteeship or confirm an emergency trusteeship for such period as allowable under applicable law.*

**Section 01.04 Emergency Trusteeship**

The President of the Lodge with the approval of a majority of the elected officers, as defined in Article 2, of the Lodge Constitution may declare that an emergency exists as a result of a violation of the Lodge Constitution and Bylaws, or for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures or otherwise carrying out the legitimate objects of such labor organization, and may suspend the officers of the subordinate body without a hearing and place the subordinate body immediately under the supervision of a trustee in accordance with section .02. The hearing afforded to the subordinate body in accordance with section .03 shall be conducted within a reasonable period of time following the imposition of an emergency trusteeship under this section.

Margin revision marks:
- Deleted: ¶
- Formatted: Font: Italic
- Deleted: elected officers, as defined in Article 2,
- Formatted: Font: Italic
- Deleted: .
- Deleted: . If the
- Deleted: , after consultation and agreement
- Deleted: Board of Directors
- Deleted: determines
- Deleted: this
- Deleted: the President
- Deleted: prior to
- Deleted: as set forth in

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FRATERNAL ORDER OF POLIICE, DC LODGE #1, et al.<br><br>Plaintiffs,<br><br>vs.<br><br>EDWARD BARRY, et al,<br><br>Defendants. | Civil No. 08-462 (ESH) |

### [PROPOSED] ORDER

For good cause shown, the Court hereby grants the Defendants/Counterclaimants' Motion to Disregard Exhibit D to Plaintiffs' Cross Motion for Preliminary Injunction and hereby orders that: a) Exhibit D to Plaintiffs' Cross-Motion for Preliminary Injunction is disregarded; and b) all references to Exhibit D in Plaintiffs' Cross-Motion for Preliminary Injunction and the attachments thereto are disregarded.

_____          _____
DATE                                          UNITED STATES DISTRICT JUDGE