IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FRATERNAL ORDER OF POLICE, DC LODGE #1, et al.<br><br>Plaintiffs,<br><br>vs.<br><br>EDWARD BARRY, et al,<br><br>Defendants. | Civil No. 08-462 (ESH) |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' CROSS-MOTION
FOR PRELIMINARY INJUNCTION**

Defendants/Counterclaimants respectfully oppose the Plaintiffs' Cross-Motion for Preliminary Injunction.

To avoid unnecessary repetition, we incorporate by reference the evidence and argument made in the Counterclaimants' Motion for Preliminary Injunction (Doc. 26).

We submit this brief to make just a few points. <u>First</u>, the power of a union to take over the affairs of another union arises only by contract, if it arises at all. There is no inherent "right" to trustee another union. <u>Second</u>, the contracts between DC 1 and the PPOA do not provide DC 1 with any

trusteeship authority whatsoever.  <u>Third</u>, for several reasons, the so-called "standing rules" cannot provide authority for any trusteeship.  <u>Fourth</u>, the Court should order DC 1 to rescind this illegitimate trusteeship.  The Court should not remand this matter for any kind of a hearing because no hearing can cure DC 1's lack of authority to take over the affairs of the PPOA.

### A. THE POWER TO TRUSTEE IS A MATTER OF CONTRACT, NOT A MATTER OF FEDERAL RIGHT.

Throughout the proceedings, DC 1 has suggested that its authority to impose a trusteeship on the PPOA is unquestionable, because federal law confers a "right" to do so.  DC 1 is incorrect.

LMRDA Section 302 mandates as follows:

"Trusteeships shall be established and administered by a labor organization over a subordinate body *only in accordance with the constitution and bylaws of the organization which has assumed trusteeship over the subordinate body* and for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objects of such labor organization."

29 U.S.C. §462 (emphasis added).

2

Judge Posner has explained that "Section 302 thus does not confer any powers on parent unions (as distinct from "subordinate bod[ies]"); it merely limits the authority of those unions to exercise their contractual rights to impose trusteeships on their local affiliates." *Int'l Bhd of Boilermakers v. Local Lodge 714*, 845 F.2d 687, 691 (7th Cir. 1988).

The "contractual" rights at issue are the parent union's constitution and bylaws, which are contracts between labor organizations for purposes of federal law. *Plumbers and Pipefitters v. Plumbers and Pipefitters, Local 334*, 452 U.S. 615, 624 (1981) ("union constitutions were probably the most commonplace form of contract between labor organizations when the Taft-Hartley Act was enacted").

Accordingly, if a union lacks authority under its constitution or bylaws – its contracts with its affiliated unions – to impose a trusteeship upon them, then it <u>cannot</u> impose a trusteeship upon them. *United Bhd. of Carpenters v. Brown*, 343 F.2d 872, 881-82 (10th Cir. 1965); *Flight Engineers Int'l Assoc. v. Continental Airlines*, 297 F.2d 397, 402 (9th Cir. 1961).

### B. THE CONTRACTS BETWEEN DC 1 AND THE PPOA DO NOT AUTHORIZE ANY POWER OF TRUSTEESHIP.

DC 1 did not beget the PPOA. At the time it affiliated with DC 1, the PPOA was an independent union that entered into a voluntary agreement

with DC 1 that was memorialized in a Charter Agreement. (Wilson Decl., ¶¶2-4; *In re Conrail Corp.*, 29 NMB 265, 273-74 (2002)).

As stated in our Motion for Preliminary Injunction, the Charter Agreement nowhere authorizes a trusteeship. (Defts Motion for Preliminary Injunction (Doc. 26) at 4-6). To the contrary, it specifies the extent of DC 1's oversight authority and limits DC 1 to a review of records to ensure the PPOA is acting lawfully (Dunlap Decl., Exh. A at ¶4).

Likewise, DC 1's Constitution does not contain <u>any</u> trusteeship powers of <u>any</u> nature vis-à-vis any of the labor committees, including the PPOA. (Dunlap Decl., Exh B).

According to the Charter Agreement, DC 1's Bylaws apply to the PPOA only where a matter is completely unaddressed by the Charter Agreement, by DC 1's Constitution, and by all of the PPOA's internal documents. (Dunlap Decl., Exh A at ¶2). Regardless, however, the DC 1 Bylaws also do not contain <u>any</u> power of trusteeship of <u>any</u> nature. (Dunlap Decl., Exh. B).

    C.    **THE ALLEGED "STANDING RULES" CANNOT SUPPORT A TRUSTEESHIP.**

As stated, nothing in DC 1's Constitution or Bylaws or the Charter Agreement supports any power of trusteeship over any labor committee. Pursuant to federal law (which requires such authority to be in the

Constitution or Bylaws) and pursuant to the Charter Agreement (which carefully establishes limited oversight authority), that should end the matter.

In response to the absence of any authority, DC 1 offers up a document it calls the "Standing Rules" (Cross-Motion for Preliminary Injunction at 5-6 and Exh. D). For several, independent reasons, the Court should disallow use of this document to support DC 1's claim of authority to take over the PPOA.

