UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| **FRATERNAL ORDER OF POLICE**, **D.C. LODGE 1**, et. al., | ) ) ) |
| Plaintiffs, | ) ) |
| | ) CASE NO.: 08-cv-462 (ESH) |
| v. | ) ) |
| **EDWARD BARRY**, et. al. | ) ) |
| Defendants. | ) ) ) |

## PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR PRELIMINARY INJUNCTION

Plaintiffs, through counsel, file this reply to the Defendants' Opposition to Plaintiffs' Cross-Motion for Preliminary Injunction. First, the defendants' assertion that the right to impose a trusteeship arises by contract is incorrect. The right to impose a trusteeship and the purpose in establishing a trusteeship is defined by statute. The fact that the trusteeship must be in accordance with the constitution and bylaws does not negate the fact that trusteeship is a creation of statute. Congress, in enacting the trusteeship provisions of the LMRDA, intended that so long as the grounds for trusteeship satisfy the statutory prerequisites, the trusteeship is valid. *See e.g. Transport Workers Union of Philadelphia v. Transport Workers Union of America*, 131 F.Supp2d 659 (E.D. Pa. 2001). The plaintiffs have met this prerequisite.

And while the defendants have tried to assert that the trusteeship was imposed *solely* to reinstate Teri Grant to the NLC-2 Presidency, an allegedly improper purpose under the law, the undisputed facts demonstrate otherwise. In this regard, the undisputed evidence demonstrates that the defendants (i) failed to conduct regular membership meetings; (ii) failed to conduct

business in accordance with its Constitution and Bylaws; (iii) were involved in financial mismanagement or theft of union funds; (iv) interfered with the collective bargaining process during impasse; (iv) denied Teri Grant her LMRDA Title I rights; (v) breached democratic process under federal law; and (vi) breached the DC-1/NLC-2 Charter and DC-1's Constitution and By-laws. These were not isolated incidents. The defendants' actions were part of a pattern and practice of malfeasance, nonfeasance and misconduct in derogation of their responsibilities and obligations as members of the FOP and union officials but more importantly in defiance of the law. In light of the repeated and numerous violations engaged in by the defendants, trusteeship was the only reasonable alternative for DC-1 to restore the NLC-2 to viability.

Second, the charter so heavily relied upon by the defendants, is not the sole controlling document in the parties' relationship. It is just one of several documents which must be read in tandem with the others. In this regard, the Charter must be read in context with DC-1's Constitution and Bylaws, Roberts Rules of Order and federal law. The Charter alone is not dispositive of the parties' relationship under any set of circumstances.

And yet, even if the Charter was the sole document which established the relationship between the parties, the defendants conveniently ignore the Charter's expressed language; language which undercuts their argument altogether, and language which imposed upon the defendants requirements which they consistently refused adhere to. In the Charter, the NLC-2 agreed and acknowledged that:

> 2. The Labor Committee is an integral part of the lodge and fully subscribes to the purposes of provisions of the Lodge Constitution, as such provisions may be applicable to the labor Committee. To the extent that matters pertaining to the operation of the labor committee are not set forth in this Charter or implementing by-laws, rules regulations, the FOP-NLC-2 Constitution, or procedures adopted

>by the Labor Committee, applicable provisions of the Lodge Constitution and the by-laws or applicable federal law shall control. In the event of a conflict between this Charter and the Lodge Constitution, the provisions of the Lodge Constitution shall control, unless such a result will be contrary to law.

(Exh. B; *Ptfs. Cross-Motion Preliminary Injunction*)

Indeed, Mr. Wilson's signature on the Charter and the Charter provisions clearly confirms his willingness to make the NLC-2 an integral part of the FOP nationally and DC-1 locally. He accepted the obligations and benefits associated with being a subordinate of the largest law enforcement organization in the world; and he accepted the responsibility placed upon the NLC-2 to adhere to and comply with these obligations under the Charter, DC-1's Constitution and By-law and federal law. There is no language in the Charter which allows the NLC-2 to call it a day if they chose to end the relationship. The Charter was not an illusory contract.

