UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **FRATERNAL ORDER OF POLICE**, **D.C. LODGE 1**, et. al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| | ) | CASE NO.: 08-cv-462 (ESH) |
| v. | ) ) | |
| **EDWARD BARRY**, et. al. | ) ) | |
| Defendants. | ) ) ) | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO STRIKE EXHIBIT "D"**

Plaintiffs, through counsel submit this response in opposition to the defendants' motion

to strike Exhibit D.  As further grounds, counsel would state:

In its motion defendants question the authenticity of DC-1's rule on trusteeship.  They

argue that because plaintiffs submitted the 2000 approved version as the rule on June 3, 2008,

and the 2008 amended version in its pleadings, the authenticity of the document is now in

question.

For example, they claim that the document was altered at some point.  They argue that the

origin of the document is lacking detail. They allege that there are "significant" differences

between the two documents.  The defendants are wrong.

In this regard, then DC-1 President Louis P. Cannon declares that the 2000 rules were

created and adopted by DC-1 and its Board as a "lesson learned" from a breach of contract

lawsuit against one of DC-1's errant labor committee. (Exh. A)  He further declares that the

authority for DC-1 to enact such a procedural is found in Articles 8 and 27 of DC-1's

Constitution and Bylaws in accordance with Robert's Rules of Order.  (Exh. CC)  His declaration

authenticates the rule.

The defendants make much to do as it applies to the disclosed rules provided to it by e-

mail on June 3, 2008, (Def. Exh. 1), and during the Rule 26 disclosures and the rule later

submitted with the plaintiffs' cross-motion. (Def. Exh. 2)

In trying to meet both the spirit and intent of providing the defendants with the documents

it was entitled to, counsel for the plaintiffs submitted the earlier 2000 rule and the amended 2008

rule once he obtained a copy.  There was nothing improper or sinister about the disclosure.  As

noted above, counsel provided the defendants with what they were entitled to.

A comparison of the documents reveal very little substantive change to the rules.

Specifically, the emergency trusteeship provision at section 01.04, as it appears in plaintiffs'

(Exhibit BB), was the section which was relied upon by DC-1 as it applied to the NLC-2

deliberations on January 31, 2008.  The 2000 rule allowed the President to impose an emergency

trusteeship after consultation and agreement of a majority of the Board of Directors.[1]

The elected officers approved the emergency trusteeship on January 31, 2008.  The Board

of Directors ratified the imposition of the trusteeship at the February 29, 2008, NLC-2 hearing at

DC-1.  Also, the President had the authority to suspend the NLC-2's officers prior to a hearing.

The proposed 2008 amended rule was discussed at the February 13, 2008, DC-1 Board

Meeting.  The proposed 2008 amended rule was tabled and subsequently approved at the March

---

[1]     Under DC-1's Constitution and Bylaws, "Board of Directors" shall mean and
consist of the elected officers, the immediate past president of this Lodge, the Chairperson of
each certified labor committee and the agency
trustees.

12, 2008, DC-1 Board meeting.[2]  (Def. Exh. 2)  The amendment reworded the prepositional

phrase, "If the President of the Lodge" and changed it to "[T]he President of the Lodge."   A

change to "elected officers[3]" was approved by the Board of Directors at the March 2008 meeting.

The phrase "prior to a hearing" was supplanted with "without a hearing" while the requirement

that a hearing be afforded within a reasonable period of time following the imposition of an

emergency trusteeship remained the same.

As to the claim that the plaintiffs' brief has conflicting statements wherein the word

"reconfirmed" was used in the context of the February, 29, 2008, NLC-2 hearing and the use of

"reconfirmed" as it applies to the March 12, 2008, DC-1 Board meeting, plaintiffs have

explained that the January 31, 2008, action of the elected officers was ratified by the Board of

Directors on February 29, 2008.  The proposed amended rule was *discussed* at the February 12,

2008 Board meeting, tabled and approved at the March 13, 2008, Board DC-1 meeting.[4]

WHEREFORE, Plaintiffs respectfully pray that the Court deny the defendants' motion

to disregard Exhibit D.

---

[2]       In counsel's earlier submission, Plaintiffs' Cross-Motion at p. 31, the sequence of events is not the picture of clarity which it could have been.  Counsel apologizes for the lack of clarity.  The meeting dates and what occurred at each meeting is clarified in this response and corrects the factual record.

[3]       "Elected officers" shall mean and consist of a President, Vice-president, Recording Secretary, Financial Secretary, Treasurer, Conductor, two (2) Guards, three (3) Trustees-at-Large and a Chaplain.

