**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| **FRATERNAL ORDER OF POLICE**, )<br>**D.C. LODGE 1**, et. al., )<br>  )<br>Plaintiffs, )<br>  )<br>v. )<br>  )<br>**EDWARD BARRY**, et. al. )<br>  )<br>Defendants. )<br>_____ ) | CASE NO.: 08-cv-462 (ESH) |

**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION**
**TO PLAINTIFFS' MOTION TO AMEND/ALTER JUDGMENT**

Plaintiffs, through counsel, file this reply to the defendants' opposition to plaintiffs'

motion to alter and/or amend judgment.  As further grounds counsel would state:

The Court's order of July 22, 2008, did not specifically address the full parameters of the

specific relief sought by the defendants, i.e., "to take all such other actions as may be necessary

to return full operation and control of the Postal Police Officers Association to the leadership of

that union prior to the trusteeship."  Equally important is the fact that the defendants failed to

place any evidence before the Court which established that Edward Barry was the legitimate

president of the NLC-2 prior to the trusteeship.

As noted earlier in plaintiffs' motion, Edward Barry notified this Court that on February

25, 2008, he *resigned* from the position he allegedly held.  (Exh. A)  This resignation had a two-

fold effect.  First, the resignation removed Barry from the position he allegedly held.  Once Mr.

Barry resigned from the position of president of the NLC-2, he relinquished all rights to and

privileges of that office and reverted to the status of "member."  (Exh. E. *Aff. of Robert Mosley*)

To further emphasize his disassociation with the NLC-2, Mr. Barry apprised the Court of the fact that he terminated his membership in the NLC-2 altogether by canceling his dues deduction from his paycheck.  Thus, not only did Mr. Barry relinquish all rights and privileges that he claims he held, but he told this Court he was no longer a member in good standing eligible to hold any office within the NLC-2.  A review of the certified letter sent to the U.S. Postal Service confirms that the termination of union member status was filed by Barry.

Thus, it is important for the issue of Edward Barry's status to be resolved because the plaintiffs could be in contempt of the July 22, 2008, order if the Court intended to reinstall Edward Barry and DC-1 took internal action to remove him from illegally holding a position he had relinquished all rights and privileges to.   There is no authority in the NLC-2 Constitution for the Executive Board to install a president by recognition.  (Exh. B)  There is no authority in DC-1's Constitution and Bylaws which supports the NLC-2's actions.  (Exh. C)  There is no authority in the FOP's Grand Lodge Constitution and Bylaws which supports such action.  (Exh. D)

On the other hand, if the Court meant to say that it was restoring union control to some point before January 9, 2008, the order is ambiguous and plaintiffs need the Court to instruct them as to the date its order applies.  Lastly, if the Court believes that these questions are beyond the issues addressed in the July 22, 2008, order, then the plaintiffs respectfully seeks the Court's direction so that DC-1 can address these matters internally with NLC-2.

Addressing specific allegations in the defendants' opposition, this Court did not reinstate Teri Grant to her position of president because it determined she was not the president.  Rather the Court based its determination on the premise that reinstalling Teri Grant was beyond the scope of the issues raised in the complaint.  The Court was correct in this respect.  The plaintiffs

sought to confirm the trusteeship and sought to obtain the NLC-2 financial records.

The allegations concerning alleged refusal to cooperate laced throughout the defendants' opposition is simply caviling.  The defendants' accusations are unresponsive to the issues raised in the motion and unless the defendants are prepared to bring an appropriate motion subject to Rule 11, they should be discounted.  Indeed, the plaintiff could level the same assertions as it applies to the defendants' tap-dance concerning the release of NLC-2's financial records. Plaintiffs have instead chosen to try and resolve these differences internally rather than burden the Court.

As it pertains to what the "leadership" of the NLC-2 recognizes concerning Mr. Barry, that is simply immaterial to the issue at hand.  As reflected in Chairman Mosley's affidavit, this so-called recognition has no legal effect.

Further, there is no indication by the defendants as to when Mr. Barry reinstated his dues deductions reconfirming his membership status.  As noted by Bylaws Chairman Mosely, no labor committee executive board has the authority to view an individual, who resigns from office, as still being the office holder of that position because that person expresses a willingness to serve in that position again and the executive board likes it.

Accordingly, the only lawful way a person such as Mr. Barry could ever claim entitlement to the elected position of president after he voluntarily resigned from that position, was to reinstate his membership in the FOP; be nominated for the position during the established period for officer nominations; and then be elected by a majority vote of the membership to that position.  (Exh. E; ¶¶ 8-9)

In its argument, the defendants claim the court's order and reasoning leave no doubt as to the status of control over the NLC-2. They claim that this is another attempt by DC-1 to reinstall Teri Grant as president. This is the defendants' unsupported spin. The plaintiffs have asked legitimate questions of the Court in an attempt to not contravene the Court's ruling.