### 1.   The power to trustee must be found in DC 1's Constitution or Bylaws, not somewhere else.

Section 302 of the LMRDA contains no ambiguity: It mandates that a trusteeship can be imposed only in accordance with a union's constitution or bylaws. 29 U.S.C. §462.

Not only is the language plain, but there is a sound reason supporting this rule, namely that the existence or nonexistence of the power and its parameters should be open and obvious. This enables free and fair decision making and guards against fraud.

DC 1 has a Constitution and it has Bylaws. Neither provides any authority for a trusteeship. Both documents also contain a means for amendment, by which additional terms may be added (DC 1 Constitution, Article 30 (Amendments)). Yet no such amendments have been enacted.

## 2. The alleged "Standing Rules" are not part of the Constitution or Bylaws.

Neither the DC 1 Constitution nor the DC 1 Bylaws reference, let alone incorporate, any document called "Standing Rules."

DC 1 argues that they are incorporated by reference through <u>Robert's Rules of Order</u>. (Cross-Motion at 5-6).

At Article 28, titled "Parliamentary Procedure," DC 1's Constitution provides as follows: "Except as provided in the Constitution and By-laws, the latest edition of 'Roberts Rules of Order' shall govern the conduct and deliberations of the Board of Directors, the general membership and all other meetings of the Lodge." (Dunlap Decl., Exh. B).

According to DC 1, <u>Robert's Rules of Order</u> allow an entity that holds meetings to establish "standing rules." (Cross-Motion at 5). DC 1 further asserts that DC 1, acting pursuant to <u>Robert's Rules of Order</u>, established a document titled Standing Rules, which does not discuss parliamentary procedure, but instead allegedly establishes DC 1's right to impose trusteeships over its affiliated labor committees. (Cross-Motion at 5-6).

This argument is ludicrous. <u>Robert's Rules of Order</u> has nothing to do with imposing trusteeships over subordinate labor unions – it concerns how a meeting is to be run. Moreover, DC 1's Constitution provides only that

Robert's Rules of Order should be used to "govern the conduct and deliberations of the Board of Directors, the general membership and all other meetings of the Lodge." (Dunlap Decl., Exh B at Article 28).

To get around the silence of the Constitution and Bylaws, DC 1 attempts a double bootstrap here. First, it tries bootstrapping into the DC 1 Constitution all the provisions of Robert's Rules of Order and deems them a source of substantive rights for DC 1. Having used Robert's Rules of Order as a first bootstrap, it seeks to bootstrap into the Constitution a second document (the Standing Rules), which it claims was issued pursuant to substantive authority provided in Robert's Rules. (Cross Motion at 5-6).

Merely to state DC 1's argument should be sufficient to refute it.

### 3. There are serious concerns about the legitimacy of Exhibit D, alleged to be the "Standing Rules."

Even if the so-called Standing Rules were possibly a proper source of trusteeship rights – which they surely are not – the Court should still decline to rely upon them.

Defendants/Counterclaimants have today filed a Motion to Disregard Exhibit D to the Plaintiffs' Cross-Motion. Exhibit D is the document that Plaintiffs assert in their brief to be the "Standing Rules."

As set forth in that Motion, the Exhibit is defective for lack of authentication. This defect is especially important because there are other serious concerns about the legitimacy of the document. It is not even stated what body enacted them or when.

For this additional reason the Court should not rely upon this document as the source of any trusteeship rights.

**D.     Because DC 1 lacks authority to impose a trusteeship, the Court should order rescission of the trusteeship and should not remand for any kind of hearing.**

As set forth above, DC 1 lacks any contractual authority to impose a trusteeship over the PPOA. Because such authority is required by federal law before one union can take over the affairs of another, the purported trusteeship has been unlawful from its inception.

Not only has it been unlawful from its inception, but there is no way it could become lawful unless the PPOA and DC 1 agree to a change in their contractual relationship.

The Defendants/Counterclaimants therefore respectfully ask the Court to declare the trusteeship unlawful because it was imposed without any authority and thus in violation of federal law.

If the Court were to revoke the trusteeship but then remand for some kind of a hearing, as DC 1 apparently would request, we would be back before

this Court in short order making the same argument made here, *i.e.*, that DC 1 fundamentally lacks authority to take over the PPOA regardless of the situation. Such a remand would only prolong this dispute. Because DC 1 has no authority to take over the affairs of the PPOA – regardless of how many hearings it might hold – such a remand order would not be appropriate.

## CONCLUSION

For the reasons stated, the Defendants/Counterclaimants respectfully ask the Court to deny the Plaintiffs' Cross-Motion for Preliminary Injunction and instead to grant their own Motion for Preliminary Injunction.

Dated:  June 27, 2008			Respectfully submitted,

				s/ Arlus J. Stephens
				Arlus J. Stephens (478938)
				Keira M. McNett (482199)
				Davis, Cowell & Bowe LLP
				1701 K Street NW, Suite 210
				Washington, DC 20006
				(202) 223-2620
				(Fax) (202) 223-8651

				Attorneys for Defendants/Counterclaimants