Similarly, Mr. Wilson's interpretation of the Charter is not dispositive under any theory propounded by the defendants. It is DC-1's interpretation of the Charter, its Constitution and Bylaws and its internal practices which must be given deference so long as the interpretation is reasonable. *Dow v. United Bhd. of Carpenters and Joiners of Am.*, 1 F.3d 56, 58 (1st Cir. 1993)(union's internal affairs comprise an enclave best kept free from judicial intrusion)  The interpretation in this case given DC-1's standing rule on trusteeship is entirely reasonable. *Hughes v. Bricklayers and Allied Craftworkers Local 45*, 386 F.3d 101 (2d Cir. 2004). The defendants have failed to produce any evidence much less *clear and convincing evidence* that the trusteeship was not established or maintained in good-faith for a purpose allowable under the LMRDA. Accordingly, the trusteeship is not subject to collateral attack and should be confirmed.

Third, the claim by the defendants that the NLC-2 was an independent union prior to its affiliation with the Fraternal Order of Police is not supported by the facts. The National Labor Council was a creation of the National Fraternal Order of Police. It was only when the Department of Labor objected to the structure of the NLC as administered by the National FOP, that the NLC-2 asked DC-1 to become its parent lodge. Prior to that time the National FOP was the parent lodge to the NLC-2. The NLC-2 could have asked any other state FOP for a charter. It chose DC-1 because that is where the vast majority of FOP federal labor committees exist. That was the only way the NLC-2 could exist under the auspices of the FOP. And that was the path that Mark Wilson and the NLC-2 chose to avail itself of.

Fourth, there has been much to do about the standing rules on trusteeship. The defendants have attempted to paint them as suspect and questionable. They have further attempted to suggest to this Court that the trusteeship rules were created *after* the trusteeship was imposed. Consequently, they allege there are serious concerns with the rule.

The standing rule on trusteeship is legitimate. In this regard, the rule was created in 2000 and existed years before the NLC-2 trusteeship was initiated. DC-1 adopted this standing rule at an Executive Board meeting conducted under Roberts Rules and in accordance with its authority under the DC-1 Constitution and By-Laws to conduct such meetings and pass such rules. Once passed, they were clearly "in accordance with" DC-1's Constitution and By Laws even if they were not expressly made a part of those documents. This is all that section 462 of the LMRDA requires to validate a trusteeship. ("Trusteeships shall be established and administered. . . only in accordance with the constitution and bylaws of the organization which has assumed the trusteeship.")

It is undisputed that the rule on emergency trusteeship is the rule which was followed during the January 31, 2008 meeting.  During the February 2008, FOP Board meeting the rule was discussed, revised to reflect terminology changes, clarified on the appeal procedure and was reconfirmed during the March 2008 DC-1 meeting.  There is nothing suspicious or questionable about the rule except in the defendants' imagination.  Assuming *arguendo* there was a procedural deficiency, the FOP still provided procedural due process to the NLC-2 on February 29, 2008, and reconfirmed the trusteeship and the rule during its March 2008 meeting. Again, the February and March 2008 meetings were conducted under Roberts Rules and in accordance with its authority under the DC-1 Constitution and By-Laws to conduct such meetings and pass such rules. And once again, they were clearly "in accordance with" DC-1's Constitution and By Laws even if they were not expressly made a part of those documents.  Thus, any procedural deficiency was rectified during the March 2008, meeting.