[4]       The February 12, 2008, Board Meeting is the meeting which Defendant Dunlap attended.

Respectfully submitted,


_____     ***/s/ Stephen G. DeNigris, Esq.***
Stephen G. DeNigris, Esq.
D.C. Bar No. 440697
Attorney for the Plaintiffs
2100 M Street NW Suite 170 - 283
Washington, DC 20037
Office: (703)416-1036
Fax:     (703)416-1037


Dated:  July 8, 2008
        Washington, DC

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a copy of the foregoing motion for continuance was sent by Electronic Mail (E-mail) on the 8th day of July 2008 to the following individuals:

Arlus J. Stephens, Esq.
Kiera McNett, Esq.
Davis, Cowell & Bowe LLP
1701 K Street NW, Suite 210
Washington, DC 20006


*/s/ Stephen G. DeNigris, Esq.*
Stephen G. DeNigris, Esq.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| **FRATERNAL ORDER OF POLICE**, ) | |
| **D.C. LODGE 1**, et. al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | CASE NO.: 08-cv-462 (ESH) |
| v. ) | |
| ) | |
| **EDWARD BARRY**, et. al. ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**O R D E R**

Upon considerations of the Defendants' Motion to Disregard Exhibit D, the Plaintiffs'

Response and other papers and for other good cause it is hereby

**ORDERED** that the Defendants' motion is GRANTED / DENIED.


_____
UNITED STATES DISTRICT JUDGE

Dated: July ____, 2008
      Washington, DC

FOP v. Barry
Civil Action 08-cv-0462 (ESH)
Exhibit A

# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **FRATERNAL ORDER OF POLICE,** | ) | |
| **D.C. LODGE 1**, et. al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CASE NO.: 08-cv-462 (ESH) |
| v. | ) | |
| | ) | |
| **EDWARD BARRY**, et. al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DECLARATION OF LOUIS P. CANNON

Pursuant to 28 U.S.C. §1746, Louis P. Cannon declares under penalty of perjury that:

1.    I make this declaration in response to the Defendants' Motion to Strike Exhibit D.

2.    I was the President of DC-1 for approximately 16 years ending in January 2008.

3.    During my tenure as president, I was contacted at various times by the U.S.

Department of Labor (DOL) concerning the labor committees being chartered by DC-1.

4.    During these contacts the Department of Labor made it clear to me that DC-1 had

both a responsibility and an obligation as the chartering entity to maintain oversight of DC-1's

labor committees to insure that the labor committees were complying with the law.

5.    This first such contact came up specifically in the context of the FOP Bureau of

Engraving and Printing Labor Committee in approximately 1996.

6.    The BEP Labor Committee had been chartered by DC-1 in the early 1990's.  The

BEP's treasurer was being investigated by the DOL for theft of union funds.  Ultimately, the

treasurer was arrested, convicted and sentenced for the embezzlement of union funds.

7.      In response to that, I directed that a compliance committee be created to insure that DC-1 chartered labor committees complied with all aspects of federal law.

8.      DC-1's actual experience in the matter occurred in early 2000. This time it involved the FOP Washington Navy Yard Labor Committee (WNY) and allegations of theft and the committee's failure to comply with federal law and with DC-1's Constitution and Bylaws as it applied to fiscal responsibility and audits.

9.      Unfortunately, the FOP and I as a plaintiff sued the labor committee to enforce our constitution and bylaws and our charter.

10.     Toward the end of 2000, DC-1 was able to obtain the labor committee's financial records, perform an audit and hold an election for new officers. This resolved the lawsuit.

11.     One of the lessons learned during the 2000 WNY lawsuit was the fact that DC-1 had no rules for a trusteeship and that such a rule should be in place as it applied to the labor committees. I requested our lawyer draft us a rule.

12.     Our lawyer sent us a proposed rule. The rule was discussed by myself and the Board of Directors sometime late in 2000. After discussion of the rule, the Board approved the rule and adopted it as the rule for DC-1. The Board of Directors approved the rule on trusteeship under the authority of Article 7 Section 3 and Article 28 of DC-1's Constitution and Bylaws. Article 7 Section 3 reads:

> The Board of Directors shall have and exercise all administrative powers of the Lodge and have the authority to transact business to accomplish the aims and objectives of the membership in accordance with this Constitution and By-Laws.

Article 28 reads:

> Except as provided in the Constitution and By-laws, the latest edition of "Roberts Rules of Order" shall govern the conduct and deliberations of the Board of Directors, the general membership and all other meetings of the Lodge.