First, if the Court's ruling was directed pointedly at dissolving the trusteeship, ordering disclosure of financial records, and not addressing any other relief sought by the defendants or addressing who the leadership of the union was prior to the trusteeship, DC-1 will know how to act.

Second, if the Court finds that DC-1 will not be in contempt of its order should Teri Grant continue the pursuit of her internal appeal challenging her unlawful removal, then DC-1 will know who to act. Third, if the Court finds that Mr. Barry was reinstalled as President of the NLC-2 despite his relinquishment of the position, then DC-1 will know how to act.

Then there are ancillary issues plaintiffs have raised as it applies to the expenditure of NLC-2 funds in the absence of executive authority. DC-1 is not asking the Court to resolve those ancillary issues. Those issues can be disposed of internally once the Court provides guidance as to the scope of its July 22, 2008, order. Providing direction as to the scope of the Court's order is not judicial interference in internal union affairs, it is respect for the Court and its order.

WHEREFORE, plaintiffs respectfully pray that this Honorable Court grant its motion concerning the issues it has raised.

Respectfully submitted,


**/s/ Stephen G. DeNigris, Esq.**
Stephen G. DeNigris, Esq.
D.C. Bar No. 440697
Attorney for the Plaintiffs
2100 M Street NW Suite 170 - 283
Washington, DC 20037

Office: (703)416-1036
Fax: (703)416-1037


**/s/ Jonathan Gould, Esq.**
Attorney for the Plaintiffs
D.C. Bar No. 491052
1730 M St NW Suite 412
Washington, DC 20036
Tel: (202)347-3889
Fax: (703)652-7589


Dated: August 20, 2008
      Albany, NY

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the foregoing Plaintiffs' Reply to Defendants' Opposition of Plaintiffs' Motion to Amend/Alter was sent by electronic mail on the 20th day of August 2008 to the following individuals:


Arlus J. Stephens, Esq.
Attorney for Defendants Barry, Ferraro,
Vitolo, Diaz, and Dunlap
Davis, Cowell & Bowe, LLP
1701 K St NW Suite 210
Washington, DC 20006

Office: (202)223-2620
Fax:    (202)223-8651

Keira M. McNett, Esq.
Attorney for Defendants Barry, Ferraro,
Vitolo, Diaz, and Dunlap
Davis, Cowell & Bowe, LLP
1701 K St NW Suite 210
Washington, DC 20006

Office: (202)223-2620
Fax:    (202)223-8651


*/s/ Stephen G. DeNigris, Esq.*

6

FOP, et. al. v. Barry
Civil Action 08-cv-0462(ESH)
Exh. A

# EXHIBIT A

March 27, 2008

Court Clerk
U.S. District Court
333 Constitution Ave NW
Washington, DC 20001

Case: 1:08-cv-00462 -ESH

Dear Sir/ Madam,
In response to a served copy of a petition to the court on the above noted
case, I replied to the plaintiff's attorney as required.
Attached is a copy of all documentation that I have forwarded to him.
If I can be of further assistance to the court, please advise me.

Edward Barry
27 Bishop St
Staten Island, NY 10306

*let this be filed  ESH  4/14/08*

March 27, 2008

Stephen DeNigris
2100 M Street  Suite 170
Washington, DC 20037

Sir,

I am in receipt of a copy of the petition to U.S. District Court, Case # 1:08-cv-00462 and am responding to it.

Upon receiving independent council opinion that DC1 has most likely the authority to place the union FOP/NLC#2 in receivership and appoint a trustee, I saw no point in continuing this contest. On February 25, 2008 I submitted a written resignation to the union's Nat'l/Sec. In addition I sent by certified mail a separate notice to the U.S. Postal Service as acknowledgement that I was withdrawing from the same union.

In your petition you request that I declare the trusteeship lawful, confirm the appointment of Steven Anthony as well as order the other defendants to take various actions in accordance with this petition. I no longer oppose such actions but in view of my resignation, no longer have the authority to command such members of FOP/NLC#2.

Additionally, I do not possess any property or funds of this same union. I do not have knowledge of any union website passwords or other control data. Any bank related control or authority would have passed to my successor on the effective day of my resignation.

I don't believe I can be of any further assistance in the trustee's transition into the union. If your office feels the need to continue court proceedings that include me, please advise.

I will forward a copy of this communication to the court as required.

Edward Barry



# FRATERNAL ORDER OF POLICE
## NATIONAL LABOR COUNCIL 2

REPRESENTING
UNITED STATES
POSTAL POLICE OFFICERS

February 25, 2008

Paul Ferraro, Nat'l Secretary Treasurer
FOP/NLC#2

Upon receipt of this letter please be advised that I am resigning from the union,
FOP/NLC2, effective this date.

Accordingly, I will not be attending the DC1 hearing later this week. Please deal with the
hearing as you require.

I am not, nor do I expect to become, in possession of any files, records or other property
of the union with the exception of a fax machine which is in storage at the B1 level of
Church Street Station, Manhattan. I will make arrangements to have this machine
delivered to union steward Richard Greco who is assigned to Grand Central Station also
in Manhattan.