Looking to the procedural requirements, DC-1 followed the procedure under the rule. DC-1 provided the defendants with notice of the alleged violations and they acknowledged receipt.  DC-1 afforded the NLC-2 the opportunity to appeal the trusteeship and to present evidence in its defense and defendants exercised that right to appeal.  DC-1 afforded the defendants the opportunity to be represented by counsel and defendants accepted that offer.  DC-1 offered to pay reasonable travel expenses. DC-1 set forth a procedure for any NLC-2 member to seek dissolution of the trusteeship.  Then minutes before the DC-1 Board of Directors assembled for the hearing defendants unjustifiably cancelled the hearing and instead chose to deride DC-1's efforts by writing:

> If in the future you request a meeting with the executive board, the following conditions must apply: you will provide airline tickets to those members needing travel. You will provide our transportation to and from our residences, you will provide us with a day's wages for the time we must take off and you will travel to see us. Lastly, we will determine the time and place of the meeting.

(Exh. X; *Ptfs. Cross-Motion for Preliminary Inj.*)

So long as DC-1 followed its procedures, and there is no allegation from the defendants that it did not, the trusteeship is not subject to attack. *Transport Workers Union*, 131 F.Supp.2d at 663-64. Thus, the defendants' argument places form over substance.

What is "ludicrous" in this case, is not how DC-1 interpreted and applied the rule, but the defendants' belief that they are entitled to violate the law, breach their fiduciary responsibilities to the NLC-2 membership, misappropriate union funds and interfere with the collective bargaining process without consequence.

The different versions of the rule filed as exhibits by the defendants in their ancillary motion clearly demonstrates there is no substantive change to the rule as it existed in 2000 and again in 2008. Rather, the exhibit shows, at best, that some words were italicized and that the words "board of directors" were substituted for the word "officers." The exhibit clearly reflects that the rule was updated in 2008 despite what the defendants try to suggest. The response to the defendants' most recent motion will be addressed therein and is adopted in this response.

The defendants interpretation of Robert's Rules of Order is lacking. They cite no contrary authority to dispute DC-1's interpretation and action under the rule. Their claim that Roberts Rules of Order applies only to "how a meeting is run" demonstrates a fundamental misunderstanding and misapplication of both the rules and the internal workings of the FOP. Defendant's eagerness to downplay Roberts Rules of Order underscores their total disregard for

the important role that due process plays in the conduct of union affairs. Their refusal to adhere to Roberts Rules of Order in the conduct of their meetings violated the member's constitutional rights and thwarted the fair and proper governance of the union.

The defendants have attempted to claim damages and fees in their motion. No claim for damages is cognizable under sections 462 or 464 of the LMRDA. As a matter of law, there is no cause of action for individual damages under Title III of the LMRDA. *Gesink v. Grand Lodge, IAM*, 831 F.2d 214 (10th Cir. 1987). Accordingly, the court should discount the defendants' claim for damages. For the following reasons, the plaintiffs respectfully pray that the court grant its motion for preliminary injunction.

Respectfully submitted,

*/s/ Stephen G. DeNigris, Esq.*
Stephen G. DeNigris, Esq.
Attorney for the Plaintiffs
Law Offices of Stephen G. De Nigris, P.C.
2100 M St NW - Suite 170 -- 283
Washington, DC 20037
Telephone:   (703)416-1036
Fax:            (703)416-1037

Dated: July 2, 2008

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing Plaintiffs' Cross-Motion for Preliminary Injunction and Opposition to Defendants' Motion for Preliminary Injunction was sent by Electronic-Mail (e-mail) on the 2nd day of July 2008 to:

Arlus J. Stephen, Esq.
Attorney for Defendants Barry, Ferraro,
Vitolo, Diaz, and Dunlap
Davis, Cowell & Bowe, LLP
1701 K St NW Suite 210
Washington, DC 20006
Office: (202)223-2620
Fax: (202)223-8651

Keira M. McNett, Esq.
Attorney for Defendants Barry, Ferraro,
Vitolo, Diaz, and Dunlap
Davis, Cowell & Bowe, LLP
1701 K St NW Suite 210
Washington, DC 20006
Fax Office: (202)223-2620
(202)223-8651

                                          */s/ Stephen G. DeNigris, Esq.*
                                          Stephen G. DeNigris, Esq.