13.     For the next eight years, DC-1 did not have to use reinvoke or use this rule.

14.     However, the 2000 rule was in effect at the time DC-1 placed the NLC-2 into emergency trusteeship at the end of January 2008.

15.     I reviewed the submission of the defendants and the rule that was submitted for our review and approval in 2000 is the rule listed as Exhibit BB. That is the rule in the defendants' Exhibit 1 attached to its motion.

16.     The second rule listed in the defendants' exhibit is the rule which was amended and approved by the Board of Directors in March 2008, listed as Exhibit 2 attached to the defendants' motion.

I declare under penalty of perjury that the foregoing is true and correct. Executed on July 8, 2008.

_____
LOUIS P. CANNON

3

FOP v. Barry, et. al
Civil Action 08-cv-0462
Exhibit BB

# Exhibit BB

## TRUSTEESHIP

### Section 01.01  Trusteeship

Trusteeships shall be established and administered over a subordinate body of this lodge only in accordance with the constitution and bylaws of this organization and for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures or otherwise carrying out the legitimate objects of such labor organization or in accordance with applicable law.

### Section 01.02  Trustee

A Trustee shall be appointed over any subordinate body placed into trusteeship and will be selected by majority vote of the Board of Directors of the lodge. The trustee shall have the right to all funds, property, books and assets of the subordinate body. The Trustee shall have the right to remove and suspend officers of the subordinate body and all officers of the subordinate body are required to surrender to the trustee all monies, books and properties of the body.

### Section 01.03  Notice/Hearing to Subordinate Body

The subordinate body placed into trusteeship shall be provided with notice and an opportunity to respond to the imposition of the trusteeship. The elected officers, as defined in Article 2, shall preside over the hearing. The hearing need not be elaborate nor require the adherence to the formal rules of evidence. The purpose of the hearing will be to afford the subordinate lodge the opportunity to present facts and/or argument, in person or in writing, in response to the imposition of trusteeship or maintenance of an emergency trusteeship. Upon review of the evidence introduced at the trusteeship hearing and the totality of circumstances, the Board of Directors of the Lodge may proceed with the imposition of a trusteeship or confirm an emergency trusteeship for such period as allowable under applicable law.

### Section 01.04  Emergency Trusteeship

If the President of the Lodge, after consultation and agreement of a majority of the Board of Directors as defined in Article 2, determines that an emergency exists as a result of a violation of this Constitution and Bylaws, or for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures or otherwise carrying out the legitimate objects of such labor organization, the President may suspend the officers of the subordinate body prior to hearing and place the subordinate body under the supervision of a trustee as set forth in section .02. The hearing afforded to the subordinate body in accordance with section .03 shall be conducted within a reasonable period of time following the imposition of an emergency trusteeship under this section.

FOP v. Barry
Civil Action No. 08-cv-0462(ESH)
Exhibit CC

# EXHIBIT CC

# ARTICLE 7 (Board of Directors)

**SECTION 1** The Board of Directors of the Jerrard F. Young Lodge #1 shall be composed of the elected officers, the immediate past president of this Lodge, the Chairperson of each certified labor committee and the Agency Trustees.

**SECTION 2** The Board of Directors of the Jerrard F. Young Lodge #1 shall meet at least once a month and shall have the majority of the elected officers present to constitute a quorum for transacting the business of the Lodge. In the event a quorum is not present, a lesser number may adjourn the meeting to some future time within thirty (30) days.

**SECTION 3** The Board of Directors shall have and exercise all administrative powers of the Lodge and have the authority to transact business to accomplish the aims and objectives of the membership in accordance with this Constitution and By-laws.

**SECTION 4** Any vacancy in any office of the Board of Directors, except Chairpersons of Labor Committees and Agency Trustees shall be filled by the President with the approval of the majority of the remaining members of the Board of Directors.

**SECTION 5** The expenses of the members of the Board of Directors and the Delegates of this Lodge attending meetings or conferences may be paid by the Lodge.

**SECTION 6** The District of Columbia National Trustee shall be notified of and be provided the opportunity to attend and participate in all Jerrard F. Young Lodge #1 Board of Directors meetings. The District of Columbia National Trustee shall not have a vote.

Case 1:08-cv-00462-ESH    Document 41-2    Filed 07/08/2008    Page 9 of 9

# ARTICLE 28 (Parliamentary Procedure)

**SECTION 1** Except as provided in the Constitution and By-laws, the latest edition of "Roberts Rules of Order" shall govern the conduct and deliberations of the Board of Directors, the general membership and all other meetings of the Lodge.