In addition I have no outstanding expense account or other union funds in my possession.
I have no expenses to be reimbursed either. Any mail received by me pertaining to union
business will be returned to sender, or if you like, forwarded to the Sec/Treas.

Fraternally,

Edward Barry
President, FOP/NLC#2

Standard Form 1188
Revised January 1979

**CANCELLATION OF PAYROLL DEDUCTIONS**

Office of Personnel Management
FPM Chapter 560

**FOR LABOR ORGANIZATION DUES**

Privacy Act Statement

Section 5525 of Title 5, United States Code (Allotments and Assignments of Pay) permits Federal agencies to collect this information. This completed form is used to stop labor organization dues from being deducted from your pay and to notify the labor organization that the dues will be no longer deducted. Completing this form is voluntary, but it may not b e processed if all requested information is not provided.

This record may be disclosed outside your agency to: 1) the Department of Treasury to make proper financial adjustments; 2) a Congressional office if you make an inquiry to that office related to this record; 3) a court or an appropriated government agency if the Government is party to a legal suit; 4) to an appropr iate law enforcement agency if we become aware of a legal violation; 5) an organization which is a designated collection agent of a particular labor organization; 6) other Federa l agencies for management, statistical and other official functions (without your personal identification).

Executive Order 9397 allows Federal agencies to use the Social Security Number (SSN) as an Individual Identifier to avoid confusion caused by employees with the same or similar names. Supplying your SSN is voluntary, but failure to provide it, when it is used as the employee identification number, may mean that this payroll action cannot be processed.

Your agency shall provide an additional statement if it uses the information furnished on this form for purposes other than those mentioned above.

| 1. Name or Employee (Print - Last, First, Middle) | 2. Employee I.D. Number ( Social Security or other) |
|---|---|
| BARRY  EDWARD  D | 104 - 48 - 3290 |

| 3. Agency Name (Include Bureau, Division, Branch, or other Designation) | 4. Timekeeper Number |
|---|---|
| POSTAL POLICE  NEW YORK DIVISION  U.S. POSTAL SERVICE | |

| 5. Name of Labor Organization | 6. Cancellation Date (Completed by agency only) |
|---|---|
| FOP/NLC #2 | |

I hereby cancel my authorization for the deduction of dues for the above labor organization from my pay. I understand that this cancellation will become effective on the first full pay period which begins on or after the next established cancellation date (indicated above) after this request is received in my agency payroll office.

| 7. Signature of Employee | 8. Date (Month, Day, Year) |
|---|---|
| Edward D. Barry | 2/25/08 |

(Submit copies 1 and 2 to agency payroll office. Copy 1 is retained f or payroll records and Copy 2 is forwarded by the payroll office to the labor organization in accordance with the arrangement between the agency and the labor organization. Copy 3 is retained by the employee.)

1. Agency Payroll Copy          2. Labor Organization Copy          3. Employee Copy

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

USPS HIRJSC
P.O. Box 970400
Greensboro NC
   27497-0400

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _Kharan_    ☑ Agent
              ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
   Kharan                        2/29/08

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☑ Certified Mail    ☐ Express Mail
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
   (Transfer from service label)    7007 2560 0000 1926 3925

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

 **UNITED STATES**
**POSTAL SERVICE** ®

Home | Help | Sign In

Track & Confirm          FAQs

# Track & Confirm

## Search Results

Label/Receipt Number: **7007 2560 0000 1926 3925**
Status: **Delivered**

Your item was delivered at 6:59 am on February 27, 2008 in
GREENSBORO, NC 27497. A proof of delivery record may be available
through your local Post Office for a fee.

Additional information for this item is stored in files offline.

( **Restore Offline Details >** ) (?)     ( **Return to USPS.com Home >** )

**Track & Confirm**

Enter Label/Receipt Number.

( **Go >** )

Site Map     Contact Us     Forms     Gov't Services     Jobs     Privacy Policy     Terms of Use     National & Premier Accounts

Copyright© 1999-2007 USPS. All Rights Reserved.     No FEAR Act EEO Data     FOIA



FOP, et. al. v. Barry
Civil Action 08-cv-0462(ESH)
Exh. B

# EXHIBIT B

charge.

# ARTICLE 8 - PRESIDENT OF USPS #2

Section I

- A)  The President of USPS #2 shall be the Chief Executive Officer of the organization.  The President shall be responsible for the day-to-day operation of USPS #2 and shall preside at all Executive Board meetings and such other meetings as the President may from time to time convene.

  B)  The President shall execute any and all contracts that may be authorized by the Executive Board and approve all expenditures of USPS #2 before payment is made.

  C)  The President shall select and retain legal counsel and approve the selection and retain such accountants as shall, from time to time, be required.

  D)  The President shall be ex-officio a member of all standing committees of USPS #2.

  E)  The President shall call special meetings of the Executive Board when the President deems it necessary or upon petition of a majority of the Executive Board.  Notice of such special meetings shall be mailed by the Secretary to each member of the Executive Board at least fifteen days prior to such meeting.

  F)  The President shall keep the Executive Board apprised of the official business transacted by the President, together with such recommendations as the President may deem advisable.

  G)  The President shall furnish a bond in an amount fixed by the Executive Board, or applicable law, for the faithful performance of the duties of the office of President.  The cost of the bond shall be paid by USPS #2.

  H)  The President shall convey to his/her successor all unfinished business.

Section II

The President shall be elected by a secret mail ballot, majority vote of the members-in-good-standing of the organization, pursuant to the nomination and election procedures set forth by the Executive Board.
Section III

The initial term of the office of the President shall expire on September 1, 1993. Thereafter, the term of office for the President shall be three years. There shall be no restriction on serving successive or consecutive terms of office.

Section IV

In the event the President dies, resigns, or is disqualified, the First Vice President shall automatically assume the office of President.

Section V

The President shall be a full-time employee of the USPS #2 and shall be compensated (including all benefits) at the rate comparable to what he/she would be if working full-time as a Postal Police Officer. The full-time status of the President may be suspended by a majority vote of the Executive Board at any time.

# ARTICLE 9 - FIRST VICE PRESIDENT OF USPS #2

Section I

The First Vice President shall be elected by a secret mail ballot, majority vote of the members-in-good-standing of the organization, pursuant to the nomination and election procedures set forth by the Executive Board.

Section II

A)   The First Vice President of USPS #2 shall be the official custodian of the Constitution of USPS #2, and keep an accurate record of all amendments thereto.

B)   The First Vice President shall perform such other duties as the President may direct.

C)   The First Vice President shall perform all the duties of the President if the President is absent or otherwise unavailable to perform the duties of the office.

D)   The First Vice President shall convey to his/her successor all books and records of the organization as well as all unfinished business.

Section III

The initial term of the office of the First Vice President shall expire on September 1, 1993. Thereafter, the term of office for the First Vice President shall be three years. There shall be no restriction on serving successive or consecutive terms of office.

Section IV

In the event the First Vice President dies, resigns, or is disqualified, the Second Vice President shall automatically assume the office of First Vice President.

# ARTICLE 10 - SECOND VICE PRESIDENT OF USPS #2

Section I

The Second Vice President shall be elected by a secret mail ballot, majority vote of the members-in-good-standing of the organization, pursuant to the nomination and election procedures set forth by the Executive Board.

Section II

A)   The Second Vice President of USPS #2 shall be the assistant to the First Vice President.

B)   The Second Vice President shall perform such other duties as the President may direct.

C)   The Second Vice President shall perform all the duties of the First Vice President if the First Vice President is absent or otherwise unavailable to perform the duties of the office.

D)   The Second Vice President shall convey to his/her successor all books and records of the organization as well as all unfinished business.

Section III

The initial term of the office of the Second Vice President shall expire on September 1, 1993. Thereafter, the term of office for the Second Vice President shall be three years. There shall be no restriction on serving successive or consecutive terms of office.

Section IV

In the event the Second Vice President dies, resigns, or is disqualified, the President shall appoint a successor to serve the remainder of the unexpired term. The Executive Board shall confirm any such appointments.

# ARTICLE 11 - SECRETARY-TREASURER OF USPS #2

Section I

The Secretary-Treasurer shall be elected by a secret mail ballot, majority vote of the members-in-good-standing of the organization, pursuant to the nomination and election procedures set forth by the Executive Board.

Section II

The initial term of the office of the Secretary-Treasurer shall expire on September 1, 2002. Thereafter, the term of office for the Secretary-Treasurer shall be three years. There shall be no restriction on serving successive or consecutive terms of office.

Section III

The Secretary-Treasurer shall be the custodian of the books and records of the organization, shall keep the minutes of meetings of the Executive Board and such other meetings as may, from time to time, be held at the call of the President or Board. The Secretary-Treasurer shall maintain the correspondence of the organization, and maintain the minute book. The Secretary-Treasurer shall convey to his/her successor the books and records of the organization as well as all unfinished business.

Section IV

A)  The Secretary-Treasurer shall be the custodian of all the funds and assets of USPS #2, and furnish to the Executive Board, as well as to any member who requests it, an audit report by an accountant.

B)  The Secretary-Treasurer shall conduct all of the financial transactions of USPS #2 with the approval of the President, and keep an accurate record of all income and expenses. The Audit Report will be available for inspection by any member of USPS #2 upon written notice of thirty (30) days, and will be inspected at a time convenient to the Executive Board.

C)   The Secretary-Treasurer shall furnish a bond in an amount fixed by the Executive Board, or applicable law, for the faithful performance of the duties of the office of Secretary-Treasurer.  The cost of the bond shall be paid by USPS #2.

D)   The Secretary-Treasurer shall keep an itemized record of all funds received and disbursed, give a complete report when called upon by the Executive Board or when otherwise required by the President.

E)   The Secretary-Treasurer shall forward copies of all union bank statements to the President in a timely manner, so that the President may better monitor the financial health of the Union.

F)   The Secretary-Treasurer shall provide the President with copies of all Certificates of Deposit, and stock or bond certificates owned by the USPS #2.

Section V

In the event the Secretary-Treasurer dies, resigns, or is disqualified, the President shall appoint a successor to serve the remainder of the unexpired term.  The Executive Board shall confirm any such appointments.

# ARTICLE 12 - SERGEANT AT ARMS OF USPS #2

Section I

The Sergeant at Arms shall be elected by a secret mail ballot, majority vote of the members-in-good-standing of the organization, pursuant to the nomination and election procedures set forth by the Executive Board.

Section II

The initial term of the office of the interim Sergeant at Arms shall expire on September 1, 2002.  Thereafter, the term of office for the Sergeant at Arms shall be three years.  There shall be no restriction on serving successive or consecutive terms of office.

Section III

The Sergeant at Arms shall perform the following duties:

A)   Ensure the integrity of all meetings, and that only authorized members and guests are in attendance;

B)   Perform such other duties as the President may direct;

C)   Convey to his/her successor the books and records of the organization as well as all unfinished business.

Section IV

In the event the Sergeant at Arms dies, resigns, or is disqualified, the National President shall appoint a successor to serve the remainder of the unexpired term. The Executive Board shall confirm any such appointments.

# ARTICLE 13 - GRIEVANCE SECRETARY OF USPS #2

Section I

The Grievance Secretary shall be elected by a secret mail ballot, majority vote of the members-in-good-standing of the organization, pursuant to the nomination and election procedures set forth by the Executive Board.

Section II

The initial term of the office of the Grievance Secretary shall expire on September 1, 1993. Thereafter, the term of office for the Grievance Secretary shall be three years. There shall be no restriction on serving successive or consecutive terms of office.

Section III

The Grievance Secretary shall be the custodian of copies of all grievances filed at all levels within the bargaining unit and shall coordinate all grievances before the Regional Representatives. The Grievance Secretary shall convey to his/her successor the books and records of the organization as well as all unfinished business.

Section IV

In the event the Grievance Secretary dies, resigns, or is disqualified, the National President shall appoint a successor to serve the remainder of the unexpired term. The Executive Board shall confirm any such appointments.

FOP, et. al. v. Barry
Civil Action 08-cv-0462(ESH)
Exh. C

# EXHIBIT C

**SECTION 6.**  The District of Columbia National Trustee shall be notified of and be provided the opportunity to attend and participate in all Jerrard F. Young Lodge #1 Board of Directors meetings.  The District of Columbia National Trustee shall not have a vote.

ARTICLE 8
(President)

**SECTION 1.**  The President shall be the Chief Executive Officer of the Lodge.

**SECTION 2.**  The President shall preside at all meetings of the Lodge, and shall have general management of the business of the Lodge, and shall see that all orders and resolutions of the Board of Directors are carried into effect.

**SECTION 3.**  The President, together with the Recording Secretary and Financial Secretary, shall execute any and all contracts that may be authorized by the Board of Directors.

**SECTION 4.**  The President shall be an ex-officio member of all standing committees.  (Excluding Labor Committees)

**SECTION 5.**  The President shall have the power to appoint a majority of any committees to inquire into any affair or matter affecting or concerning the Lodge.  (Excluding Labor Committees)

**SECTION 6.**  The President shall have the authority to call a special or emergency meeting of the Lodge membership or of the Board of Directors when he deems it necessary for the good of the Lodge.

**SECTION 7.**  The President shall, at each meeting of the Board of Directors or Lodge, submit a complete and comprehensive report of the official business transacted by him subsequent to the last meeting, together with such recommendations as he may deem advisable.

**SECTION 8.**  The President shall at the expiration of his term of office or termination thereof for any reason, convey to his successor all unfinished business of the Lodge within ten (10) days thereafter.  The President shall deliver all books, documents, records, paraphernalia, equipment, and all other Lodge

- 7 -

000145

property in his possession, and shall require and receive a
receipt from his successor for same.

**SECTION 9.**  The President shall have the authority, when
countersigned by the Treasurer and/or Financial Secretary and/or
Recording Secretary, to draw, sign, and issue checks, drafts and
money orders for the withdrawal of Lodge funds for the prompt
payment of all lawful obligations of this Lodge.

**SECTION 10.**  The President shall have the authority to appoint a
parliamentarian with the approval of the Board of Directors.

**SECTION 11.**  The President shall furnish a bond for the faithful
performance of his duties performed by his office. Such form and
amount as approved by the Board of Directors shall be paid for by
the Lodge.

ARTICLE 9
(Immediate Past President)

**SECTION 1.**  The Immediate Past-President shall assist the
President and the members of the Board of Directors in the
performance of their respective duties.

**SECTION 2.**  The Immediate Past-President may attend the meetings
of the Lodge and the Board of Directors.

**SECTION 3.**  The Immediate Past-President shall be deemed a member
of the Board of Directors and entitled to cast a vote.

**SECTION 4.**  The Immediate Past-President shall execute any or such
assignments as may be ordered by the President or the Board of
Directors.

ARTICLE 10
(Vice President)

**SECTION 1.**  The Vice-president shall attend the meetings of the
Lodge and the Board of Directors, and shall preside at those
meetings in the absence of the President.

**SECTION 2.**  The Vice-president shall have the authority to perform
the duties of the President during his absence.

UUU146

**SECTION 3.**  The Vice-president shall have the power to appoint the minority of any or all committees.  (Excluding Labor Committees)

**SECTION 4.**  The Vice-president shall execute any or such assignments as may be ordered by the President or the Board of Directors.

**SECTION 5.**  The Vice-president shall be declared the President in the event the office of the President becomes vacant for any reason.

**SECTION 6.**  The Vice-president shall at the expiration of his term of office or termination thereof for any reason, convey to his successor all unfinished business of the Lodge within ten (10) days thereafter.  The Vice-president shall also deliver all books, documents, records, paraphernalia, equipment, and all other Lodge property in his possession and shall require and receive a receipt from his successor for same.

ARTICLE 11
(Recording Secretary)

**SECTION 1.**  The Recording Secretary shall have custody of all books, records, documents, the Seal of the Lodge and all equipment and paraphernalia pertaining to his duties under the general authority of the President and the Board of Directors.

**SECTION 2.**  The Recording Secretary shall record and transcribe all minutes of the Board of Directors and general membership meetings, and submit same for approval or rejection at the next respective meeting.

**SECTION 3.**  The Recording Secretary shall conduct the general correspondence of the Lodge.

**SECTION 4.**  The Recording Secretary shall be the official custodian of the Constitution and the by-laws, which shall be authenticated by the Seal of the Lodge and signature of the President.

**SECTION 5.**  The Recording Secretary shall at the expiration of his term of office or termination thereof for any reason, convey to his successor all unfinished business of the Lodge within ten (10) days thereafter; the Recording Secretary shall also deliver all books, documents, records, paraphernalia, equipment and all other

- 9 -

Lodge property in his possession and shall require and receive a receipt from his successor for same.

**SECTION 6.** The Recording Secretary shall execute any such assignments as may be ordered by the President, Vice-president or the Board of Directors.

**SECTION 7.** The Recording Secretary and Financial Secretary shall, together with the President, execute any and all contracts that may be authorized by the Board of Directors.

**SECTION 8.** The Recording Secretary shall have the authority, when countersigned by the President and/or Financial Secretary and/or Treasurer, to draw, sign, and issue checks, drafts and money orders for the withdrawal of Lodge funds for the prompt payment of all lawful obligations of this Lodge.

ARTICLE 12
(Financial Secretary)

**SECTION 1.** The Financial Secretary shall have charge of the financial records of the Lodge including all books, cards and papers showing the payments and non-payments of dues and/or assessments by members of the Lodge.

**SECTION 2.** The Financial Secretary's books shall be open for inspection by any member of the Board of Directors.

**SECTION 3.** The Financial Secretary shall at the expiration of his term of office or termination thereof for any reason, convey to his successor all unfinished business of the Lodge within ten (10) days thereafter; the Financial Secretary shall also deliver all books, documents, records, paraphernalia, equipment, and all other Lodge property in his possession, and shall require and receive a receipt from his successor for same.

**SECTION 4.** The Financial Secretary and Recording Secretary shall, together with the President, execute any and all contracts that may be authorized by the Board of Directors.

**SECTION 5.** The Financial Secretary shall have the authority, when countersigned by the President and/or Treasurer and/or Recording Secretary, to draw, sign, and issue checks, drafts and money orders for the withdrawal of Lodge funds for the prompt payment of all lawful obligations of this Lodge.

- 10 -

ARTICLE 13
(Treasurer)

**SECTION 1.**   The Treasurer shall  receive and take charge of all monies belonging to the Lodge.

**SECTION 2.**   The Treasurer shall keep accurate records of all receipts and disbursements which shall be made available at all times for examination by any member of the Board of Directors.

**SECTION 3.**   The Treasurer shall have the authority, when countersigned by the President and/or Financial Secretary and/or Recording Secretary, to draw, sign, and issue checks, drafts and money orders for the withdrawal of Lodge funds for the prompt payment of all lawful obligations of this Lodge.

**SECTION 4.**   The Treasurer shall at the expiration of his term of office or termination thereof for any reason, convey to his successor all unfinished business of the Lodge within ten (10) days thereafter; the Treasurer shall also deliver all books, documents, records, paraphernalia, equipment, and all other Lodge property in his possession, and shall require and receive a receipt from his successor for same.

ARTICLE 14
(Conductor)

**SECTION 1.**   The Conductor shall examine dues cards of officers and members, ascertaining that all present at the meeting are in good standing, take up the password and report to the President.

ARTICLE 15
(Guard)

**SECTION 1.**   There shall be two (2) Guards known as the Outer Guard and the Inner Guard, who shall have charge and control of the Lodge hall or meeting place.

ARTICLE 16
(Chaplain)

**SECTION 1.**   The Chaplain shall offer the opening and closing prayer at all meetings and render such assistance as may be necessary in times of illness and bereavement to the members in need.

UUU149

FOP v. Barry, et. al.
08-cv-462(ESH)
Exh. D

# EXHIBIT D

**Section 4.** There shall be an annual budget of the Grand Lodge which shall be formulated by the National Executive Board in accordance with such rules and regulations as may, from time to time, be prescribed within the By-Laws and said budget shall be reported to the National Board of Trustees in June of every fiscal year. The budget shall remain in full force and effect for the fiscal year unless revised by emergency action of the National President, formal action taken at a meeting of the National Board of Trustees, or by action of the Biennial Conference.

## ARTICLE 6
### National Officers

**Section 1.** The officers of the Grand Lodge shall consist of the National President, each of the Past National Presidents, the National Vice President, the National Secretary, the National Treasurer, the National Second Vice President, the National Sergeant at Arms and one National Trustee from each State represented by a state lodge. The term of office of each national officer shall be for two (2) years or until his successor is elected and qualified.

**Section 2.** A national officer (except for a National President who fulfills the requirements set forth in Article 3, Section 1(I)) who resigns from office during any elected term shall relinquish all right to and privilege of that office and shall revert to the status of "member." In the case of a National President as hereinbefore described, he shall assume the position of Past National President. A National Officer who resigns from active police duty for any reason other than to retire on pension, either for length of service or disability, or otherwise becomes ineligible as a member of the Fraternal Order of Police, shall automatically forfeit his office.

**Section 3.** **Nomination, Election and Installation**

A. **General.** The officers of the Grand Lodge shall be elected at the Biennial Conference. No more than one of the following officers shall be elected from any one state: National President, National Vice President, National Secretary, National Treasurer, National Second Vice President and National Sergeant at Arms. Should two (2) or more candidates who are members of the same state lodge receive the greatest number of votes for any two (2) or more of the preceding national offices, then, in that event, the candidate receiving the greatest number of votes for the highest office (in the order set forth herein) shall be declared elected and the other candidate from the same state receiving the greatest number of votes shall be declared disqualified by the National President and the candidate for that office receiving the next highest number of votes shall be declared elected. No member shall be nominated for nor elected to national office at a Biennial Conference at which he is not a member in good standing and either a delegate or serving as an incumbent national officer.

B. **Nomination.** Candidates for election to the offices of National President, National Vice President, National Secretary, National Treasurer, National Second Vice President and National Sergeant at Arms shall be nominated two (2) days prior to the election of such national officers. Nominations shall be made from the floor of the Biennial Conference and, after being declared closed, such nominations shall not be re-opened. No member shall be nominated or be a candidate for election to more than one national office at the same Biennial Conference.

6

Immediately following the closing of nominations, each candidate (but only the candidate himself) for national office shall be permitted to speak to the delegates of the Biennial Conference for not more than three (3) minutes.

C. **Ballot.** The name and state affiliation of each duly nominated candidate for national office shall be placed on the ballot in an order determined by lottery conducted by the Election Committee.

D. **Election.** Each national officer, except National Trustees, shall be elected by a vote of the qualified delegates on the floor of the Conference.

1. Voting shall be by voting machines whenever available and the expense thereof shall be borne by the host lodge. In the event that voting machines are unavailable, the voting procedure shall be by computer tabulated "punch card." In the event that neither voting machines nor "punch card" procedures are available, there shall be furnished to each delegate printed ballots upon which each delegate shall record his vote(s). Ballots shall not be taken from the Biennial Conference site.

2. The order by which the delegates of the several states shall vote shall be determined by lottery conducted by the Election Committee.

3. The National President shall announce the results of the elections reported by the Election Committee and shall declare elected those candidates receiving a plurality of the votes cast for each respective national office.

E. **Installation.** Officers-elect shall be installed by a National Officer and shall take office in accordance with the regular order of business.

F. **Succession.** A vacancy in any office of the Grand Lodge, except the office of National President or National Trustee, shall be filled by a majority vote of the National Board of Trustees. In the event of a vacancy in the office of the National President, the National Vice President shall automatically assume the office of National President and complete the unexpired term thereof. The National Board of Trustees shall thereafter elect, by a majority vote and from among its members, a successor National Vice President who shall serve for the unexpired term of the previous National Vice President. Should a vacancy occur in the office of a National Trustee, the vacancy shall be filled by the elected officers of the respective state lodge.

## ARTICLE 7
### National Executive Board

**Section 1.** There shall be a National Executive Board which shall be comprised of the National President, National Vice President, National Secretary, National Treasurer, National Second Vice President, National Sergeant at Arms and the Chairman of the National Trustees.

7

**Section 2.**    The National Executive Board shall meet from time to time, as called by the National President, for the purpose of advising the National President in carrying out the administrative business and other affairs of the Grand Lodge in accordance with this Constitution and the By-Laws. The National President shall preside over the National Executive Board.

### ARTICLE 8
### National Board of Trustees

**Section 1.**    The National Board of Trustees shall be comprised of the National President; the Immediate Past President; subject to the provisions of Article 10, Section 2, each of the Past National Presidents; the National Vice President; the National Secretary; the National Treasurer; the National Second Vice President; the National Sergeant at Arms and each of the National Trustees.

**Section 2.**    The National Board of Trustees shall meet from time to time to exercise all administrative powers of the Order between Biennial Conferences.

**Section 3.**    The National Board of Trustees shall promulgate such rules and regulations as it deems necessary and appropriate to authorize, control, license and restrict the use of the name, insignia or emblem and mark, trademark or service mark of the Fraternal Order of Police, provided, however, that such use by state and subordinate lodges for identification purposes which are neither associated with profit-making enterprises nor in competition with the Grand Lodge shall not be prohibited.

**Section 4.**    **Meetings**

A.    The National Board of Trustees shall meet immediately prior to and after the Biennial Conference, which meetings shall be known as the Pre-Conference and Post-Conference Board meetings of the National Board of Trustees, respectively.  In addition, the National Board of Trustees shall meet at least three times between Biennial Conferences.  The National Board of Trustees shall also meet when it is deemed necessary by the National President, upon petition of a majority of the Board of Trustees or upon the finding of probable cause to inquire into charges brought against a national officer.  Notice of special meetings shall be prepared and mailed by the National Secretary to each member of the National Board of Trustees not less than twenty (20) days prior to such meeting.

B.    Minutes of each meeting of the National Board of Trustees shall be kept by the National Secretary and shall be presented to such Board and the Biennial Conference, except in the case of the Pre-Conference Board meeting, at the next meeting thereof.

C.    The Grand Lodge shall pay, upon signed voucher therefor, the reasonable expenses of National Trustees attending meetings of the National Board of Trustees and the Biennial Conference.

FOP, et. al v. Barry, et. al.
Civil Action No. 08-cv-462(ESH)
Exh. E.

# EXHIBIT E

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

FRATERNAL ORDER OF POLICE,        )
D.C. LODGE 1, et. al.,            )
                                  )
        Plaintiffs,          )
                                  )      CASE NO.: 08-cv-462 (ESH)
        v.                  )
                                  )
EDWARD BARRY, et. al.             )
                                  )
        Defendants.          )
_____ )

### AFFIDAVIT OF ROBERT MOSLEY

Pursuant to 28 U.S.C. '1746, Robert Mosley declares under penalty of perjury that:

1.     I make this declaration in response to the Defendants' Opposition to the Plaintiffs' Motion to Amend or Alter Judgment.

2.     I have been a member of the Fraternal Order of Police (FOP) for approximately 28 years.

3.     As a member of the FOP, I have been involved with the drafting, revising and interpretation of the bylaws for FOP DC-1 for the same period of time.

4.     I am presently the Chairman of DC-1's Bylaws Committee. I have served as a member of the committee, as vice-chairman and as chairman for at least 10 years.

5.     In applying the constitution and bylaws to specific situations, one must first look to the specific labor committee's constitution and bylaws for guidance. In the absence of an NLC-2 labor committee constitutional provision addressing a particular issue, you would then look to DC-1's constitution and bylaws for guidance. Similarly, in the absence of DC-1 constitutional provision or bylaw addressing a particular issue, you would then look to the FOP

Grand Lodge's constitution and bylaw.

     6.     I have reviewed Edward Barry's resignation from the NLC-2 and the documents he submitted to the federal court concerning that resignation. It is clear that Mr. Barry resigned as president of the NLC-2. It is also clear that once Mr. Barry resigned from the position of president of the NLC-2, he relinquished all rights to and privileges of that office and reverted to the status of "member". This would be consistent with the FOP's policy, practice and procedure and in accordance with the Grand Lodge's Constitution.

     7.     Equally important is the fact that Mr. Barry withdrew his membership in the NLC-2 when he cancelled his dues payments.

     8.     No labor committee executive board has the authority to view an individual, who resigns from office, as still being the office holder of that position simply because that person expresses a willingness to serve in that position again.

     9.     The only lawful way a person such as Mr. Barry could ever claim entitlement to an elected position after he voluntarily resigned from that position, was to reinstate his membership in the FOP, be nominated for the position during the established period for officer nominations and then be elected by a majority vote of the membership to that position.

     10.     In light of his February 25, 2008, resignation, Mr. Barry's status is that of a "member" assuming he has resumed paying dues to the NLC-2 and DC-1. Mr. Barry cannot lawfully resume the position of President of the NLC-2 in light of his resignation.

     Executed this 20th day of August 2008.

_Robert Moseley_
Robert Moseley